UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 1:15-cv-08652

JOHN DOE,

      Plaintiff/Judgment Creditor,

v.

EJERCITO DE LIBERACION NACIONAL,
a/k/a ELN, a/k/a National Liberation Army,
and FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
a/k/a FARC, a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA,

      Defendants/Judgment Debtors, and

JPMORGAN CHASE BANK, N.A.,

      Respondent.

_____/

**THIRD-PARTY CLAIMANT KASSIM TAJIDEEN'S OPPOSITION TO PLAINTIFF'S
PETITION FOR TURNOVER**

Third-Party Claimant Kassim Tajideen ("Claimant") hereby opposes Plaintiff John Doe's

Petition for Turnover Order (DE 4) (hereinafter, the "Petition") and moves to dismiss the

Petition, pursuant to Fed. R. Civ. P. 69, 12(b)(6); N.Y. C.P.L.R. §§ 5225, 5239, 2102, and 304.

Claimant is entitled to intervene as a matter of right because he is the owner of the assets

in question, which are held at Respondent JPMorgan Chase Bank, N.A. ("JPMC"). C.P.L.R. §

5225(b). It is undisputed that Plaintiff holds no judgments against Claimant. Instead, Plaintiff

seeks the turnover of Claimant's funds under the Terrorism Risk Insurance Act ("TRIA"), Pub.

L. No. 107-297, to satisfy a judgment Plaintiff obtained against another entity, a Colombian

narco-trafficking terrorist organization known as the Revolutionary Armed Forces of Colombia-

People's Army (the "FARC"). It is undisputed, however, that Claimant does not belong to the

FARC, and Claimant further contends that he has never had any relationship of any kind with the FARC.  Plaintiff therefore cannot target Claimant's funds to satisfy a judgment against the FARC.

Plaintiff concedes that Claimant does not belong to the FARC and has no direct relationship with the FARC.  Nonetheless, Plaintiff contends that he can enforce against Claimant his judgment against the FARC, on the theory that Claimant allegedly has some undefined relationship with the Iranian-backed terrorist organization known as Hezbollah, which, in turn, allegedly is an "agency or instrumentality" of the FARC; but this theory fails for three reasons:

*First*, Claimant has no relationship with Hezbollah.  *Second*, Hezbollah is not an agency or instrumentality of the FARC.  *Third*, even if Plaintiff could carry his burden of proving both that Claimant has a relationship with Hezbollah *and* that Hezbollah is an "agency or instrumentality" of the FARC, Plaintiff still could not meet his burden of proving that Claimant himself is an "agency or instrumentality" of the FARC.  The Petition must therefore be dismissed.

In the alternative, Claimant respectfully requests a trial to resolve these issues, as required by N.Y. C.P.L.R. §§ 5225, 5239 ("Where there appear to be disputed questions of fact, the court shall order a separate trial.").

## TABLE OF CONTENTS

I.  Introduction.............................................................................................................2

II.  Background............................................................................................................7

III.  The Terms "Agency or Instrumentality" Under TRIA Must Be Interpreted
     According to Their "Plain Meaning" .....................................................................8

     A.  The plain meaning of "agency" or "instrumentality" entails "control,"
         "direction," or "dominion" by a principal or a "parent-subsidiary"
         relationship..................................................................................................10

     B.  Plaintiff's definition of "agency" or "instrumentality" is inconsistent with
         the "plain meaning" of these terms. ...........................................................12

IV.  Claimant Has No Relationship Whatsoever with the FARC, Much Less The
     Relationship of an "Agency or Instrumentality" of the FARC...........................13

     A.  Plaintiff has failed to allege, much less demonstrate, that Claimant has any
         connection whatsoever to the FARC, much less an "agency or
         instrumentality" relationship......................................................................14

         1.  Plaintiff has failed to allege, much less prove, *any* direct or
             otherwise meaningful connection between Claimant and the FARC ........15

         2.  Plaintiff's allegations and purported evidence are insufficient to
             create an "agency" or "instrumentality" relationship, even under
             the Middle District of Florida's overbroad definition of those terms........16

     B.  Plaintiff has failed to establish that Claimant is a "supporter" of
         Hezbollah, much less an "agency or instrumentality" of Hezbollah ...................18

     C.  Even assuming *arguendo* that Hezbollah's activities could somehow be
         imputed to Claimant—which they cannot be—Plaintiff has not (and
         cannot) prove that Hezbollah is an "agency or instrumentality" of the
         FARC ...........................................................................................................20

V.  In the Alternative, Claimant is Entitled to a Trial to Present Further Evidence and
    to Challenge Plaintiff's Witness .............................................................................24

CONCLUSION..............................................................................................................25

ActiveUS 149382880v.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ayco Co. L.P. v. Becker*,
  2011 WL 3651027 (N.D.N.Y. 2011) ....................................................................11

*Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*,
  575 F.3d 1180 (11th Cir. 2009) .........................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)............................................................................................21

*Dep't of Employment v. United States*,
  385 U.S. 355 (1966).............................................................................3, 10, 11, 12

*Doe v. Ejercito de Liberacion Nacional*,
  2015 WL 974910 (D. Puerto Rico 2015)...................................................9, 20, 21

*EEOC v. Exxon Corp.*,
  202 F.3d 755 (5th Cir. 2000) ............................................................................21

*Estates of Ungar v. Palestinian Authority*,
  304 F.Supp.2d 232 (D.R.I 2004) .................................................................. passim

*Funnekotter v. Agricultural Development Bank of Zimbabwe*,
  2015 WL 3526661 (S.D.N.Y. 2015)...................................................................18

*Gulf Grp. Gen. Enterprises Co. W.L.L. v. United States*,
  98 Fed. Cl. 639 (2011)……………………………………………………………….23

*Hollingsworth v. Perry*,
  133 S. Ct. 2652 (2013)........................................................................3, 9, 11, 14

*John Doe v. Ejercito de Liberacion Nacional*,
  No. 10-21517-CIV-HUCK (S.D. Fla. 2012)........................................................23

*Kiobel v. Royal Dutch Petroleum*,
  133 S. Ct. 1659 (2013)........................................................................................23

*Martinez v. Capital One, N.A.*,
  863 F.Supp.2d 256 (S.D.N.Y. 2012)..............................................................21, 22

*Natural Resources Defense Council, Inc. v. Muszynski*,
  268 F.3d 91 (2d Cir. 2001)................................................................................3, 8

*Peterson v. Islamic Republic of Iran,*
    264 F.Supp. 2d 46 (D.D.C. 2003) .................................................................5, 19

*Stansell v. FARC,*
    71 F.3d 713 (11th. Cir. 2014) .......................................................................18

*Stansell v. FARC,*
    No. 8:09-cv-02308-RALMAP (M.D. Fla. 2015) ......................................4, 12, 15

*U.S. v. All Funds on Deposit with R.J. O'Brien & Assoc.,*
    892 F.Supp.2d 1038 (N.D. Ill. 2012) ......................................................9, 15, 16

*United States v. Esquenazi,*
    752 F.3d 912 (11th Cir. 2014) ...............................................................4, 10, 11

*United States v. Lebanese Canadian Bank SAL,*
    11-9186-CV-9186 (S.D.N.Y. 2011) ........................................................16, 17, 20

*Wagner v. Islamic Republic of Iran,*
    172 F. Supp. 2d 128 (D.D.C. 2001) ........................................................8, 18, 19

**State Cases**

*A.W. Fiur Co., Inc. v. Ataka & Co., Ltd.,*
    71 A.D.2d 370 (3d Dept. 1979) .................................................................10

*Hatton v. Quad Realty Corp.,*
    100 A.D.2d 609 (2nd Dept.1984) ................................................................9

**Federal Statutes**

18 U.S.C. § 207 ...................................................................................................21

Pub. L. No. 107-297 ...........................................................................................1, 8

**State Statutes**

C.P.L.R. §§ 5225, 5239, 304, and 2102 ........................................................ 21-23

**Rules**

F.R.E. 702-703 ....................................................................................................21

Fed. R. Civ. P. 26(b)(4) ......................................................................................21

Fed. R. Civ. P. 69, 12(b)(6) ................................................................................23

- iii -

**Regulations**

Executive Order 13224 .................................................................................................7

**Other Authorities**

Black's Law Dictionary (10th ed. 2014)..........................................................9, 10, 11

Restatement (Third) of Agency, § 1.01 .......................................................................5

Treasury, Press Release, *Treasury Targets Hezballah for Supporting the Assad Regime,* Aug. 10, 2012...................................................................................................................5, 20

Webster's Third New International Dictionary (3d ed.1993).......................................10

ActiveUS 149382880v.1

## <u>MEMORANDUM OF LAW</u>

It is undisputed that Plaintiff does not hold any judgment against Claimant, and instead holds a money judgment only against the FARC, a Colombian narco-trafficking, terrorist organization in South America. Plaintiff does not seek assets of the FARC to satisfy his judgment against that organization, however. Rather, Plaintiff seeks the turnover of Claimant's assets, on the theory that Claimant is an "agency or instrumentality" of the FARC pursuant to TRIA, DE 4, at 14-16.; Pub. L. No. 107-297; but there is no factual or legal support for Plaintiff's theory.

It is undisputed that Claimant does not belong to the FARC and has no direct relationship with the FARC. Indeed, Claimant has never had any relationship *of any kind* with the FARC:  he has never belonged to the FARC, never met with the FARC, never communicated with the FARC, never done business with the FARC, never acted on the FARC's behalf, and never interacted with the FARC in any way. These facts are *undisputed*. Plaintiff's Petition is particularly audacious as it *does not even allege* that Claimant has any relationship with the FARC. Claimant's funds should therefore not be used to satisfy Plaintiff's judgment against the FARC.

Instead, Plaintiff alleges that Claimant is somehow affiliated with Hezbollah, DE 4, at 26, and that Hezbollah, in turn, is an "agency or instrumentality" of the FARC, somehow transforming Claimant himself into an "agency or instrumentality," of the FARC, such that Plaintiff can enforce against Claimant his judgment against the FARC.

Plaintiff's theory fails for three reasons. *First*, Claimant is not part of Hezbollah. *Second*, Hezbollah is not an "agency or instrumentality" of the FARC (but is, as is well known, an agency or instrumentality of the Islamic Republic of Iran). *Third*, even if Plaintiff could carry his burden of proving both that Claimant is part of Hezbollah and that Hezbollah is an "agency

- 1 -

or instrumentality" of the FARC, Plaintiff still could not meet his burden of proving that Claimant himself is an "agency or instrumentality" of the FARC. The Petition must therefore be dismissed.

## I.      Introduction

In 2012, Plaintiff received a judgment against two Colombian terrorist organizations, Ejercito De Liberacion Nacional ("ELN") and the FARC, totaling more than $36 million. Plaintiff registered his judgment in this Court on June 18, 2015, in order to execute the apparently unsatisfied FARC judgment against the Claimant's blocked assets held at JPMC in New York. DE 1. Plaintiff then filed a Petition for Turnover Order directed at JPMC for blocked assets, DE 4. Subsequent briefing in this case (including an interpleader filed by JPMC, DE 11), has focused on the proper venue to hear the case and potentially consolidate two other identical cases filed in the Northern District of New York and the Northern District of Illinois relating to the Claimant's assets. Claimant supports consolidation of all cases before one Court and submits that, regardless of where the case is heard, the Plaintiff and identically-situated plaintiffs, the Stansells, who have been brought into this case by interpleader, DE 19, have failed to meet their burden of establishing the necessary connection between Claimant and the judgment debtor, the FARC.

Plaintiff contends that Claimant is linked to the FARC through another terrorist organization called Hezbollah, but Claimant has no ties whatsoever to Hezbollah or the FARC. Rather, Claimant is a Lebanese businessman residing in Beirut. Claimant's accounts have been blocked by the U.S. Department of the Treasury Office of Foreign Assets Control ("OFAC") as a result of Mr. Tajideen's alleged financial support for Hezbollah, but Mr. Tajideen opposes Hezbollah; does not provide financial support for Hezbollah; has taken comprehensive action in response to OFAC's designation to address any apparent risks relating to such activity; and is

- 2 -

engaged in a multi-year OFAC "delisting" effort to persuade the U.S. Government that he has no ties to Hezbollah.  Tellingly, neither OFAC, nor any other U.S. Government agency, has ever alleged that Mr. Tajideen has any connection to the FARC, much less any "agency or instrumentality" relationship with the FARC.

Although TRIA § 201(a) enables judgment creditors of a *particular* terrorist organization to execute a judgment issued against *that particular* terrorist organization and its *bona fide* "agencies or instrumentalities," TRIA does not permit judgment creditors to go after individuals and entities that allegedly support *other* terrorist organizations, much less individuals and entities who have *no connection to any terrorist organizations*.

But Plaintiff would have this Court adopt a definition of "agency or instrumentality" that is so broad as to include individuals or entities who allegedly have indirect ties to a judgment debtor *through a third party*.  However, this view conflicts with the well-settled rule that courts must construe statutory terms according to their "plain meaning."  *See Natural Resources Defense Council, Inc. v. Muszynski,* 268 F.3d 91, 98 (2d Cir. 2001) ("Statutory analysis begins with the plain meaning of the statute…The plain meaning can be extrapolated by giving words their ordinary sense").

Under the plain meaning of "agency or instrumentality," the individual or entity must have a direct relationship with a "principal," pursuant to which the agency or instrumentality is authorized and instructed to "act on behalf of"—and at the "direction of" or under the "control of"—the principal, such that the agency's or instrumentality's actions can fairly be imputed to the principal.  *Hollingsworth v. Perry,* 133 S. Ct. 2652, 2666 (2013) ("the most basic features of an agency relationship are missing here.  Agency requires more than mere authorization to assert a particular interest.  'An essential element of agency is the principal's right to control the agent's actions.'") (internal citations omitted).  An "agency or instrumentality" is "subservient"

ActiveUS 149382880v.1

to, and subject to the "dominion" of, the principal.  *Dep't of Employment v. United States,* 385 U.S. 355, 359-60 (1966) (factors for determining "instrumentality" status include whether it "functions indispensable to the workings" of an entity; receipt of "substantial material assistance" from that entity; or "status virtually as an arm of" the entity.); *United States v. Esquenazi,* 752 F.3d 912, 920-25 (11th Cir.), *cert. denied,* 135 S. Ct. 293, 190 L. Ed. 2d 141 (2014) ("an entity must be under the control or dominion of the government to qualify as an 'instrumentality'").

Rather than adhere to the plain meaning of "agency or instrumentality," however, Plaintiff would have this Court adopt an unreasonably broad standard based on a definition created in *ex parte* proceedings in a Florida District Court, *Stansell v. FARC*, No. 8:09-cv-02308-RALMAP, at *7-8 (M.D. Fla. Feb. 17, 2015), which—as interpreted by Plaintiff—bears no relationship to the "plain meaning" of "agency" or "instrumentality."  Plaintiff's version of the *Stansell* definition should not become law in this district because it lacks any of the hallmarks of a true "agency" or "instrumentality" relationship, including, for example, the concepts that an "agency" or "instrumentality" is subservient to the dominion of the principal and "acts on behalf of"—and at the "direction of," or under the "control of"—the principal.  Here, Claimant has no relationship of any kind with the FARC, and Claimant is not even alleged to have acted on behalf of, at the direction of, or under the control of the FARC.  Thus, Claimant cannot be considered to be an "agency" or "instrumentality" of the FARC under any reasonable definition and interpretation of these terms.

In the absence of any facts or evidence linking Claimant and the FARC, Plaintiff has enlisted an expert to try to stitch together a relationship using innuendo and threads of alleged indirect connections between affiliates of Hezbollah and affiliates of the FARC.  However, the Plaintiff's expert has not identified a shred of evidence of any relationship—much less an agency

- 4 -

or instrumentality relationship—between Claimant and the FARC.  To the contrary, Plaintiff's

expert does not purport to know *anything at all* about Claimant beyond what OFAC has stated.

He merely seeks to establish some loose and amorphous connection between Hezbollah and the

FARC by claiming that affiliates of Hezbollah buy drugs from, or launder money for, affiliates

of the FARC.  But this is irrelevant because it does not establish an "agency or instrumentality"

relationship between Hezbollah and the FARC, much less between Claimant and the FARC.

      Even if Plaintiff could establish that Hezbollah is an agency or instrumentality of the

FARC—and he cannot—the existence of such a relationship between Hezbollah and the FARC

would not give rise to such a relationship between *Claimant* and the FARC.  That would be true

*even if* Plaintiffs could show that Claimant is himself an agency or instrumentality of Hezbollah

(which he is not).  Indeed, it is black letter law that an agency relationship between two entities

does not amount to an agency relationship between one such entity and the agents or affiliates of

the other such entity.  *See*, *e.g.*, Restatement (Third) of Agency, § 1.01 ("A corporation's agents

are its own because it is a distinct legal person; they are not the agents of other affiliated

corporations unless, separately, an agency relation has been created between the agents and the

affiliated corporation.").

      In any case, Hezbollah is not in fact an "agency or instrumentality" of the FARC.  For

decades, the U.S. Government has gathered and examined all the available information about

Hezbollah and never once taken the position that Hezbollah is an "agency or instrumentality" of

the FARC.  Rather, the U.S. Government has concluded that Hezbollah is an "agency or

instrumentality" of the Islamic Republic of Iran.  *See Peterson v. Islamic Republic of Iran,* 264

F.Supp. 2d 46, 51 (D.D.C. 2003) ("Hezb[o]llah is largely under Iranian orders.  It's almost

entirely acting ...  under the order of the Iranians and being financed almost entirely by the

Iranians.").  OFAC itself has described the closeness of the relationship between Hezbollah and

- 5 -

its "patron," the Islamic Republic of Iran.[1]  Obviously, Iran would never permit any organization, much less a South American narco-trafficking organization such as the FARC—a distant and ideologically distinct organization—to "direct" or "control" an Iranian proxy such as Hezbollah.

Even assuming *arguendo* an agency relationship between Hezbollah and the FARC, Plaintiff has not adduced a shred of evidence to support his baseless contention that Claimant belongs to Hezbollah and is an agency or instrumentality of the FARC.  In contrast to Plaintiff's lack of evidence, Claimant has come forward with affirmative evidence that neither he nor his businesses have a connection with Hezbollah or the FARC.  Claimant has submitted an affidavit testifying that he has no affiliation with Hezbollah or the FARC and affirms that he would never knowingly support terrorism or narcotics trafficking.  Attachment 1, at paras. 2-49 ("Tajideen Affidavit").  Claimant has also submitted an affidavit from Chibli Mallat, a leading Lebanese jurist and academic in the United States, outspoken Hezbollah expert and critic, and advocate for nonviolence and the rule of law, who attests that Mr. Tajideen has no affiliation with Hezbollah or the FARC.  Attachment 2, at paras. 10-17 ("Mallat Affidavit").  Claimant has also submitted an expert report from Dr. Ibrahim Warde of the Fletcher School of Law and Diplomacy, a leading expert on Hezbollah and underground financing of terrorism in the Islamic world, who states that Hezbollah is not an agency or instrumentality of the FARC and demonstrates that Plaintiff's expert's opinion to the contrary is not supported by evidence, is rife with irregularities and inaccuracies, and does not comport with minimum standards for expert analysis. Attachment 3, at paras. 13-32 ("Warde Report").  In the face of Claimant's affirmative evidence and Plaintiff's lack of evidence, Plaintiff's Petition must be denied for failure to meet Plaintiff's burden of proof.

---

[1] *See* U.S. Department of the Treasury, Press Release, *Treasury Targets Hezballah for Supporting the Assad Regime,* Aug. 10, 2012, *available at* http://www.treasury.gov/press-center/press-releases/Pages/tg1676.aspx.

ActiveUS 149382880v.1

In the alternative, to the extent that there are issues of material fact in dispute, Claimant respectfully requests an evidentiary trial to resolve such issues, as required under New York law. In that case, Plaintiff would have the burden of proving as a matter of fact that Claimant acts "on behalf of"—and at the "direction" and under the "control" of—the FARC, such that Claimant is an "agency or instrumentality" of the FARC.

## II.   Background

Claimant is a 60-year old Lebanese and Belgian national who has built and operated legitimate and lawful businesses in Lebanon and West Africa for more than 40 years.  In the 1970s in Sierra Leone, Mr. Tajideen established a business focused on importing and distributing European and other western foodstuffs and consumer goods.  As part this enterprise, Mr. Tajideen founded Grupo Arosfran Empreendimentos E Participacoes SARL ("Grupo Arosfran") and Ovlas Trading, S.A. ("Ovlas Trading").

On May 27, 2009, OFAC designated Mr. Tajideen pursuant to Executive Order 13224. OFAC described Mr. Tajideen as a "financial contributor to Hezbollah," having allegedly contributed financial support to Hezbollah through his brother and a network of businesses in Lebanon and Africa.  Mr. Tajideen contests these mistaken and unsubstantiated allegations; to prove his innocence, he has retained the WilmerHale firm and an independent forensic expert and auditor to investigate the facts, petition the government, and clear his name.  This work is ongoing.  Importantly, OFAC did not designate Mr. Tajideen based on any alleged connection to the FARC; to the contrary, OFAC has never even suggested such a connection.  Nor has OFAC ever found or suggested any connection between Hezbollah and the FARC.

On December 9, 2010, OFAC also designated a "network" of businesses, including Ovlas Trading and Grupo Arosfran, both of which OFAC described only as entities founded, owned

ActiveUS 149382880v.1

and operated by Mr. Tajideen.  OFAC did not identify (and has never identified) any connection

between Ovlas Trading or Grupo Arosfran and the FARC.

Mr. Tajideen denies that he or his businesses support Hezbollah in any way; in a sworn

statement, Mr. Tajideen has made clear that he and his businesses are not supporters or members

of that organization.  *See* Tajideen Affidavit**,** 2-49.  To help demonstrate that fact to OFAC, Mr.

Tajideen retained leading, independent forensic experts to conduct a year-long audit and

investigation of his financial and business operations.  Those experts found no evidence of any

support for Hezbollah.  Moreover, based on the findings and recommendations of those experts,

Mr. Tajideen reorganized his companies and established effective internal controls and

compliance measures to ensure against the risk that anyone working for his commercial entities

might engage in inadvertent or surreptitious terrorist financing, unknown to Mr. Tajideen or his

companies.  This remediation has resulted in a significant consolidation of Mr. Tajideen's

business operations, and has also included an extraordinary undertaking by Mr. Tajideen to

ensure that his business affairs and affiliates operate in full compliance with applicable law and

have no connection whatsoever to Hezbollah or any other terrorist organizations.

## III.     The Terms "Agency or Instrumentality" Under TRIA Must Be Interpreted According to Their "Plain Meaning"

Plaintiff seeks to enforce his judgment against Claimant under Section 201 of TRIA,

which allows persons with a judgment against a terrorist party to execute the judgment against

"any agency or instrumentality of that terrorist party."  Pub. L. No. 107-297.  Under Second

Circuit law, this Court must proceed with its statutory interpretation of TRIA according to the

"plain meaning" of the terms "agency" and "instrumentality".  *See Natural Resources Defense*

*Council, Inc.,* 268 F.3d at 98 ("Statutory analysis begins with the plain meaning of the

statute…The plain meaning can be extrapolated by giving words their ordinary sense").

ActiveUS 149382880v.1

The standard for what constitutes an "agency or instrumentality" under TRIA is not well-developed in this Circuit.  *See, e.g., Weinstein v. Islamic Republic of Iran,* 609 F.3d 43, 49 (2d Cir. 2013) (noting that TRIA attachment "can include not only the terrorist party but also 'any agency or instrumentality of that terrorist party'" but offering no standard for determining agency or instrumentality status in the context of such parties).  But several federal district courts have sought to define "agency or instrumentality" according to the plain meaning of those terms and to ensure against an overbroad definition of those terms where non-state actors are concerned.  *See Estates of Ungar v. Palestinian Authority*, 304 F.Supp.2d 232, 241 (D.R.I 2004) ("The HLF is an agency and instrumentality of Hamas because it acts 'for or on behalf of' Hamas as Hamas' fund-raising agent in the United States."); *U.S. v. All Funds on Deposit with R.J. O'Brien & Assoc.*, 892 F.Supp.2d 1038, 1044 (N.D. Ill. 2012) (alleged terrorist operative was "an agency or instrumentality of Al Qaeda" under TRIA because he "is a member of Al Qaeda" and "raised money…to support Al Qaeda").  Indeed, in another case involving the same John Doe Plaintiff as in this case, the District Court in Puerto Rico took a limited interpretation of "agency or instrumentality" in denying Plaintiff's previous attempt to garnish assets in relation to its judgment against the FARC.  *Doe v. Ejército Liberación Nacional*, 2015 WL 874910, *2, n.2 (D. Puerto Rico 2015) ( "[G]iven the tenuous relationship between FARC/ELN and the two putative garnishees, I have serious doubts about whether either Bermúdez can really be considered an agent or instrumentality of FARC/ELN").  These courts have recognized that the terms "agency or instrumentality" must be defined according to their plain meaning, such that the alleged "agency" or "instrumentality" is subservient to—and acts at the direction, or under the control, of—a principal.

ActiveUS 149382880v.1

**A.      The plain meaning of "agency" or "instrumentality" entails "control," "direction," or "dominion" by a principal or a "parent-subsidiary" relationship**

Under Second Circuit and other case law, the term "agency" connotes the special relationship between principal and agent, in which the principal exercises control or dominion over the agent, and the agent acts at the direction of, or on behalf of, the principal.  Black's Law Dictionary, for example, defines agency as "[a] relationship that arises when one person (a principal) manifests assent to another (an agent) that the agent will act on the principal's behalf, subject to the principal's control, and the agent manifests assent or otherwise consents to do so." Black's Law Dictionary 74 (10th ed. 2014).  Similarly, New York courts have extensively examined the scope of an agency relationship and noted, for example, that "[a]gency is a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Hatton v. Quad Realty Corp.*, 100 A.D.2d 609, 610 (2d Dept.1984); *see Hollingsworth v. Perry,* 133 S. Ct. at  2666 ("the most basic features of an agency relationship are missing here. Agency requires more than mere authorization to assert a particular interest.  'An essential element of agency is the principal's right to control the agent's actions.'"); *see also Estates of Ungar,* 304 F. Supp.2d at 241 ("The HLF is an agency and instrumentality of Hamas because it acts 'for or on behalf of' Hamas as Hamas' fund-raising agent in the United States.").

Similarly, the plain and ordinary meaning of "instrumentality" incorporates elements of control and dominion, such as when an organization directs one of its sub-parts to perform a certain function for the organization.  According to Black's Law Dictionary, an instrumentality is "[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body."  Black's Law Dictionary 919 (10th ed. 2014).  Webster's Third New International Dictionary says the word means "something that serves as an intermediary or

- 10 -

ActiveUS 149382880v.1

agent through which one or more functions of a controlling force are carried out:  a part, organ, or subsidiary branch esp. of a governing body."  Webster's Third New International Dictionary 1172 (3d ed.1993); *see also United States v. Esquenazi,* 752 F.3d at 920-25 ("an entity must be under the control or dominion of the government to qualify as an 'instrumentality'").

New York courts have applied the instrumentality concept in the context of non-state actors as well, suggesting that the key element in the "instrumentality" relationship is one of "control" or "dominion"; a "subsidiary corporation over which the parent corporation exercises control in every day operations may be deemed an instrumentality." *A.W. Fiur Co., Inc. v. Ataka & Co., Ltd.,* 71 A.D.2d 370, 374 (3d Dept. 1979); *see also Dep't of Employment v. United States,* 385 U.S. at 359-60 (factors for determining "instrumentality" status include whether it "functions indispensable to the workings" of an entity; receipt of "substantial material assistance" from that entity; or "status virtually as an arm of" the entity.).

Furthermore, the concept of "implied agency" is instructive in the non-state actor context because it relates to situations in which the conduct of a principal creates an "implied" agency relationship.  But here, too, an element of "control" must always be present to create the relationship.  Black's has defined implied agency as "[a]n actual agency arising from conduct by the principal that implies an intention to create an agency relationship," which, in turn, rests on the concept of control.  Black's Law Dictionary 74 (10th ed. 2014).  Similarly, the Northern District of New York has held in the context of implied agency that the requirements are "(1) the manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking."  *Ayco Co. L.P. v. Becker*, 2011 WL 3651027, *7 (N.D.N.Y. 2011); *see also Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.,* 575 F.3d 1180, 1189 (11th Cir. 2009) ("[u]nder the common law actual agency, either implied or express, requires:  (1)

- 11 -

consent to the agency by both principal and agent; and (2) the control of the agent by the principal.")

Therefore, in order for the Court to find that Claimant is an "agency or instrumentality" of the FARC pursuant to the "plain meaning" of those terms, Plaintiff would need to prove that Claimant is "subject to [the FARC's] control", akin to a "subsidiary" of the FARC, "indispensable to the workings" of the FARC, or has a status "virtually as an arm of" the FARC. *See Hollingsworth,* 133 S. Ct. at 2666 ("An essential element of agency is the principal's right to control the agent's actions."); *United States v. Esquenazi,* 752 F.3d at 921 (an instrumentality "must perform a ... function at the ... behest" of another); *Commodity Futures Trading Comm'n* 575 F.3d at 1189 (agency requires "control of the agent the principal"); *Estates of Ungar,* 304 F. Supp.2d at 241 (agency or instrumentality may be found when it acts "for or on behalf of another"); *Ayco Co. L.P.*, 2011 WL 3651027, *7 ("understanding of the parties that the principal is to be in control of the undertaking."); *Dep't of Employment* 385 U.S. at 359-360 (an "instrumentality" may be found from its "status virtually as an arm of" the entity).  As discussed in detail below, Plaintiff has not even *alleged* (much less demonstrated) any such relationship.

  **B.**  **Plaintiff's definition of "agency" or "instrumentality" is inconsistent with the "plain meaning" of these terms.**

Plaintiff would have the Court adopt an unreasonably broad definition of the terms "agency or instrumentality."  Plaintiff purports to rely on a definition adopted by the U.S. District Court for the Middle District of Florida, *see Stansell*, No. 8:09-cv-02308-RALMAP, at *7-8 (M.D. Fla. Feb. 17, 2015), but that standard is far too broad, in part because it was developed by the *Stansell* plaintiffs in *ex parte* proceedings against the FARC.  There, the court stated that a party should be considered an "agency or instrumentality" of the FARC where one of the following criteria is met:

ActiveUS 149382880v.1

"(1) [the party is] materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of [the FARC]; and/or
(2) [is] owned, controlled, or directed by, or acting for or on behalf of, [the FARC]; and/or
(3) [is] playing a significant role in international narcotics trafficking [related to ... cocaine manufactured or supplied by the FARC]."  *Id*. at paras. 11-13.

The problem with this definition, of course, is that subparts (1) and (2) fail to incorporate the key elements—as defined by the U.S. Supreme Court—requiring an "agency" or "instrumentality" to be subject to the principal's control, such that the "agency" or "instrumentality" is akin to a subpart or "arm" of the principal.  *See Hollingsworth,* 133 S. Ct. at 2666 ("An essential element of agency is the principal's right to control the agent's actions."); *Dep't of Employment* 385 U.S. at 359-360 (an "instrumentality" may be found from its "status virtually as an arm of" the entity).

Plaintiff would have this Court ignore the plain meaning and disregard Supreme Court precedent in favor of a standard that the *Stansell* plaintiffs developed in *ex parte* proceedings in the Middle District of Florida, but that standard is misguided and inconsistent with the plain meaning of the terms "agency or instrumentality."  That said, even if this Court were to adopt Plaintiff's preferred standard, Plaintiff still could not prove that Claimant had the necessary "agency" or "instrumentality" relationship with the FARC.  Indeed, as discussed in greater detail below, Claimant has no relationship at all with the FARC, and has never done anything for, at the direction of, under the control, or on behalf of, the FARC.

## IV.   Claimant Has No Relationship Whatsoever with the FARC, Much Less The Relationship of an "Agency or Instrumentality" of the FARC

Regardless of what standard is used by the Court to assess the alleged "agency or instrumentality" relationship with the FARC, Plaintiff in this case could never meet his burden under § 201(a) of TRIA because Claimant has no relationship of any kind with the FARC. Plaintiff purports, largely through an expert report, to show that Hezbollah has some loose,

- 13 -

undefined relationship with the FARC, but Plaintiff fails entirely to explain how any such a relationship between Hezbollah and the FARC can be imputed as a matter of law to Claimant.  It is undisputed that Plaintiff's expert has no personal knowledge or expertise regarding Claimant, and Plaintiff fails to offer a shred of evidence regarding Claimant, other than the fact that Claimant's assets have been blocked by OFAC, albeit in error.

Plaintiff tries to cobble together a multi-step chain of alleged, vaguely-defined relationships between Claimant, Hezballah, and the FARC, but this effort likewise must fail in the absence of evidence that Claimant acted at the direction, under the control, of on behalf of the FARC.  Specifically, Plaintiff alleges that:  (a) Claimant has some vaguely-defined connection to Hezbollah; (b) *Hezbollah* is somehow an agency or instrumentality of *the FARC* by virtue of Hezballah's undefined involvement in narcotics activities related in some way to the FARC; and (c) therefore, Claimant—and presumably any other party with *any* purported connection to Hezbollah—is also an "agency or instrumentality" of the FARC for purposes of the TRIA.  *See* DE 4, at paras. 12-16, 24; Gaddis Affidavit, 11-31.

As demonstrated below, each chain of Plaintiff's argumentation fails because (A) Claimant has no connection whatsoever to the FARC, much less an "agency or instrumentality" relationship, (B) Claimant is not a "supporter" of Hezbollah, much less an "agency or instrumentality" of Hezbollah, and (C) Hezballah is not an "agency or instrumentality" of the FARC (but is, rather, an agency or instrumentality of Iran).

A.     **Plaintiff has failed to allege, much less demonstrate, that Claimant has any connection whatsoever to the FARC, much less an "agency or instrumentality" relationship**

Plaintiff's theory—under which Claimant supposedly has some indirect relationship, through Hezbollah, with the FARC—fails for several reasons.  *First*, Plaintiff does not—and cannot—allege any direct and meaningful connection between Claimant and the FARC, and no

- 14 -

court could find an "agency or instrumentality" relationship, consistent with the "plain meaning" of those terms, in the absence of such a connection. *Second,* even if the Court adopts the misguided "agency or instrumentality" standard from the Middle District of Florida, Plaintiff does not—and cannot—prove facts that meet even that very loose standard, i.e., Plaintiff cannot prove that Claimant provided material support to the narcotics trafficking activities of the FARC; that Claimant was owned, controlled, directed by, or acted on behalf of, the FARC; or that Claimant played a significant role in international narcotics trafficking related to cocaine supplied by the FARC. Under these circumstances, there is simply no legal or factual basis to conclude that Claimant is an "agency or instrumentality" of the FARC.

> ### 1.    Plaintiff has failed to allege, much less prove, *any* direct or otherwise meaningful connection between Claimant and the FARC

Plaintiff has failed to allege, much less prove, any direct or otherwise meaningful connection between Claimant and the FARC. Plaintiff's allegations purporting to make such a connection are limited to a single affidavit, provided by Mr. David Gaddis, which says virtually nothing about Claimant and fails to draw a single concrete connection between Claimant and the FARC. In that affidavit, the only material reference Mr. Gaddis makes to Claimant is to identify him as among the entities designated as SDGTs by OFAC by virtue of an alleged connection *to Hezbollah. See* DE 4, Gaddis Affidavit, at para. 22. Mr. Gaddis' affidavit makes no effort to identify a concrete connection between Claimant and the FARC and is virtually *silent* regarding the Claimant.

The Plaintiff's burden is to prove that Claimant has a direct, concrete connection *to the FARC* (not to Hezbollah), such that Claimant is under the control and direction of the FARC and is acting on behalf of the FARC. Nothing in Mr. Gaddis' affidavit, Plaintiff's Petition, or in any of the additional supporting materials presented by Plaintiff even attempts to present such proof,

ActiveUS 149382880v.1

nor any other factual basis purporting to connect **Claimant** to the FARC.  *See* Warde Report, at paras. 24-29.  For this reason alone, Plaintiff has failed to even allege (much less prove) facts that would satisfy his burden under § 201(a) of the TRIA.  Claimant is thus entitled as a matter of law to the dismissal of the Petition.

Even if the Plaintiff had alleged some concrete connection between Claimant and the FARC (which he has not), the Court would need to determine whether the alleged connection constituted an "agency or instrumentality" relationship, according to the "plain meaning" of those terms, and—if so—whether Plaintiff had carried his burden of proof on the subject.  As discussed above, under Second Circuit law, in order for the Court to make a finding that Claimant was an "agency" or "instrumentality" of the FARC, the Plaintiff here would need to prove that Claimant acted under the "control" or "for or on behalf of" the FARC; is akin to a "subsidiary" of the FARC; "indispensable to the workings" of the FARC; or has a status "virtually as an arm of" the FARC.  *See, e.g., Hollingsworth,* 133 S. Ct. at 2666 ("An essential element of agency is the principal's right to control the agent's actions.").  Plaintiff has simply failed to make such allegations, much less adduce any evidence that could prove his allegations.

> **2.  Plaintiff's allegations and purported evidence are insufficient to create an "agency" or "instrumentality" relationship, even under the Middle District of Florida's overbroad definition of those terms**

Even if this Court were to adopt the overly-broad "agency or instrumentality" standard from the *Stansell* litigation from the Middle District of Florida, Plaintiff would still fail to meet his burden of proof.  As discussed above, the *Stansell* court developed an overly-broad three-part test for determining the "agency or instrumentality" status of an entity under TRIA, but Plaintiff's motion has failed to meet even the low bar reflected by that standard.

*First*, Plaintiff has failed to allege (much less, demonstrate) that Claimant had any concrete relationship with the FARC, such as by providing material support to the FARC's

ActiveUS 149382880v.1

narcotics trafficking activities.  Mr. Gaddis' affidavit asserts that Hezbollah has some undefined involvement in narcotics activities related to the FARC, *see* DE 4, Gaddis Affidavit, at para. 27 (*e.g.*, "It is undeniable that Hezballah and its members and affiliates are heavily involved in the narcotics trade, aiding the FARC with its global cocaine distribution from Colombia"), but Mr. Gaddis offers no facts linking *Claimant* to any such activities of the FARC.  *See* Warde Report, at paras. 24-29.  Absent proof of such facts, there is no basis to conclude that Claimant provided any support, much less ***material*** support, to the FARC's narcotics trafficking activities.

*Second*, Plaintiff has failed to allege (much less, demonstrate) that Claimant has acted "for or on behalf" of the FARC.  In *Estates of Unger,* 304 F. Supp. 2d at 241, a Federal district court held that the Holy Land Foundation for Relief and Development ("HLF") was an agency or instrumentality of Hamas because it acts "for or on behalf of" Hamas as Hamas' fund-raising agency in the United States.  That conclusion was supported by the factual record:  OFAC's designation of HLF was accompanied by a specific statement from OFAC that it acts "for or on behalf of Hamas."  *Id; see R.J. O'Brien & Assoc.*, 892 F.Supp.2d at 1044 (terrorist operative was "agency or instrumentality of Al Qaeda" because he "is a member of Al Qaeda").  By contrast, OFAC's press statement that accompanied Claimant's designation (upon which Plaintiff and Mr. Gaddis exclusively rely) contained *no mention* of the FARC, let alone a statement that Claimant acted "for or on behalf of," or were owned, controlled, or directed by the FARC.  Nor does Plaintiff provide any other evidence of such a relationship.  Plaintiff has therefore failed completely to allege that the Claimant was owned, controlled, directed by, or acting for or on behalf of, the FARC.

*Third*, Plaintiff has failed to allege (much less, prove) that Claimant has played any role—much less a "significant" role—in the narcotics trade, whether related to cocaine supplied by the FARC or otherwise.  In fact, Claimant has nothing to do with the narcotics trade.  *See*,

- 17 -

*e.g.*, Tajideen Affidavit, paras. 4-5, 16-28; Mallat Affidavit, para. 15-16.  Aside from a single

ambiguous and unsubstantiated sentence in Mr. Gaddis' affidavit falsely suggesting that

narcotics investigations "implicated" Mr. Tajideen and companies associated with him, there is

no evidence whatsoever connecting Claimant to such activities.  *See* DE 4, Gaddis Affidavit,

para. 30.  Mr. Gaddis cites a Verified Complaint from *United States v. Lebanese Canadian Bank*

*SAL*, 11-9186-CV-9186, (S.D.N.Y. 2011) (the "LCB Complaint"), purporting to link Mr.

Tajideen to narcotics trafficking, DE 4, Gaddis Affidavit, para. 20, but that evidence (falsely)

purports to link Mr. Tajideen only to *Hezbollah*, not to the FARC or any narcotics trafficking

activities.  *Id*.  As Claimant's expert witness, Dr. Ibrahim Warde, has pointed out, the LCB

Complaint *does not even mention the FARC*. *See* Warde Report, at paras. 24-26.  In other words,

the LCB Complaint did nothing more than restate the same unproven (and irrelevant to this case)

allegations that OFAC had already stated publicly.  Finally, setting aside these issues, it is worth

noting that excerpts from the LCB Complaint are nothing more than *allegations* at the outside of

a litigation in a *complaint* that was ultimately settled without any factual findings by the court.[2]

Plaintiff has made no allegation (much less, offered evidence to prove) that Claimant played any

role in international narcotics trafficking related to cocaine supplied by the FARC.  The

Plaintiff's Petition must therefore be denied.

### B.    Plaintiff has failed to establish that Claimant is a "supporter" of Hezbollah, much less an "agency or instrumentality" of Hezbollah

Plaintiff has also failed to prove  with evidence that Claimant are "supporters" of

Hezbollah, much less that each Claimant is an "agency" or "instrumentality" of Hezballah.

---

[2]  But rather than treating the allegations as such, Mr. Gaddis copies them as if they were proven facts.  It is
axiomatic that sound expert opinion cannot rest on mere allegations by a party in a litigation.  Rule 702 requires that
an expert independently research and gather information and evidence, objectively analyze and test the information
and evidence, and form independent judgments and opinions based thereon. F.R.E. 702.  As Mr. Gaddis himself
observed, DE 4, Gaddis Affidavit, at 21, the case was resolved  before a court made any findings on any of the
allegations he now asserts as fact.  *See United States v. Lebanese Canadian Bank SAL*, No. 11-Civ.-9186 (S.D.N.Y.
June 25, 2013) (Stipulation and Order of Settlement).

Plaintiff relies entirely on the OFAC designations of Mr. Tajideen and his companies as alleged

supporters of Hezbollah, DE 4, at 14-16; Gaddis Affidavit, at 22, but those designations are

based on mere allegations, under lower administrative standards, and have been challenged by

Mr. Tajideen in an ongoing OFAC delisting process.

Indeed, Plaintiff's reliance on the OFAC designation of Claimant ignores the case law

that Plaintiff must come forward with proof *above and beyond* the OFAC designation to

demonstrate "agency or instrumentality" status, particularly where, as here, Claimant has come

forward with his own evidence rebutting any presumption resulting from the OFAC designation.

As the Eleventh Circuit has explained:

> [I]t is not proper for the district court to rely solely on [an] OFAC designation as
> creating an irrebuttable presumption of agency or instrumentality status. The
> agency or instrumentality determination is separate from the blocked asset
> determination.  The district court must therefore provide alleged agencies or
> instrumentalities an opportunity to challenge allegations of agency or
> instrumentality status with their own evidence.

*Stansell v. FARC,* 71 F.3d 713, 731, n. 13 (11th. Cir. 2014); *Weinstein*, 609 F.3d at 51 ("the

presumption [under TRIA enforcement actions] could be overcome."); *Funnekotter v.*

*Agricultural Development Bank of Zimbabwe*, 2015 WL 3526661, *16 (S.D.N.Y. 2015)

("OFAC's SDN designation in and of itself was 'not dispositive' of the ultimate question—in

that case, whether defendants were… instrumentalities…[A]n entity on OFAC's list can offer

evidence to this court to demonstrate that the designation is incorrect….).  Thus, although an

OFAC designation may be sufficient to establish that Claimant's assets have been blocked, that

fact is undisputed in this case.  The issue here is whether Plaintiff has offered evidence sufficient

to prove that each Claimant is an agency or instrumentality of *the FARC*, and plainly Plaintiff

has not.  Plaintiff points only to OFAC's designation and press release, which allege a

connection between Claimant and Hezbollah, but *are completely silent on any alleged*

ActiveUS 149382880v.1

*connection to the FARC*.  Indeed, the OFAC designation in this case had *nothing whatsoever to do with the FARC* and thus cannot be offered as evidence of any relationship with the FARC.

Whereas Plaintiff has adduced no evidence supporting the alleged connection between Claimant and the FARC, Claimant, by contrast, has adduced evidence in the form of fact and expert affidavits attesting to the lack of any such relationship.  Specifically, the Claimant offers an affidavit testifying that neither he nor his business enterprises have any connection to Hezbollah or the FARC, and affirms that he has never knowingly supported—and would never knowingly support—terrorism or narcotics trafficking.  Tajideen Affidavit, paras. 2-49. Claimant has also submitted an affidavit from Chibli Mallat, a leading Lebanese jurist and academic, and outspoken Hezbollah critic, who attests that Mr. Tajideen has no affiliation with Hezbollah or the FARC.  Mallat Affidavit, paras. 10-17.  In light of such evidence—and the complete absence of any evidence to the contrary—Plaintiff's petition must fail.

**C.     Even assuming *arguendo* that Hezbollah's activities could somehow be imputed to Claimant—which they cannot be—Plaintiff has not (and cannot) prove that Hezbollah is an "agency or instrumentality" of the FARC**

Plaintiff offers an expert affidavit in an effort to prove that Hezbollah is an "agency" or "instrumentality" of the FARC, but the affidavit is insufficient to prove this unfounded theory. To the contrary, Plaintiff's theory that Hezbollah is an agency or instrumentality of the FARC is directly contradicted by well-settled facts, decades of U.S. intelligence, case law, and findings regarding Hezbollah.  Indeed, as Plaintiff's own evidence demonstrates, Hezbollah is an agency or instrumentality of the Islamic Republic of Iran, not the FARC.

Plaintiff's own expert appears to admit that Hezbollah is a proxy for, and acts on behalf of, the country of Iran (and its military and intelligence forces), not a narco-trafficking organization operating out of Colombia.  Mr. Gaddis' affidavit notes unequivocally that "[i]n 2008 alone, Iran provided hundreds of millions of dollars to Hezbollah and trained thousands of

- 20 -

Hezbollah fighters at camps in Iran." DE 4, Gaddis Affidavit, at 18. Indeed, Mr. Gaddis'

affidavit leaves no doubt as to the proxy relationship between Hezbollah and Iran—and

operational dependence of Hezbollah upon Iran. *See id.* ("Iran continues to provide a significant

portion of Hezbollah's funding"). Other experts and the U.S. government have reached similar

conclusions that Hezbollah is an Iranian proxy, not an agency or instrumentality of the FARC.

*See, e.g.,* Testimony of Ilan Berman, U.S. House of Representatives Committee on Homeland

Security, Subcommittee on Counterterrorism and Intelligence, July 7, 2011 (describing Iran to

the U.S. House of Representatives Subcommittee on Counterterrorism and Intelligence as

Hezbollah's "progenitor and main sponsor"); *Peterson,* 264 F.Supp.2d at 51 ("Hezballah is ...

the name of a group of Shi'ite Muslims in Lebanon that was formed under the auspices of the

government of Iran… Hezballah is largely under Iranian orders. It's almost entirely acting ...

under the order of the Iranians and being financed almost entirely by the Iranians."); *Wagner v.

Islamic Republic of Iran,* 172 F. Supp. 2d 128, 132 (D.D.C. 2001) ("Hezballah, in turn, has been

shown to be an agency or instrumentality of the Iranian [Ministry of Intelligence]"). OFAC itself

has described Iran as Hezbollah's "patron."[3] Plaintiff has offered no comparable evidence—and,

indeed, there is none—demonstrating that Hezbollah is an agency or instrumentality of the

FARC.

      Furthermore, Claimant has conclusively rebutted Mr. Gaddis' affidavit with the expert

report of Dr. Ibrahim Warde, who has demonstrated that Mr. Gaddis lacks personal knowledge

or expertise in the Middle East and Africa, as well as in terrorism, Islamist movements, or

Hezbollah. Warde Report, at paras. 13-32. Mr. Gaddis also lacks any personal knowledge or

expertise relating to Kassim Tajideen or his businesses. Warde Report, at para. 20. Mr. Gaddis

therefore lacks the requisite "knowledge, skill, [or] experience" to testify on these issues, under

---

[3] *See* U.S. Department of the Treasury, Press Release, *Treasury Targets Hezballah for Supporting the Assad Regime,* Aug. 10, 2012, *available at* http://www.treasury.gov/press-center/press-releases/Pages/tg1676.aspx.

ActiveUS 149382880v.1

F.R.E. 702.  As Dr. Warde demonstrates, Mr. Gaddis' unsubstantiated allegations, as well as the evidence he cites, amount to nothing more than a recitation of OFAC's press releases, which, as noted above, do not even allege—much less purport to establish with evidence—any connections between Claimant and the FARC.  Warde Report, at paras. 20-32.  Mr. Gaddis also relies heavily on the LCB Complaint described above, but that Complaint contains only allegations—not proof—and, in any case, Mr. Gaddis does not even purport to have any personal expertise or knowledge regarding that prosecution (nor did he draft, sign, verify, or otherwise participate in the prosecution).  Plus, Mr. Gaddis wrongly asserts that the LCB Complaint included "sworn testimony" about Mr. Tajideen when, in fact, it is merely a Complaint in a case that had nothing to do with Mr. Tajideen.  *See* Warde Report, at paras. 22-24.  Based on an appropriate, balanced assessment of the actual factual record, Dr. Warde concludes that Mr. Gaddis' methodology is deeply flawed and that Hezbollah is not an "agency or instrumentality" of the FARC.  *See* Warde Report, at paras. 33-51.

Indeed, this would not be the first time that Mr. Gaddis' testimony has been found to be unreliable.  Mr. Gaddis offered a similar affidavit for Plaintiff in a TRIA writ of execution case in the District Court for Puerto Rico.  *Doe v. Ejercito de Liberacion Nacional*, 2015 WL 974910 (D. Puerto Rico 2015).  There, the judge took an appropriately skeptical view of Mr. Gaddis' affidavit, which unsuccessfully attempted to paint a different set of claimants as an agency or instrumentality of the FARC and ELN:

> "I note that the connection between FARC/ELN and Bermúdez–Sauza and Bermúdez–Santiago appears quite tenuous…Nothing in the affidavit suggests that Bermúdez–Sauza or Bermúdez–Santiago are part of the Norte del Valle Cartel, much less FARC/ELN…At the very least, more proof—or better argumentation— will be necessary to prevail in any future garnishment proceedings."  *Id*. at *2, n. 2.

ActiveUS 149382880v.1

The Court ultimately denied the motion in support of which Mr. Gaddis testified. *Id.*[4]  Likewise, here, Mr. Gaddis offers no rational basis to conclude that Hezbollah is an "agency or instrumentality" of the FARC.  In light of the deficiencies in Mr. Gaddis' testimony—including his complete lack of knowledge or expertise regarding Claimant or Hezbollah—his affidavit cannot form the basis of any finding as to Claimant or Hezbollah in this case.  Instead, his testimony must be disregarded, just as it was by the judge in the District of Puerto Rico.[5]

Moreover, as Claimant has described in detail in a separate brief filed today, *see* Third-Party Claimant Motion to Strike Plaintiff John Doe's Expert Affidavit, Mr. Gaddis' affidavit should be excluded as a violation of Mr. Gaddis' post-government employment restrictions, as well as restrictions on the use of Department of Justice and non-public information based upon government employment.  F.R.E. 702-703; 18 U.S.C. § 207; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *EEOC v. Exxon Corp.*, 202 F.3d 755, 757-59 (5th Cir. 2000) (testimony excludable for violation 18 U.S.C. § 207).  These rules generally prohibit a government official from serving as a paid expert for a private litigant in U.S. court—and purporting to rely on nonpublic information from the government—in relation to any particular matter in which he or she was previously involved for the government.  *See*, *e.g.*, *Gulf Grp. Gen. Enterprises Co. W.L.L. v. United States*, 98 Fed. Cl. 639, 645-46 (2011) ("the expert had participated personally and substantially in a particular matter and, thus, would have violated section 207(a)(1) had she testified as an expert on that same matter.").  In any case, it is

---

[4] It is also worth noting that the Judge expressed "frustrati[on] that Plaintiff would knowingly hide such adverse precedent [regarding their garnishment proceedings] and attempt to induce the court into wrongly granting its *ex parte* garnishment motion." *Id.* at *2 n. 2.

[5] To the extent any reliance is placed on Mr. Gaddis' affidavit, Claimant is entitled to depose him pursuant to Fed. R. Civ. P. 26(b)(4) ("[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."), and, if necessary, to cross examine him in a mini-trial guaranteed by New York law.  C.P.L.R. § 5239 ("Where there appear to be disputed questions of fact, the court shall order a separate trial"); *Martinez v. Capital One, N.A.*, 863 F.Supp.2d 256, 260 (S.D.N.Y. 2012) ("Article 52 [of the C.P.L.R.] also sets forth procedures to resolve disputes that arise under it... If there are disputed issues of fact, the court is directed to order a separate trial.").

undisputed that Mr. Gaddis has no knowledge or expertise concerning any alleged relationship between Claimant and the FARC.  Under these circumstances, his affidavit cannot form the basis of any finding of an "agency" or "instrumentality" relationship between Claimant and the FARC.  Accordingly, Plaintiff's Petition must be denied.

**V.     In the Alternative, Claimant is Entitled to a Trial to Present Further Evidence and to Challenge Plaintiff's Witness**

In the alternative, to the extent that this Court determines that the allegations support the theory that Claimant is an "agency or instrumentality" of the FARC, Claimant contests the facts and requests a trial to present further evidence and challenge Plaintiff's witness and evidence, as required under C.P.L.R. § 5239 ("Where there appear to be disputed questions of fact, the court shall order a separate trial"; *Martinez*, 863 F.Supp.2d at 260 ("Article 52 [of the C.P.L.R.] also sets forth procedures to resolve disputes that arise under it... If there are disputed issues of fact, the court is directed to order a separate trial.")

- 24 -

## CONCLUSION

WHEREFORE, Claimant opposes and  moves to dismiss Plaintiff's Petition (DE 4), pursuant to Fed. R. Civ. P. 69, 12(b)(6); N.Y. C.P.L.R. §§ 5225, 5239, 304, and 2102. [6] In the alternative, Claimant requests a separate trial of the disputed questions of fact, as required by C.P.L.R. §§ 5225, 5239.

/s/ David W. Bowker

David W. Bowker
New York Bar No. 4200184
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6558
Facsimile:  (202) 663-6363
David.Bowker@wilmerhale.com

Attorney for Kassim Tajideen

---

[6] Claimant also submits that Plaintiff's underlying judgment against the FARC—which forms the basis for its Petition—is void for lack of subject matter jurisdiction in the underlying proceeding in the U.S. District Court for the Southern District of Florida.  DE 1 (attaching Judgment in the matter of *John Doe v. Ejercito de Liberacion Nacional*, No. 10-21517-CIV-HUCK (S.D. Fla. 2012)).  *See Kiobel v. Royal Dutch Petroleum*, 133 S. Ct. 1659 (2013) (Alien Tort Statute does not extend to torts that occur outside of the United States and do not otherwise "touch and concern" the United States).

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on the 11th day of November, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ David W. Bowker
Attorney

- 26 -