IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

JOHN DOE,

      Petitioner/Judgment Creditor             Case No.: 1:15-cv-08652-LTS

v.                                               Judge: Laura Taylor Swain

EJERCITO DE LIBERACION NACIONAL ("ELN"), and
REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC),

      Defendants/Judgment Debtors

and

JPMORGAN CHASE BANK, N.A.,

      Respondent,
_____

JPMORGAN CHASE BANK, N.A

      Third Party Petitioner,

v.

KEITH STANSELL,  et al.              **THIRD PARTY RESPONDENTS'**

      Third Party Respondents.        **REPLY TO RESPONSES DE 36-37**
_____

      Third Party Respondents KEITH STANSELL, MARC GONSALVES, THOMAS

HOWES, JUDITH JANIS, CHRISTOPHER  JANIS, GREER  JANIS, MICHAEL  JANIS, and

JONATHAN  JANIS, (hereafter "The Stansell Respondents") hereby reply to the Responses

filed by SDGT Claimant/Owner KASSIM TAJIDEEN [DE 36] and JPMORGAN CHASE

BANK ("JPMCB") [DE 37] to the motion to transfer or dismiss [DE 19-20].[1]

      JPMCB erroneously argues against transfer because an NDIL turnover order will force

them to violate the John Doe New York restraining notice statute and expose them to liability for

damages.  However, the New York restraining notice statute specifically recognizes that a court

order is an exception to the duty of restraint.  *See* CPLR § 5222(b).  The New York Court of

Appeal, and many other state and federal courts in New York, have clearly held that mere service

of a restraining notice does not create a judgment lien under New York law.  *See Aspen*

_____

[1] The Stansell Respondents adopt their arguments and authorities on judgment lien priority and the "first-filed rule" from their Reply DE 47.

*Industries v. Marine Midland Bank*, 421 N.E.2d 808, 810–11 (N.Y. 1981), (and the other New York authorities cited in DE 20, Sec I).   If a restraining notice does not create a judgment lien under New York law, then a court order directing turnover on a priority judgment lien on the restrained asset will extinguish the duration of the restraint. This issue was squarely decided in *Graze v. Bankers Trust Co*., 257 N.Y.S.2d. 483, 484-485 (1965).[2]

 The banks accuse the Stansell Respondents of forum shopping.  Such a characterization is unfair.  Plaintiffs are allowed to choose their forum.  28 U.S.C. § 1963 allows Plaintiffs to register their MDFL judgment "**in any other district**."   Here these victims, all of whom live in multiple states, chose to proceed in Florida but were forced out of that jurisdiction *by the Banks*. It is the banks who are insisting on litigating these executions in their backyard – where no claimants reside - as opposed to the NDIL where the Stansell Respondents have clear priority.[3]

---

[2] The New York Court of Appeal in *Aspen Industries, supra*, was presented with a judgment creditor's claim of liability against a garnishee bank for violating a restraining notice. After the bank was served with the restraining notice on the judgment debtor's account, the bank thereafter applied funds in the account in setoff of the debtor's loan obligation to the bank.  *Id*. at 811-812.   The Court held that "because of Marine's right of setoff to satisfy a pre-existing obligation of the judgment debtor to the bank, Aspen cannot establish such damages."  *Id*.  If New York's highest court rejected liability on a restraining notice violation for a bank paying itself back on the debtor's loan, then clearly a bank cannot be liable for complying with a federal court order directing turnover on a priority judgment lien.

[3] *See In re Volkswagen of America*, 545 F.3d. 304, 321 (5th Cir. 2008)("although aspersions are often cast on plaintiffs' "forum shopping," frequently by defendants also "forum shopping," we have explicitly stated that a plaintiff's motive for choosing a forum "is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.");  *Iragorri v. United Technologies Corp*. , 274 F.3d. 65, 75 (2d Cir. 2001)( Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of forum non conveniens not because of genuine concern with convenience but because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum);  *CSX Transportation*

Plaintiffs chose the NDIL forum in part because all the Banks were subject to jurisdiction there, JPMCB had recently deposited into the NDIL registry blocked account proceeds which it also claimed were "located" in New York, and later filed an interpleader there, JPMCB's OFAC compliance office is in Illinois, and because Illinois, the NDIL, and the 7th Circuit have well developed law in TRIA cases involving blocked electronic funds transfers (EFTs), and post-judgment execution procedures in general, specifically the Illinois supplementary proceedings statute, also known as the Third Party Citation statute. 735 ILCS 5/2-1402.

The Banks' claim that the blocked accounts are "located" in New York is a legal fiction that they are spinning as a way to improperly force terrorism victims (and other judgment creditors) to come to New York to litigate on their home turf. Many other states allow their courts to order turnover of intangible assets like bank account proceeds, so long as the court has personal jurisdiction over the garnishee bank, including, but not limited to, Arizona, Wisconsin, Illinois, California **and New York**.[4]

---

*v Auburn 36, LLC*, 2015 WL 4465071 at \*2 (S.D.Il. 2015)("[defendant] argues that this is a "blatant exercise of forum shopping." However he does not provide any authority to support the proposition that CSX is prohibited from entering the underlying judgment or engaging in supplemental proceedings in the Southern District of Illinois. In fact, other federal district courts have held that a judgment creditor may engage in supplemental proceedings in multiple districts. (citations omitted)").

[4] *See Restatement (Second) of Conflicts of Law*, § 68 Garnishment of Person Owing Debt to Principal Debtor ("A state has power to exercise judicial jurisdiction to apply to the satisfaction of a claim an obligation owed to the person against whom the claim is asserted if the obligor is subject to the judicial jurisdiction of the state, even though the state lacks jurisdiction over the person against whom the claim is asserted."); *Midland Funding, LLC v. Mizinski*, 854 N.W.2d 371 (Wis. Ct. App. 2014); *Ellsworth Land & Livestock, Inc. v. Bush*, 233 P.3d 655 (Ariz. Ct. App. 2010); *Global Money Mgmt. v. McDonnold*, No. 06cv34 BTM (WMc), 2009 WL 3352574 (S.D. Cal. Oct. 15,2009); *Am. Freight Sys., Inc. v. Temperature Sys., Inc. (In re Am. Freight Sys., Inc.)*, 173 B.R. 739 (Bankr. D. Kan. 1994) (involving Bankruptcy Rule 7004(d) authorizing nationwide service of process which was held to supersede state procedure).

The Banks conveniently ignore the irony here that the New York Court of Appeals and the 2nd Circuit have ruled that New York courts may order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor when those certificates are located outside New York.  *Koehler v. Bank of Bermuda*, 12 N.Y.3d. 533, 911 N.E.2d. 825 (2009);[5] *Koehler v. Bank of Bermuda*, 577 F.3d. 497 (2d Cir. 2009).  ***This means a New York state or federal court can order an Illinois or Florida bank to turnover funds in Illinois or Florida accounts so long as the banks are subject to personal jurisdiction in New York***. This is precisely the law of Illinois and the 7th Circuit.  *See Gates v Syrian Arab Republic & JPMCB*, 755 F.3d. 568, 579 (7th Cir. 2014).

Incredibly, the Banks continue to argue that bank accounts are *tangible* assets and that *Gates* is not controlling, and that the *Gates* holding was instead mere dicta.  DE 64 at pp. 25, 28; DE 60, p. 15.  As authority for their proposition that "bank accounts are tangible assets" the Banks rely on *In re Marcos Human Rights Litigation*, 1997 WL 428544, at *2 (N.D. Ill. July 24, 1997).  The *In re Marcos Human Rights Lit*. decision is not binding or controlling authority like *Gates*, and is easily distinguishable on the facts.[6]  More importantly, that is not a correct statement of Illinois law,[7] or New York law,[8] or Florida law.[9]

---

[5] *Koehler* has since been limited by the New York Court of Appeals in *Motorola Credit Corp. v. Standard Chartered Bank*, 21 N.E.3d 223, 228 (N.Y. 2014)( New York courts cannot order a garnishee bank operating branches in New York to restrain a debtor's assets held in foreign branches of the bank).

[6] The plaintiffs in that case attempted to garnish funds held in Switzerland by issuing garnishment summonses on branch banks in Chicago,  *Id*. at *2.  Here, the Banks claim the accounts are "located" in New York, not a foreign country, and Plaintiffs served the Citations on the Banks in New York.  A close reading of Judge Gettleman's opinion reveals that it was based on the "specific facts of this case", including that the account was "held outside of the United States" and the Chicago branches did not have

Further, the Banks' position being taken now about the nature of the EFTs is entirely at odds with JPMCB's previous arguments in *Gates*, which were advanced by the same counsel who represents JPMCB here and BNYM in the NDNY.  JPMCB previously argued to Judge Kendall that under Illinois law "a bank account is an **intangible asset** representing a bank's debt to its customer", *citing,Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Sav. Bank*, 235 Ill. App. 3d 978, 982 (2d Dist. 1992)(emphasis added).  *See Gates v Syrian Arab Republic*, NDIL Case No. 1:11-cv-8715, DE 59, ¶ 3, and again in JPMCB's Response DE 84, ¶ 2, and then again in their Memo DE 134 at p. 5 ("The property at issue here is an intangible, a bank account").  JPMCB's failure to cite Illinois law to this Court – which it had previously cited at least three times to Judge Kendall - is another misrepresentation of governing law here.

---

access to the information indicating the existence of an account at the main office in Switzerland.  *Id.* at *3-4 (emphasis added).   Those facts simply do not exist here.

[7] *Asher v. U.S.*, 436 F.Supp. 22, 25 (N.D. Il. 1976)( Under Illinois law, "intangible" personal property …includes bank accounts);  *Asher v. U.S.*, 570 F.2d. 682, 684-685 (7th Cir. 1978)(bank account was "intangible personal property", *citing Levine v. Pascal*, 94 Ill.App.2d 43, 55, 236 N.E.2d 425, 430 (1968); *In re Porayko*, 2010 WL 1253949, *5 (N.D. Il. 2010)( "both stock certificates and bank accounts are intangible personal property", citing 30A Ill. Law and Prac. Property § 23 (2010));  *Moniot v. Property Tax Appeal Board*, 11 Ill. App. 3d. 309, 311-312 (1973)(bank accounts are intangible property).

[8] See *In Re the Matter of Blowers*, 957 N.Y.S.2d. 263 *2 (2012)("it has long been established that bank accounts are intangible property");  *Blitz v. Opisso*, 117 N.Y.S.2d. 45, 47 (1952)(" money on deposit in a bank account, which, of course, is intangible property");  *In Re Kirchenbaum's Will*, 92 N.Y.S.2d. 281, 284 (1949)(right to a bank account is intangible property).

[9] *Wiggins v Parson*, 446 So.2d. 169, 172 (Fla. 4th DCA 1984)(bank accounts are intangibles);  *Williams Mgmt Enterprises, Inc. v Buonauro*, 489 So.2d. 160, 163 (Fla. 5th DCA 1986)("funds" deposited in a bank account are intangible personal property);  *Souder v Johnson*, 501 So.2d. 745, 746 (Fla. 4th DCA 1987)(bank accounts are intangible personal property);  *In Re Cravey & Assoc. v. Barnett Bank of Florida*, 109 B.R. 472, 473 (M.D. Fla. 1989)("A bank account is an intangible right of the depositor to receive payment from the bank");  *Land-Cellular Corp. v Zokaites*, 463 F.Supp. 2d. 1348, 1354 (S.D. Fla. 2006)(bank accounts are intangible proceeds).

The *Gates* decision on this issue was not mere dicta.  The 7th Circuit ruling confirmed the district court's jurisdiction, and specifically cited to controlling Illinois law on intangible assets. Moreover, the Court noted that the Baker plaintiffs "argue that the Syrian assets held by AT & T are actually located in New York rather than Illinois."  *Id*.  JPMCB also raised the issue of the accounts "location" in New York with the district court below in 2012.[10]

JPMCB also argued to Judge Kendall in *Gates* that "the best approach may be to apply the law of the state where the assets are located." [Gates DE 134, p. 5].  But then JPMCB did not inform Judge Kendall (nor do they cite here) of the 2009 New York Court of Appeals decision in *Koehler v. Bank of Bermuda*, 12 N.Y.3d. 533, 911 N.E.2d. 825 (2009) where the Court answered the question certified by the 2nd Circuit and held that:

> In short, the principle that a New York court may issue a judgment ordering the turnover of out-of-state assets is not limited to judgment debtors, but applies equally to garnishees. Consequently, we conclude that a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to CPLR 5225(b).

*Id*. at 541.  *Koehler* is still controlling New York law with respect to assets in the U.S.

---

[10] JPMCB argued that "The Bakers have made a motion for reconsideration in order to press their contention that the bank account where the AT&T funds are being held is located in the State of New York" and that this motion "raises questions regarding the location of the blocked accounts being held by JPMCB and the law applicable to those accounts."  Ex. 10, *Gates*, DE 134 at p. 2.  JPMCB then continued to argue that "all of the branches of a bank in a given state as a de facto separate entity from its branches in other states", *citing Nat'l Union Fire Ins. Co. v. Advanced Emp 't Concepts, Inc.*, 269 A.D.2d 101, 703 N.Y.S.2d 3 (1st Dep't 2000) ("[T]he mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment merely by serving a New York branch"); *Allied Maritime, Inc. v. Descatrade SA*, Docket No. 09-5329-cv, 2010 WL 3447882, at *3 (2d Cir. Sept. 3,2010).; and *Woodlands, Ltd. v. Westwood Ins. Co.*, 965 F. Supp. 13, 15 (D. Md. 1997) ("Maryland treats its bank branches as separate entities and would not find service on a branch bank in Maryland sufficient to attach an account located in Virginia").  *Id*.
.

The blocked accounts held by the Banks, including the blocked and canceled international EFT proceeds, are now being held in interest bearing accounts in the U.S. in compliance with OFAC regulations.  These regulations do not specify the location where these blocked accounts need be "located", and different state and national banks maintain and report their blocked accounts from various states.  There is nothing prohibiting a bank from relocating its OFAC compliance office to a different state, or relocating the office where the bank manages and reports its blocked accounts.  For example, in the *Gates* case, JPMCB stated that:

> The blocked account involved in this motion was created by JPMCB, and the AT&T account from which the funds were withdrawn was located in New York State. JPMCB had to assign the account to a particular branch or state for purposes of FDIC reporting and annual reporting to the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury, and it determined for both purposes that the situs of the account was in New York.

*Gates* NDIL DE 134, p. 5.  JPMCB **decided** where it would "locate" this intangible asset, and if tomorrow JPMCB wants to relocate it to New Jersey, Illinois, or another state, it could do so.

During the pendency of the OFAC blocking, there is nothing prohibiting the Banks from turning over blocked funds in other states once a court rules that TRIA applies.  In fact, JPMCB did this very thing in Florida with OFAC's full knowledge and consent.  And the Banks can also deposit these blocked funds into the registry of *any* court, not just a court in New York.  JPMCB did that very thing here in Illinois in *Gates*, and the Banks did the same in District of Columbia Case No. 00-cv-02329-RCL, *Heiser v. Islamic Republic of Iran*.

This reality of the fluidity of intangible assets presents an even more compelling reason why this Court must reject the fiction that this case must be brought or maintained in district of the alleged "situs" of the intangible assets.  Were the Banks' arguments correct, the intangible

assets could be transferred from one location to another requiring victims of terrorism to engage in a never ending game of hide and seek in search of assets to satisfy their judgments. ***That is why the touchstone for post collection efforts is whether the Court has jurisdiction over the Banks, not where intangible assets are allegedly located***.

The Banks falsely allege that the NDNY and SDNY are the only forums where all parties with a claim can pursue their interest. Any party that has received notice of the NDIL proceedings has the right to object, or move to intervene therein. *See Wyatt v. Syrian Arab Republic*, 800 F.3d. 331, 337-339 (7th Cir. 2015). And the banks again falsely allege that the NDNY and SDNY forums are the only place where the banks can obtain a full discharge. JPMCB obtained a full discharge in the NDIL in the *Gates/Wyatt* case, and none of the Baker or Wyatt plaintiffs were Illinois residents.

Further, a reading of TRIA suggests that Congress did not intend to require adding the EFT Parties to this action. Certainly, this Court would not be a proper forum to litigate the propriety of OFAC's blocking order. If any EFT Party disputed OFAC's blocking of the wire transfer, then they were required to follow procedures set out by OFAC and apply for a license to unblock the account. See *http://www.treasury.gov/resource-center/sanctions/Pages/forms-index.aspx*, OFAC Form OMB No.: 1505-0170, Ex. 23 attached. None have done that here.

The pointlessness of beginning a separate interpleader action in which upstream EFT banks and/or other parties would be an "interpleader defendant" is underscored by the fact that there is no current set of facts that would authorize this Court, under federal law, to unblock and transfer or pay over the funds at issue to anyone other than the Stansell Plaintiffs. 31 C.F.R. §

542.201 (if blocked, property or property interests "may not be transferred, paid, exported, withdrawn or otherwise dealt in").  Under Fed. R. Civ. P. 22, the Banks are required to show "real claims, not theoretical, polemical, speculative or I'm afraid-it-might-happen-someday claims." *Hollister v. Soetoro*, 258 F.R.D. 1, 3 (D.D.C. 2009); *Accord Indianapolis Colts v. Baltimore*, 741 F.2d 954, 957-958 (7th Cir. 1984) (interpleader denied where there were no adverse claims and no reasonable fear of double liability or vexatious claims).  What purpose would an expensive and burdensome interpleader serve when none of the EFT upstream banks would be entitled to have this Court grant them any meaningful relief?  The answer is clear.  It serves no purpose whatsoever.

The Banks claim that the only way that they can be protected is through the use of an interpleader action. Not true.  The Banks are already entitled, as a garnishee banks, to receive complete and thorough discharge orders in Illinois.  *See* 735 ILCS 5/2-1402(c) and 735 ILCS 5/12-712. *See also, Busey Bank v. Salyards*, 304 Ill. App. 3d 214, 219 (4th Dist. 1999) (turnover order discharges the garnishee from all claims on the property by the judgment debtor).  The Banks can be adequately protected by a discharge order that includes whatever prophylactic language a court sees fit to include for the Banks' protection.[11]

The only claims known to exist against the blocked assets held by the Banks are from the Stansell Plaintiffs, the alien John Doe creditor, and obviously the SDGT owners.  Once the judgment lien priority over John Doe has been ruled on, that will leave the Stansell Plaintiffs and

---

[11] As one court remarked in another FSIA case, "by judgment of a federal court of law Respondents will be discharged from this action and amply protected from liability to third parties." *Hausler v. JPMorgan Chase Bank, N.A.*, 740 F. Supp. 2d  525, 541 (S.D.N.Y. 2010) (emphasis supplied).

the SDGT owners as the sole competing claimants.  Thus, the only possible witnesses in this case will be the ones dealing with the SDGT Claimant/Owners' objections to the turnover motions.

While the Stansell Plaintiffs contend that the SDGTs Grupo and Tajeddine are **not** entitled to a trial on the Hezbollah-FARC connection because there is no triable issue, even if such a trial were to be conducted, Chicago is just a convenient forum as New York.  The SDGTs have filed an affidavit of character witness Chibli Malat, a professor at the University of Utah.  DE 42-2, ¶ 3.  They also file a report of Dr. Ibrahim Warde, an Adjunct Professor in Massachussets.  DE 42-3, ¶ 1.  Neither of these witnesses reside in New York, and traveling to Chicago from Utah and Massachussets will be no less convenient than traveling to New York.  Any other witnesses residing overseas, including Kassim Tajeddine, can easily fly to O'Hare to testify here in Chicago.  New York does not have a lock on international travel.

The Banks argue that their employees may have to testify concerning the process served upon them.  That is patently absurd.  Facts concerning what process was served, by whom and when, are facts that courts can and regularly do take judicial notice of from the docket record before it, and the operative facts have already been admitted.  These facts are undisputed and no such testimony will be needed on the issue of Plaintiffs' judgment lien priority over John Doe.  Nor will any of the other interpleader respondents ever be testifying to any issue where they have never made a claim, and have no claim, and any conceivable claim is now time barred.   And certainly none of the Banks' employees, or any other wire transfer party banks, will be testifying on the FARC-Hezbollah narcotics trafficking nexus or whether Tajeddine and Grupo are members of the "Hezbollah Network in Africa".

10

Dated this 17th day of November, 2015.      /s/ Tony Korvick
      Tony Korvick, Esq.
      Newt Porter, Esq.
      PORTER & KORVICK, P.A.
      Attorneys for Stansell Respondents
      9655 S. Dixie Highway
      Suite 208
      Miami, FL 33156
      305-373-5040
      tkorvick@porterandkorvick.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 17, 2015, I served the foregoing via First Class International Mail, or First Class U.S. Mail, to the following persons who have yet to appear or disclaim their interest in the blocked assets and are not believed to have received CM/ECF service upon filing:

TAJCO a/k/a GRAND STORES      TRUST BANK LTD.
62 Buckle Street      Attn: Mr. Pa Macoumba Njie
Banjul, The Gambia (Africa)      Managing Director 3-4 Ecowas Avenue
      P.O. Box 1018
TAJCO a/k/a GRAND STORES      Banjul, Gambia
1 Picton Street
Banjul, The Gambia (Africa)      ARAB GAMBIAN ISLAMIC BANK LTD.
      Arab Gambia Islamic Bank Ltd.
TAJCO a/k/a GRAND STORES      Attn: Mr. Sirajo Salisu, CEO
Dohat Building 1st Floor      7 Ecowas Avenue (Buckle St.)
Banjul, The Gambia (Africa)      P.O. Box 1415 Banjul, Gambia

      By: /s/ Tony Korvick
      TONY KORVICK
      PORTER & KORVICK, P.A.
      9655 South Dixie Highway Suite 208
      Miami, Florida 33156
      (305) 373-5040      (305) 668-9154 FAX
      tkorvick@porterandkorvick.com

11