UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 15-cv-8652-LTS

JOHN DOE,

    Petitioner/Judgment Creditor,

v.

EJERCITO DE LIBERACION NACIONAL,
a/k/a ELN, a/k/a National Liberation Army,
and FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
a/k/a FARC, a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA,

    Defendants/Judgment Debtors, and

GRUPO AROSFRAN EMPRE E
PARTICIPACOES SARL A/K/A GRUPO
AROFRAN A/K/A GRUPO AROSFRAN
AND OTHER ALIASES; DEUTSCHE BANK
TRUST COMPANY AMERICAS;
STANDARD CHARTERED
BANK, LTD; BANCO AFRICANO
INVESTIMENTOS, SARL;
and BANCO DE
FOMENTO SARL, ANGOLA,

    Respondents.

_____/

**JOHN DOE'S PETITION FOR TURNOVER ORDER**
**DIRECTED AT DEUTSCHEBANK TRUST COMPANY AMERICAS**

    Petitioner John Doe, by and through undersigned counsel, files this Petition for Turnover

Order Directed at Deutsche Bank Trust Company Americas ("DBTCA"), and alleges:

**INTRODUCTION**

    Petitioner John Doe was on a business trip, traveling by bus from Colombia to his native

Venezuela, when his bus was suddenly stopped by armed men on the Venezuelan side of the

1

border.  The men belonged to Ejercito De Liberacion Nacional ("ELN"), who forced Petitioner to disembark the bus, placed a bad over his head, and transported him to the jungles of Colombia where for two weeks he was repeatedly beaten, tortured, shot, and ultimately ordered to be killed.  Petitioner pled for his life and the ELN sold Petitioner to Fuerzas Armadas Revolucion De Colombia ("FARC").  For eleven months, Petitioner was routinely beaten, raped, starved, tortured, forced to watch FARC kill other captives and then ordered to bury the dead.  His family paid a ransom for his release.

As a result of his imprisonment, Petitioner sustained multiple psychological and physical injuries, underwent multiple reconstructive surgeries, and suffers from extreme psychological trauma to this day. Petitioner filed a lawsuit in the United States District Court for the Southern District of Florida to recover damages related to his kidnapping and torture at the hands of the ELN and FARC.  On January 5, 2012, the court entered a judgment against ELN and FARC for a total amount of $36,800,000.00, $16,800,000 of which was compensatory damages.  The bulk of the judgment is still due and owing.

On June 18, 2015, in order to execute against assets located held in bank accounts in New York, New York, including at DBTCA, Petitioners registered the judgment in this District pursuant to 28 U.S.C. § 1963. DE 1.  By the express terms of that statute, Petitioner is entitled to execute this new judgment in like manner as a judgment of this Court.  On August 21, 2015, this Court issued a Writ of Execution against FARC for $26,800,000.00, the portion of the judgment for which it is liable.

By this Petition, Petitioner seeks to collect on this judgment by garnishing bank accounts belonging to agencies and/or instrumentalities of the FARC pursuant to the Terrorism Risk Insurance Act ("TRIA"), and Federal and New York procedure.

**PARTIES**

1. The Petitioner, John Doe, is a resident of Florida, and a citizen of the United States. Petitioner obtained a judgment in this action against the narco-terrorist organizations ELN and FARC for $16,800,000.00 in compensatory damages, jointly and severally, and $10,000,000.00 in punitive damages against each defendant. The judgment was obtained pursuant to a civil action brought under the Alien Tort Statute, 28 U.S.C. § 1350, and Civil RICO, 18 U.S.C. §§ 1961-1698, arising from the FARC and ELN's international kidnapping, torture, and ransom of Petitioner. $16,480,794.07 of the compensatory portion of the judgment remains due and owing.

2. ELN, or National Liberation Army, is an armed and violent narco-terrorist organization in the Republic of Colombia. Since its inception in the early 1960s, ELN has targeted both Colombian and foreign nationals while engaged in narco-terrorist activities that include murder, hostage taking, drug trafficking and the violent destruction of property.

3. FARC, or Revolutionary Armed Forces of Colombia, is the largest armed and violent narco-terrorist organization in the Republic of Colombia. Like ELN, FARC has targeted both Colombian and foreign nationals while engaged in terrorist activities that include murder, hostage taking, drug trafficking and the violent destruction of property.

4. Grupo Arosfran Empre e Participacoes, SARL a/k/a Grupo Aprosfran Empre Paricacoes, a/k/a Grupo Arosfran, a/k/a Arosfran and other aliases ("Grupo") is an African front company owned or controlled by Kassim Tajideen and designated as a Specially Designated Global Terrorist ("SDGT"). Grupo served the joint narco-terrorist activities of Hezbollah and the FARC. As will be shown, Grupo is an agency or instrumentality of the Judgment Debtor FARC.

5. Upon information and belief, Deutschebank Trust Company Americas ("DBTCA") is a commercial bank headquartered at 60 Wall Street, New York, New York. Deutschebank blocked four wire transfers sent by Grupo.

6. Upon information and belief, Standard Chartered Bank ("SCB"), is a bank organized and existing under the laws of the United Kingdom, with its principal place of business in London, England. As discussed below, SCB transmitted to DBTCA three of the four wire transfers that DBTCA blocked.

7. Upon information and belief, Banco Africano Investimentos, SARL ("BAI") is an Angolan Bank. As discussed below, BAI was the originating bank on three of the four blocked wire transfers that were then transmitted by SCB to DBTCA, which blocked them.

8. Upon information and belief, Banco de Fomento, SARL Angola ("BF") is an Angolan bank. As discussed below, BF was the originating bank and transmitted to DBTCA one of the four wire transfers that DBTCA blocked.

## NON-PARTIES

9. Hezbollah is an international narco-terrorist organization. Hezbollah funds itself in part through drug dealing, arms trafficking, contraband smuggling and other rackets in the Americas, Africa and elsewhere. For approximately the past 10 years, the FARC has forged an alliance with Hezbollah in, *inter alia*, their international narcotics trafficking and money-laundering operations. Through this alliance, Hezbollah is one of the largest exporters of illicit narcotics from South America, and one of the largest facilitators of the export of illicit narcotics from South America to West Africa and into Europe. Hezbollah and its members and supporters partner with FARC to traffic drugs to Africa to reach markets in Europe, the Middle East and Asia. *See* http://www.cnn.com/2009/WORLD/africa/09/21/africa.drug.cartels/. The

4

Venezuelan/Colombian region, where FARC controls cocaine production and transport through its terror campaign against victims such as Petitioner, is a major source of shipments of cocaine headed to Africa, and Venezuela has become a major corridor for cocaine headed to Africa in mass quantities for eventual distribution in Europe. The African connection also has ties to the tri-border region of Argentina, Brazil and Paraguay ("Tri-Border Region"). In the African connection, the profits from the sale of FARC-produced drugs are used to finance Hezbollah. *See http://articles.latimes.com/2008/oct/22/world/fg-cocainering22*.

10. Kassim Tajideen is an important financial contributor to Hezbollah, who was designated by the United States Treasury as a Specially Designated Global Terrorist (SDGT) in May 2009 pursuant to Executive Order (E.O.) 13224. He, his brothers, and a network of businesses owned or controlled by them operating in various African and Caribbean nations, have been designated SDGTs for providing support to Hezbollah. Many of these entities were designated along with Bilal Mohsen Wehbe, a Hezballah member who served as Hezbollah's chief representative in South America.

11. Other banks were also potential parties to the four blocked wire transfers, but as they were intermediary banks downstream from DBTCA in the wire transfers, or the beneficiaries' bank, they have no interest or potential interest in the blocked funds as a matter of law, and so have not been named respondents.

## JURISDICTION

12. This Court has personal jurisdiction over the Respondent because Respondent DBTCA because DBTCA owns, uses, or possesses real property within this district, and regularly does, solicits, and transacts business within this district.

13. This Court has jurisdiction over the res Petitioner seeks to garnish as it is held in an account located in the Southern District of New York.  As a result, this Court has quasi in rem jurisdiction over this action.

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as a civil action arising under the Constitution, laws or treaties of the United States.

15. This Court also has subject matter jurisdiction because the overall amount in controversy exceeds $75,000 and absolute diversity exists between Petitioner and the Defendants.  28 U.S.C.A. § 1332(a)(2).

16. This Court need not have personal jurisdiction over the Judgment Debtors to enforce a money judgment against them by garnishment of their assets held by third parties in this state.  Nevertheless, this Court has personal jurisdiction over them due to the extensive contacts with this forum in their drug trafficking, money laundering and global terrorist activities, including the use of financial institutions in New York that resulted in the blocked assets at issue here.  Further, the agencies or instrumentalities of FARC whose blocked assets are the target of garnishment used the New York financial system resulting in the blocked assets at issue here.

17. Venue is proper in the Southern District of New York, because DBCTA holds funds belonging to instrumentalities of FARC in accounts located in the Southern District of New York.

## BASIS FOR TURNOVER ORDER

18. Petitioner obtained a judgment on January 5, 2012, against the narco-terrorist organizations ELN and FARC for $16,800,000.00 in compensatory damages, jointly and severally, and $10,000,000.00 in punitive damages against each Defendant.  The judgment was

obtained pursuant to a civil action brought under the Alien Tort Statute, 28 U.S.C. § 1350, and Civil RICO, 18 U.S.C. §§ 1961-1968, arising from FARC and ELN's international kidnapping, torture, and ransom of Petitioner. This judgment was duly registered in this district on June 18, 2015. (Hereinafter the judgment issued out of the Southern District of Florida and the registered judgment shall be referred to as the "Judgment". $16,480,794.07 of the compensatory portion of the Judgment remains due and owing.[1]

19. On June 18, 2015, Petitioner also requested that the clerk of the Southern District of New York issue a writ of execution against the FARC. On information and belief, the writ was issued but got lost in the Court's mailing room.

20. On July 14, 2015, Petitioner served a restraining notice on DBTCA pursuant to New York procedure. The restraining notice, captioned in this matter, cited both section 5222 and the TRIA, and gave notice DBTCA was forbidden to transfer or otherwise dispose of the subject bank accounts holding the blocked funds of FARC's agencies or instrumentalities. The agencies or instrumentalities were specifically identified to include Grupo and its aliases.

21. On the day prior to formal service of the restraining notice on DBTCA, Petitioner informally served counsel for DBTCA with it, and informed counsel that pursuant to New York code, once served, DBTCA would have the responsibility of providing timely notice and corresponding exemption forms to the "defendant" in the case, as well as the account holders.

22. On information and belief, DBTCA provided timely notice and exemption forms to Grupo via mail, and to the FARC via e-mail.

23. E-mail service has been held to be adequate alternate service on the FARC in the action that led to the underlying judgment in this action.

---

[1] The award of punitive damages totaling $20 million is still due and owing as well.

24. Neither Grupo nor the FARC has filed any objection or claim for exemption in this action.

25. On July 15, 2015, the Northern District of New York issued a writ of execution permitting execution to satisfy the compensatory portion of the judgment in the amount of $26,800,000 in favor of Petitioner and against FARC.

26. On August 21, 2015, this Court issued a writ of execution, permitting execution to satisfy the compensatory portion of the judgment in the amount of $26,800,000 in favor of Petitioner and against FARC.

27. On October 27, 2015 this Court issued a writ of execution specifically identifying for execution "the blocked assets of the FARC and its agencies and/or instrumentalities as those terms are defined in the Terrorism Risk Insurance Act."

28. The October 27, 2015 Writ of Execution was served by the United States Marshal Service on DBTCA on November 4, 2015.

29. DBTCA has in its possession accounts in which FARC has an interest, or which, according to TRIA, are blocked assets that can be used to satisfy the compensatory portion of a qualifying judgment against FARC (the "Blocked Accounts"). More specifically, DBTCA has in its custody Blocked Accounts containing funds belonging to FARC's agency or instrumentality Grupo.

30. The Blocked Accounts end in 3-714, 3-749, 8-588 and 9-679. These Blocked Accounts were established by DBTCA as a result of blocking four wire transfers from Grupo pursuant to the Office of Foreign Asset Control's ("OFAC") regulations.

31. Concerning Blocked Accounts ending 3-714, 3-749 and 8-588, which as of May 18, 2015 contained $61,651.35, $39,914.01 and $489,022.30 respectively, the relevant parties to

8

the blocked wire transfer underlying the accounts were: Grupo, as the originator; BAI as the originator's bank; and SCB as an intermediary bank, which transmitted the funds to DBTCA, which blocked the wire transfer in accordance with OFAC's applicable sanctions regulations.

32. These three blocked wire transfers in the preceding paragraph were destined for the Tri-Border Region in South America.

33. Concerning Blocked Account ending 9-679, which as of May 19, 2015 contained $8,813.81, the relevant parties to the blocked wire transfer underlying the account was: Grupo, as the originator; BF, as the Originator's bank, which transmitted the funds to DBTCA, which blocked the wire transfer in accordance with OFAC's applicable sanctions regulations.

34. Because it was the originator of the wire transactions, the funds in the Blocked Accounts belong to Grupo.

35. As an SDGT, Grupo's blocked assets are subject to TRIA collection.

36. No other entity involved in the wire transfers has any ownership interest in the blocked assets.

37. Other entities with a potential interest, particularly the financial institutions upstream in the wire transfer from DBTCA, have no interest in the funds.[2]

38. There is no chance that the judgment will be satisfied from anyone other than a terrorist party.

39. DBTCA has admitted to having possession of these funds in OFAC blocked accounts located in this district.

---

[2] *See Gates v. Syrian Arab Republic*, 2014 WL 5784859, at *3 (N.D. Ill. Nov. 6, 2014) (finding that EFTs held by intermediary bank were subject to turnover order where both originator and beneficiary of transaction was a terrorist party and bank that blocked funds and the intermediary bank disclaimed interest in the funds); *see also* Order Denying Motion for Reconsideration in *Vera v. Cuba*, SDNY Case No. 1:12-cv-01596-AKH, DE 767 (May 8, 2015) (holding that blocked funds cannot be given back to the blocked originator and that banks holding funds have no interest in them, and so they were available for TRIA collection).

## TRIA PROVIDES FOR EXECUTION AGAINST THE BLOCKED ASSETS OF AN AGENCY OR INSTRUMENTALITY OF TERRORIST PARTY JUDGMENT DEBTORS.

40. TRIA allows for execution on the blocked assets of a terrorist party, or its agency or instrumentalities, to satisfy a judgment against the terrorist party. Specifically, Section 201(a) of TRIA provides that:

Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28 U.S.C., the blocked assets of that terrorist party (**including the blocked assets of any agency or instrumentality of that terrorist party**) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent any compensatory damages for which such terrorist party has been adjudged liable.

41. "Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post- judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, *even if the instrumentality is not itself named in the judgment*." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) (emphasis added) (affirming appointment of receiver to sell property of terrorist state); *Estates of Ungar ex rel. Strachman v. The Palestinian Auth.*, 304 F. Supp. 2d 232, 241 (D.R.I. 2004) (finding that blocked assets of instrumentality of the terrorist organization Hamas was subject to execution and attachment under TRIA).

42. Pursuant to TRIA, creditors may execute on blocked assets belonging to instrumentalities of terrorist groups so long as four requirements are met:

1) A person has obtained a judgment against a terrorist party; 2) The judgment is either for a claim based on an act of terrorism, or for a claim for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7); 3) the assets are "blocked assets" within the meaning of TRIA; and 4) execution is sought only to the extent of compensatory damages.

10

43. Pursuant to TRIA § 201(d)(2), codified as § 1610(d)(2), a "blocked asset" means "any asset seized or frozen by the United States under Section 5(b) of the Trading With the Enemy Act . . . or under sections 202 and 203 of the International Emergency Economic Powers Act . . . ."

44. Both FARC and ELN have been designated as Foreign Terrorist Organizations [FTOs], pursuant to the Antiterrorism and Effective Death Penalty Act, 8 U.S.C. § 1189.[3] Moreover, in 2001, FARC and ELN were named as SDGTs under Executive Order 13224, issued pursuant to the International Economic Emergency Powers Act ("IEEPA"), 50 U.S.C. §§ 1701—02. Thus, Petitioner has a valid judgment against recognized terrorist groups.

45. OFAC has designated Grupo as an SDGT under the Global Terrorism Sanctions Regulations, 31 C.F.R. Part 594.[4] Furthermore, Grupo has been found to be an agency or instrumentality of the FARC due to its involvement in the purchase, sale, trafficking, storage, and distribution of FARC coca paste and cocaine, and its assistance in FARC's financial and money laundering network.[5]

46. In *Stansell v. Revolutionary Armed Forces of Colom.*, No. 8:09-cv-02308-RAL-MAP, at *7—8 (M.D. Fla. Feb. 17, 2015), the United States District Court for the Middle District of Florida held that Ovlas and TAJCO were each "an agency or instrumentality of the

---

[3] 8 U.S.C. §§ 1189(a)(1) authorizes the Secretary of State to designate an organization as a foreign terrorist organization… if the Secretary finds that (A) the organization is a foreign organization; (B) the organization engages in terrorist activity…; and (C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States. 8 U.S.C. § 1189(a)(1).

[4] OFAC's decisions are entitled to great deference. *De Cuelar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989) (holding that OFAC's decision was entitled to great deference, and should be reversed only if arbitrary or capricious); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999) (stating that OFAC's designation of SDN being "an agency's application of its own regulations, receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation."); *Consarc Corp. v. OFAC*, 71 F.3d 909, 914-15 (D.D.C. 1995); *Zarmach Oil Services, Inc. v. U.S. Dept. of the Treasury*, 750 F. Supp. 2d 150 (D.D.C. 2010) (declaring that OFAC regulations carry the force of law); *see also* 31 C.F.R. § 538.802.

[5] *See Stansell v. Revolutionary Armed Forces of Colom.*, No. 8:09-cv-02308-RAL-MAP, at *7—8 (M.D. Fla. Feb. 17, 2015), attached as Ex. A; Affidavit of David Gaddis, attached as Ex. B, at 12.

FARC." The court found that Grupo, along with other SDGTs, were instrumentalities of FARC because they:

> were involved in the purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or assisted the FARC's financial or money laundering network and materially assisted or played a significant role in the FARC's cocaine manufacturing and international trafficking.

*Id.*[6] Therefore, the court held that the blocked assets of the SDGTs were each a "blocked asset" as defined under TRIA and subject to execution and garnishment. *Id.* at *8. Grupo's blocked assets are subject to execution and garnishment.

47. According to the Affidavit of David L. Gaddis, former Drug Enforcement Agency official, Kassim Tajeddin and the entities related to him, including Grupo, are all agencies and instrumentalities of the FARC.[7]

48. Tajeddin and the companies associated with him, including Grupo, were implicated in a major conspiracy to traffic and launder FARC cocaine and use the proceeds to support Hezbollah.[8]

49. Because Grupo is an agency or instrumentality of the FARC, its blocked assets are subject to execution under TRIA.

50. Additionally, the judgment is for a claim for which a terrorist party is not immune under 28 U.S.C. § 1605, which concerns the immunity of foreign states. As the defendants in

---

[6] The district court defined an agency or instrumentality as
Any SDNT ..., including all of its individual members, divisions and networks, that is or was ever involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or that assisted the FARC's financial or money laundering network, ... because it was either:
(1) materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of ... [FARC]; and/or
(2) owned, controlled, or directed by, or acting for or on behalf of, ... [FARC]; and/or
(3) playing a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC].
*Stansell*, 771 F.3d 713, 724 n.6.
[7] *See* Ex. B.
[8] *Id.* at 30.

this matter are not foreign states, Section 1605 is inapplicable and so cannot work to prevent collection.

## NEED FOR A TURNOVER ORDER

51. Petitioner has a valid, subsisting, unpaid judgment with an outstanding compensatory award of $16,480,794.07 jointly against FARC and ELN. DBTCA is in possession of funds held in blocked accounts that belong to FARC and or its instrumentalities. Petitioner is entitled to those funds, but only upon issuance of a Court order issued pursuant to TRIA.

52. Petitioner's rights to the account funds are superior to those of DBTCA or any other bank in the wire transfer stream.

53. Upon information and belief, no adverse claimants have priority over Petitioner to the funds that are subject to the writs of execution served in this matter.

WHEREFORE, Petitioner prays that this Court issue an Order, in the proposed form attached as Ex. C, pursuant to TRIA, Federal Rule of Civil Procedure 69 and CPLR Section 5225(b):

(a) finding that Grupo is an agency or instrumentality of the FARC;

(b) finding that all prerequisites of New York Code and TRIA have been satisfied;

(c) finding that Respondents DBTCA, SCB, BAI and BF have no interest in the Blocked Accounts; and

(d) directing DBTCA to turn over all funds in the Blocked Accounts to Petitioner in partial satisfaction of the judgment, together with interest and Marshall's fees;

(e) discharging DCBTA, SCB, BAI and BF from any and all liability to Grupo and all other persons and entities with respect to the funds in the Blocked Accounts; and

(b) awarding such other further relief as this Court deems just and proper.

Dated this 18th day of December, 2015.    Respectfully submitted,

/s/Brett E. von Borke
Brett E. von Borke
S.D.N.Y. Bar Code:  bb4480
vonborke@bucknermiles.com
**BUCKNER + MILES**
2811 SW 3rd Avenue
Miami, FL 33129
Tel.: 305-964-8003

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of the Court via the CM/ECF system on this 18th day of December, 2015, and all parties that have entered their appearances in this action will receive notice thereby and may access the filing through the Court's CM/ECF system.

/s/Brett E. von Borke
Brett E. von Borke
vonborke@bucknermiles.com