UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 15-cv-08652

JOHN DOE,

    Plaintiff/Judgment Creditor,

v.

EJERCITO DE LIBERACION NACIONAL,
a/k/a ELN, a/k/a National Liberation Army,
and FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
a/k/a FARC, a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA,

    Defendants/Judgment Debtors, and

JPMORGAN CHASE BANK, N.A.,

    Respondent.
_____/

## THIRD-PARTY CLAIMANT KASSIM TAJIDEEN'S REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF JOHN DOE'S EXPERT AFFIDAVIT

Plaintiff John Doe ("Plaintiff") contends that Third Party Claimant Kassim Tajideen's ("Claimant") Motion to Strike Plaintiffs John Doe's Expert Affidavit is now moot because Plaintiff withdrew his Petition for Turnover Order directed at Claimant's assets, DE 54, but this ignores that Claimant's assets are the subject of an interpleader petition filed by JPMorgan Chase Bank, N.A. ("JPMC") on December 7, 2015, which is likewise directed at Claimant's assets, DE 11.  Indeed, Claimant is named as a respondent in the interpleader petition, DE 11, and the purpose of Plaintiff John Doe's Expert Affidavit is to attempt to establish that Claimant is no longer entitled to the assets at issue in the interpleader petition, DE 65.  Plaintiff's mootness argument also ignores the fact that on December 18, 2015 Plaintiff filed a new Petition for Turnover Order concerning Claimant's assets (held by one of Claimant's companies) at Deutsche Bank Trust Company Americas.  DE 69.  Unless and until Claimant's assets are no longer

- 1 -

subject to the interpleader petition, and all actions against his assets (or those of his businesses) have been withdrawn or dismissed, Claimant's Motion to Strike plainly is not moot. *Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013) ("As long as the parties have a concrete interest…in the outcome of the litigation, the case is not moot."); *Chevron Corp. v. Donzinger*, 974 F.Supp.2d 362, 549 (S.D.N.Y. 2014) (same). In any case, to the extent Plaintiff's Expert Affidavit is no longer relevant or Plaintiff no longer intends to rely upon it, Plaintiff should withdraw it or Claimant's Motion to Strike should be granted.

**I.      Mr. Gaddis' testimony must be excluded under 18 U.S.C. § 207(a)(1) and 28 C.F.R. § 16.22.**

Plaintiff argues that the lifetime post-government employment restrictions at 18 U.S.C. § 207(a)(1) do not "create an exclusionary rule," DE 65 at 4, but federal case law across the country is clear that "§ 207(a)(1) permanently prohibits former officials…from appearing in court in cases in which the government has an interest, like the instant case, and testifying on a matter in which the former official 'participated personally and substantially' while employed." *U.S. v. Rosen* 599 F.Supp.2d 690, 699 (E.D. Va. 2009); *EEOC v. Exxon Corp.*, 202 F.3d 755 (5th Cir. 2000) (§ 207 "permanently bars former Executive branch employees from making certain communications to a court"); *U.S. v. Medico Indus., Inc.*, 784 F.2d 840, 844-46 (7th Cir. 1986) (the parties did "not dispute that the effect of a § 207 violation is to render any contract tainted with such conflict unenforceable"); *Gulf Grp. Gen. Enterprises Co. W.L.L. v. United States*, 98 Fed. Cl. 639, 645 (2011) ("18 U.S.C. § 207 is not a general housekeeping statute, but contains specific, substantive, prohibitions and penalties…a former employee may not serve as an expert witness" in violation of § 207). Thus, Plaintiff is incorrect that no "exclusionary rule" exists for violations of this statute.

Plaintiff responds that any "exclusionary rule" would not apply here because the U.S. Government has no "direct and substantial interest in this action," DE 65 at 4, but the U.S. Government's direct and substantial interest in litigation of this type has been explained at length by the Department of the Treasury's Office of Foreign Assets Control ("OFAC") in testimony and reports to Congress and in statements of interest in related litigation.  For example, OFAC has explained that the sanctions programs it administers are "based on U.S. foreign policy and national security goals," which are quite clearly direct and substantial interests.[1]  In its latest report to Congress, OFAC reported nearly $2.4 billion in blocked assets of persons and states designated for terrorism-related reasons in furtherance of these national security goals.[2]  As OFAC has explained, the U.S. Government's control over—and potential release of—such blocked funds is a central tool of U.S. foreign policy and has been widely utilized in recent international negotiations.[3]

OFAC's direct and substantial interest in this Terrorism Risk Insurance Act ("TRIA") litigation is further highlighted by the fact that, in OFAC's words, "OFAC regulations generally prohibit *any form of judicial disposition* of blocked property" (emphasis added).[4]  The potential dissipation of such blocked property via TRIA (or other) litigation clearly highlights the implications for OFAC's operations and U.S. foreign policy and interests more broadly.  The U.S. Government has explained this interest succinctly in other TRIA litigation:

> "The United States…also has a strong interest in ensuring that courts properly interpret TRIA's…scope[]…[A]ny judicial application of TRIA has important consequences for the Executive Branch's implementation of sanctions regimes in the public interest. Moreover, because TRIA…affect[s]…entities with assets

---

[1] Office of Foreign Assets Control, Terrorist  Assets Report Calendar Year 2014, *available at* https://www.treasury.gov/resource-center/sanctions/Programs/Documents/tar2014.pdf (hereinafter "OFAC Report")
[2] *Id*.
[3] Testimony of Under Secretary for Terrorism and Financial Intelligence David S. Cohen Before the Senate Committee on Banking, Housing, and Urban Affairs, Dec. 12, 2013, at available at https://www.treasury.gov/press-center/press-releases/Pages/jl2243.aspx.
[4] OFAC Report, at 2.

- 3 -

>subject to United States jurisdiction, judicial interpretations of TRIA…can have important consequences for foreign policy."

*Estate of Heiser v. Islamic Republic of Iran*, 1:00-cv-02329 (D.D.C. August 3, 2012) (Statement of Interest of the United States).  Similarly, the United States noted in *Villoldo v. Castro Ruz* that "the United States has a strong interest in preserving the President's ability to use blocked assets as a tool of foreign policy."  4:13-mc-94014 (D.Mass. June 30, 2014) (Statement of Interest of the United States) ("the Government also has a *significant interest* in ensuring that laws and regulations pertaining to the attachment of assets blocked pursuant to economic sanctions on foreign countries, which have a profound impact not only on how sanctions programs are administered but, more broadly, on the conduct of the foreign relations of the United States, are properly construed by the courts.") (emphasis added).  *Heiser*, 885 F. Supp. 2d 429, 435 ("Plaintiffs' sweeping interpretation would effectively—through future attachments and executions—eliminate the President's ability to use blocked assets as bargaining chips in solving foreign policy disputes."); *Rubin v. Islamic Republic of Iran,* 709 F.3d 49, 57 (1st Cir. 2013) ("The fact that blocked assets play an important role in the conduct of United States foreign policy may provide a further reason for deference to the views of the executive branch in this case.").

It is based upon these direct and substantial interests of the U.S. Government that OFAC imposes the unique and administratively burdensome requirement in all litigation involving blocked funds that parties inform OFAC of "pleadings, motions, memoranda, exhibits, stipulations, correspondence, and proposed orders or judgments."  31 C.F.R. §501.605.  Plaintiff dismisses such requirements as furthering "little more than academic" interests, but this flies in the face of the U.S. Government's position on the matter.  Moreover, it defies common sense;

obviously, OFAC and the U.S. Government have more than an "academic" interest in the billions of dollars that have been blocked in furtherance of U.S. foreign policy objectives.

The implementing regulations of § 207(a)(1) further confirm the U.S. Government's "direct and substantial interest" in this litigation. Plaintiff tries to dismiss the regulations as mere "guidelines for administrators," DE 65 at 4, but it is a basic tenet of statutory interpretation that courts "will give deference to the view of the agency tasked with administering the statute, particularly insofar as those views are expressed in rules and regulations that implement the statute." *Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer…and the principle of deference to administrative interpretations.")

Here, the implementing regulations for § 207(a)(1) are illuminating. They confirm that a "direct and substantial interest" should be found where "[t]he matter is likely to *have an effect on* the policies, programs, or operations of the component" (emphasis added) and where "[t]he component is involved in any proceeding associated with the matter, e.g., as by having provided witnesses or documentary evidence." 5 C.F.R. § 2641.201(j). By contrast, the regulation does *not* require that a party "challenge" U.S. policy, as Plaintiff contends. DE 65, at 5. The regulation thus neatly summarizes the very nature of the U.S. Government's interest in this case under prong (A): the outcome will affect OFAC's "policies, programs, or operations," and OFAC's designation of Claimant serves as the principal "documentary evidence" relied upon by Plaintiff in this case.

With respect to the remaining prongs (B) and (C) of § 207(a)(1), Plaintiff does not contest that key parts of Mr. Gaddis' testimony constitutes a violation of federal law and instead attempts to downplay the severity of the violation by noting that the "great majority" of the

ActiveUS 149984710v.3

affidavit "concerns not a particular matter or a specific party" and that Mr. Gaddis "often" relies on "published materials or refers to sworn court documents." DE 65, at 5-6. But Mr. Gaddis asserts the opposite in his Affidavit; indeed, he suggests that he participated "personally and substantially" as a government official in the investigation of a "specific party" (Claimant) under prongs (B) and (C) (e.g., "[a] long DEA investigation, *in which I was involved* as the Chief of Enforcement Operations" DE 4, Gaddis Affidavit, at 15 (emphasis added); "*I was involved in investigations by the DEA*...[which] implicated Kassim Tajideen and companies associated with him." DE 4, Gaddis Affidavit, at 30 (emphasis added)). Plaintiff's response goes a step further, conceding that Mr. Gaddis was not only "involved" in but "supervis[ed]" the investigation. DE 65, at 3. If these statements are true, Mr. Gaddis' testimony is subject to exclusion as a result of the lifetime ban under § 207(a)(1).

If, on the other hand, the statements are untrue—or do not apply to the "great majority" of Mr. Gaddis' Affidavit, as Plaintiff now contends—then Mr. Gaddis' testimony is fundamentally misleading, lacks a reliable basis, and will not assist the trier of fact; accordingly, it should be excluded. F.R.E. 702 (expert testimony must "help the trier of fact to understand the evidence" and be "the product of reliable principles and methods"); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 580 (1993) (Rule 702 assigns the "judge the task of ensuring that an expert's testimony…rests on a reliable foundation.")

Plaintiff also does not dispute that Mr. Gaddis used internal Department of Justice and non-public information in his affidavit, in violation of 28 C.F.R. § 16.22. Plaintiff contends that his testimony is nonetheless admissible, DE 65 at 6, but federal agents are "precluded" under § 16.22 from providing such non-public information without prior "authorization" from the government. *See*, *e.g.*, *Caplan v. State*, 23 So.3d 1230, 1232 (Fla. Dist. Ct. App. 2009). "Any doubt as to the validity of the regulation's requirement of prior approval is foreclosed, in our

- 6 -

view, by the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*…which upheld the validity of a predecessor to 28 C.F.R. § 16.22(a)." *In re: Boeh* 25 F.3d 761, 763-65 (9th Cir. 1994) (internal citations omitted).  In essence, Plaintiff argues that this Court should not be concerned with testimony whose very communication to the Court constitutes a violation of federal law.  Because Plaintiff should not stand to benefit from a violation of federal law, the Gaddis Affidavit should be excluded for this additional reason.

**II.     Mr. Gaddis' testimony fails the *Daubert* test.**

Plaintiff tries to defend the Gaddis Affidavit under *Daubert* by asserting that "the great bulk of Mr. Gaddis testimony is factual, not opinion," but Plaintiff relies on the Gaddis Affidavit only for the opinion—and unsubstantiated legal conclusion—"that Tajideen is an agency or instrumentality of the FARC." DE 65, at 7-8.  This is *exactly* the type of legal opinion that is improper for a non-lawyer expert witness to offer; and it must be excluded under *Daubert* because it lacks any reliable basis and will not assist the trier of fact.  509 U.S. at 579-582. Plaintiff relies on *Nimely v. City of New York*, but that case supports Claimant's position that an expert affidavit must be excluded when it "essentially instruct[s] the jury as to an ultimate legal conclusion."  414 F.3d 381, 398 (2d Cir. 2005); *see U.S. v. Frazier,* 387 F.3d 1244, 1262-63 (11th Cir. 2004) ("[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments"); *Toler v. Engelhard Corp.*, 2006 U.S. Dist. LEXIS 23297, 29-30 (M.D. Ga. Mar. 20, 2006) ("Because this opinion merely tells the Court or the jury what result to reach, it is not helpful, and is therefore inadmissible."); *In re Rezulin Prod. Liability Litig.*, 309 F.Supp.2d 531, 547 (S.D.N.Y. 2004) (expert's testimony "impermissibly embraces a legal conclusion" and "usurp[s]…the role of the trial judge in instructing the jury.").

Plaintiff insists that Mr. Gaddis' factual assertions are based on his "specialized knowledge," DE 65 at 8, but he fails to cite any reliable sources or data in support of his vague, idiomatic assertions regarding an alleged connection between Hezbollah and the FARC (e.g., "[t]heir ideological outlooks complement each other"; "[t]hey display the same anti-Americanism"; they are "comrades in arms" and have "common goals").  DE 4, Gaddis Affidavit, at 11-13.  He fails to offer *any information whatsoever* regarding the only alleged connection of any relevance to this case:  the completely unsubstantiated, alleged connection between Claimant and the FARC.

In any case, much of Mr. Gaddis' affidavit *directly contradicts* his proffered, unsubstantiated conclusion (e.g., "[i]n 2008 alone, Iran provided hundreds of millions of dollars to Hizballah and trained thousands of Hizballah fighters at camps in Iran. Iran continues to assist Hizballah in rearming, violating Security Council resolution 1701"; "Iran continues to provide a significant portion of Hizballah's funding." DE 4, Gaddis Affidavit, at 35).  All of these facts offered by Mr. Gaddis actually support Claimant's position, namely, that Hezbollah is an agency or instrumentality of *Iran*, not the FARC.

The Gaddis Affidavit thus appears to be a classic case of an expert who leaps to conclusions based on nothing more than his own "instinct" and that "[s]uch a leap is the essence of unverifiable subjectivity, amounting to the sort of *ipse dixit* connection between methodology and conclusion" that is readily excludable under F.R.E. 702.  *Nimely*, 414 F.3d at 399.  Indeed, the Gaddis Affidavit is "so riddled with factual inaccuracies and unproven assumptions that no reasonable [finder of fact] could give his opinion credence." *Whiting v. Boston Edison Co.*, 891 F.Supp. 12, 19 (D. Mass.1995).  Mr. Gaddis' affidavit therefore should be excluded under F.R.E. 702 and *Daubert*.

ActiveUS 149984710v.3

- 9 -

Respectfully submitted,

/s/ David W. Bowker
David W. Bowker
New York Bar No. 4200184
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6558
Facsimile:  (202) 663-6363
David.Bowker@wilmerhale.com

Attorney for Kassim Tajideen

- 9 -

- 10 -

## CERTIFICATE OF SERVICE

I CERTIFY that on the 21st day of December, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ David W. Bowker
Attorney

ActiveUS 149984710v.3