IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

JOHN DOE,

    Petitioner/Judgment Creditor

EJERCITO DE LIBERACION NACIONAL ("ELN"),
et al.,

    Defendants/Judgment Debtors

and

JPMORGAN CHASE BANK, N.A., and

    Respondent,

_____

JPMORGAN CHASE BANK, N.A

    Third-Party Petitioner,

v.

KEITH STANSELL, et al.,

    Third Party Respondents.

_____

Case No.: 15 CV 8652-LTS
Judge Laura Taylor Swain

### THIRD PARTY RESPONDENTS' MOTION TO VACATE PETITIONER JOHN DOE'S DEFAULT JUDGMENT AS VOID FOR <u>LACK OF SUBJECT MATTER JURISDICTION</u>

    Third Party Respondents Keith Stansell, Marc Gonsalves, Thomas Howes, Judith Janis, Christopher Janis, Greer Janis, Michael Janis and Jonathan Janis ("Stansell Respondents"), pursuant to Fed. R.Civ.P. 60(b)(4), move this Court to vacate Petitioner John Doe's Judgment against the Ejercito de Liberacion Nacional ("ELN") and Fuerzas Armadas Revolucionarios de Colombia ("FARC") for lack of subject matter jurisdiction. The grounds for this motion are:

*Summary of argument*

    John Doe's Complaint [SDFL DE 1, attached hereto as Ex. 1] admits that both the ELN and FARC "operate outside the authority of the Colombian state", and therefore as a matter of

law his Complaint and resulting judgment lack the 'state action' requisite to establish a violation of the law of nations needed for subject matter jurisdiction over his Alien Tort Statute ("ATS") claim.  The U.S. Supreme Court has also ruled that the ATS does not apply to conduct that occurs entirely on foreign soil. *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659, 1669 (2013)(affirming dismissal of ATS claims because "presumption against extraterritoriality applies to claims under the ATS" where "all the relevant conduct took place outside the United States").  John Doe's Complaint also fails to satisfy either the conduct test or the effects test for extraterritorial application of Civil RICO.  The extraterritorial application of a federal statute implicates federal question subject matter jurisdiction, rather than the failure to state a claim. *See Norex Petroleum Ltd. v. Access Industries, Inc.*, 540 F.Supp. 2d 438, 440 (S.D.N.Y. 2007).

### *Fed. R. Civ. P. 60(b)(4)*

A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure if the court that rendered it lacked jurisdiction of the subject matter. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir.2011) (quoting *Grace v. Bank of Leumi Trust Co. of N.Y.*, 443 F.3d 180, 193 (2d Cir.2006).  The Second Circuit has stated that "if the underlying judgment is void for lack of jurisdiction, 'it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).' " *Id*. (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir.2005) (internal quotation marks omitted)).  A void judgment is a legal nullity and may be challenged not only directly but also by collateral attack in a proceeding in any court where its validity has come into issue. *Graciette v. Star Guidance, Inc*., 66 F.R.D. 424 (S.D.N.Y.1975).

Relief from a void judgment – one entered without subject matter jurisdiction -is mandatory.  *See Orner v. Shalala*, 30 F.3d 1307 (10th Cir. 1994)(relief is not discretionary

matter, but is mandatory); *V. T. A., Inc. v. Airco, Inc.,* 597 F.2d 220 (10th Cir. 1979)(necessary to evaluate validity of underlying judgment in reviewing order denying motion for relief from judgment and, if underlying judgment is void, order based on it is void; if voidness is found, relief is not discretionary matter but is mandatory); *Boughner v. Secretary of Health, Educ. and Welfare*, 572 F.2d 976 (3d Cir. 1978)(district court has no discretion in considering motions for relief from judgment predicated on voidness of original); *Jordon v. Gilligan*, 500 F.2d 701 (6th Cir. 1974), *cert. denied* 95 S.Ct. 1996, 421 U.S. 991, 44 L.Ed.2d 481( void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside); *Jaffe and Asher v. Van Brunt*, 158 F.R.D. 278 (S.D.N.Y. 1994)(Judgments entered where court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside).

A judgment is either void or not void and there is no discretion in the review of such void judgment. *See Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir.1998)(" Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not."); *Shank/Balfour Beatty, a Joint Venture of M.L. Shank, Co., Inc., Balfour Beatty Construction, Inc. v. International Broth. Of Elec. Workers Local 99*, 497 F.3d 83 (1st Cir. 2007)(Although denial of motion for relief from judgment or order is normally reviewed for abuse of discretion, district court has no discretion when deciding motion to vacate judgment as void because judgment is either void or it is not).

A district court can determine this issue from the pleadings. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 n.19 (11th Cir. 2009) (vacating order denying motion to vacate default judgment and remanding for dismissal). A void judgment may be challenged at any time. *See Hertz Corp. v. Alamo Rent-A-Car, Inc.,* 16 F.3d 1126, 1130 (11th Cir. 1994)(Rule

60(b)(4) has no time limit and a Rule 60(b)(4) motion is not subject to any reasonableness inquiry on timing)(citations omitted).

### *John Doe's Complaint*

In determining whether the ATS confers on a federal court jurisdiction over a particular case, a district court must isolate the "relevant conduct" in a complaint. *Mustafa v. Chevron Corp.*, 770 F.3d. 170, 185 (2d Cir. 2014).

At the time of the alleged terrorist attacks in 1997, John Doe was a citizen and resident of of Venezuela.  At the time of filing his Complaint in 2010, and entry of the Default Judgment in 2012, John Doe admitted that he was not a U.S. national, he was a resident alien of the United States, residing in Florida, and still a citizen of Venezuela. [Exhibit 1: SDFL DE 1, ¶ 1].  John Doe's Complaint alleged claims under 28 U.S.C. § 1350, Alien Tort Statute ("ATS"), and 18 U.S.C. § 1961- 1968,  Civil Rico. [Exhibit 1: SDFL DE 1, ¶ 5].   John Doe's Complaint alleges that "ELN and FARC operate outside of the authority of the Colombian state." [Exhibit 1: SDFL DE 1, ¶ 13].   The Complaint also alleges that the terrorist acts all occurred in Venezeula and Colombia. [Exhibit 1: SDFL DE 1, p. 1].

### *John Doe's Default Judgment*

John Doe's Motion for Entry of Default Judgment [SDFL DE 30, attached hereto as Exhibit 2] failed to cite or brief or distinguish a single ATS case from any Circuit.  John Doe failed to inform the SDFL court that for subject matter jurisdiction to lie under the ATS, the terrorist groups had to be acting under color of state law.  Similarly, John Doe never cited, briefed or distinguished a single case to the SDFL advising the court of the well settled law that civil RICO, 18 U.S.C. § 1961-1962, has no extraterritorial application.

4

Neither the Order granting the motion for default judgment [SDFL DE 43], or the default judgment itself [SDFL DE 42; also registered in this Court at DE 1], ever addressed a single ATS or Civil Rico decision, nor did the SDFL Court ever address the issue of its subject matter jurisdiction over these claims.

*Argument*

Eight U.S. national FARC terrorism victim Anti-Terrorism Act [18 U.S.C. § 2333 et seq] judgment creditors move this Court pursuant to Fed. R. Civ. P. 60(b)(4) to vacate the John Doe January 5, 2012 Default Final Judgment [SDFL DE 42-43, attached as Exhibits 3 and 4] as void because both the rendering court and this Court **lack subject matter jurisdiction.**  *See Estate of Amergi v. The Palestinian Authority*, 611 F. 3d 1350, 1356-57 (11th Cir. 2010)(ATS confers limited jurisdiction over a civil action by an alien for torts committed under color of law of a foreign nation), *citing, Sinaltrainal v. Coca-Cola Company*, 578 F.3d 1252, 1265 (11th Cir. 2009). The ATS also confers subject matter jurisdiction for torts ***against individuals*** for claims "such as torture or murder committed in the course of war crimes … regardless of whether the perpetrator acted under color of law of a foreign nation." *Id*. at 1267. Allegations of torture and rape perpetrated by non-state actors in periods of civil unrest in foreign countries are expressly rejected under the ATS. *Id*.[1] The ATS empowers federal courts to entertain "a very limited category" of ATS claims subject to "vigilant doorkeeping." *Sinaltrainal*, 578 F.3d at 1262-63, *quoting, Sosa v. Alvarez-Machain*, 542 U.S. 692, 712, 729 (2004).

---

[1] "We reject the plaintiffs' argument that it is sufficient for the purposes of ATS jurisdiction that the violation perpetrated by a non-state actor merely occur during an armed civil conflict. If the war crimes exception to the state action requirement permitted all non-state torture claims occurring during a period of civil disorder, federal courts would be open to lawsuits occurring during any period of civil unrest in a foreign country." *Sinaltrainal*, 578 F. 3d at 1267.

The U.S. Supreme Court has held that "the presumption against extraterritoriality applies to claims under the ATS" and thus the statute cannot be applied "to conduct in the territory of another sovereign." *Kiobel v Royal Dutch Petroleum*, 133 S.Ct. 1659, 1679 (2013). All nine justices ruled unanimously that a federal court in New York could not hear claims made by 12 Nigerians who accused Anglo-Dutch oil company Royal Dutch Shell Plc of complicity in a violent crackdown on protesters in Nigeria from 1992 to 1995. Under the *Kiobel* decision, it is beyond dispute that this Court lacks subject matter jurisdiction over John Doe's Alien Tort Statute claims where no state action or violation of the law of nations has been plausibly alleged by John Doe, and the terrorist acts all occurred within the territory of a sovereign nation.

The Second Circuit has recently ruled that:

> The Alien Tort Statute contains numerous jurisdictional predicates, each of which must be satisfied before a court may properly assume jurisdiction over an ATS claim. Thus, at the outset, a court must assure itself that: "(1) the complaint pleads a violation of the law of nations; (2) the presumption against the extraterritorial application of the ATS, announced by the Supreme Court in *Kiobel* [II ], does not bar the claim; (3) customary international law recognizes [the asserted] liability [of a] defendant; and (4) the theory *166 of liability alleged by plaintiffs (i.e., aiding and abetting, conspiracy) is recognized by customary international law [or 'the law of nations']." And while **a defect in any of these jurisdictional predicates would be fatal to a plaintiff's claims**, courts retain discretion regarding the order and manner in which they undertake these inquiries.

*Balintulo v. Ford Motor Co.*, 796 F.3d. 160, 165 (2d Cir. 2015)(emphasis added, footnotes omtted). The Court continued by stating that "the Supreme Court in *Kiobel II* made clear that claims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign nation other than the United States" and the Supreme Court explained that it was "dismissing the plaintiffs' claims because "all the relevant conduct took place outside the United States." *Id*. at 166.

This Court has no subject matter jurisdiction over this alien tort claim.  *See Estate of Amergi v. The Palestinian Authority*, 611 F. 3d 1350, 1356-57 (11th Cir. 2010)(ATS confers limited jurisdiction over a civil action by an alien in tort against (i) a group or individual that involves state action under color of law of a foreign nation; or (ii) individuals for claims "such as torture or murder committed in the course of war crimes … regardless of whether the perpetrator acted under color of law of a foreign nation.").  Here the alien John Doe Complaint alleges facts for which there is no subject matter jurisdiction under the ATS or civil RICO.  The Complaint sets forth that the FARC and ELN are left-wing designated foreign terrorist organizations (FTO) adverse to and operating outside the authority of the Republic of Colombia.  Therefore the ELN and FARC are not capable of state action under color of law of the Republic of Colombia.

Terrorist organizations are not nations, states or agencies of a nation or state and therefore cannot create their own "state action" or "color of authority" for purposes of satisfying the ATS state action requirements necessary for subject matter jurisdiction.  *See Sinaltrainal*, 578 F.3d at 1267 ("ATS claims generally require state action because the law of nations are the rules of conduct that govern the affairs of a nation, acting in its national capacity, in relations with another nation."); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1333 (D.C. UT 2006)(terrorist organization is not a foreign state or agency of a foreign state); *Estate of Esther Klieman v. Palestinian Authority et al.*, 424 F. Supp. 2d 153, 163-65 (D.C.D.C. 2006)(terrorist organization attacks on civilians did not occur " 'in the course of' war between nations or armed conflict).

The John Doe Complaint nowhere alleges "war crimes" or "genocide" required to establish ATS subject matter jurisdiction absent state action.  *See Amergi,* 611 F. 3d at 1361 (Claims of torture or murder against an individual must occur "in the course of war crimes … regardless of whether the perpetrator acted under color of law of a foreign nation" for the court

to have subject matter jurisdiction under the ATS).  This Court lacks subject matter jurisdiction over these claims.

Expansion of the ATS is "strictly limited to acts that violate a 'norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms that the Supreme Court recognized in *Sosa*.'"  *Amergi* at 1357.  "The ATS is a jurisdictional statute creating no new causes of action."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 694 (2004).  The courts are to exercise "great caution in adapting the law of nations to private rights."  *Id*. (ATS allows jurisdiction to entertain only a "handful of international law" claims.).  Federal courts are to "open the door to only 'a narrow class of international norms recognized today" and the judicial power to "recognize new law of nations violations" is subject to strict "doorkeeping."   *Amergi* at 1357.  No such potentially new violations are alleged here.

"Congress intended the ATS to furnish jurisdiction for a relatively modest set of actions alleging violations of the law of nations."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 720 (2004).  This "very limited set of claims" related to "'offences against this law [of nations] . . . principally incident to whole states or nations,' and not individuals seeking relief in court."  *Sosa* at 720, *citing*, Blackstone 4 Commentaries 68.  he Supreme Court has made the ATS' limited jurisdiction clear:

> We think it is correct, then, to assume that the First Congress understood that the district courts would recognize private causes of action for certain torts in violation of the law of nations, though we have found no basis to suspect Congress had any examples in mind beyond those torts corresponding to Blackstone's three primary offenses: violation of safe conducts, infringement of the rights of ambassadors, and piracy.

*Sosa* at 724.  This is consistent with the courts' "important gatekeeping function."  *Amergi* at 1357.

8

ATS claims fall into one of two categories.  Category I are those ATS claims *against entities or individuals involving torts committed under color of law of a foreign nation*.  *See Sinaltrainal* at 1265 ("ATS claims generally require allegations of state action because the law of nations are the rules of conduct that govern the affairs of a nation, acting in its national capacity, in relations with another nations.").  **The Complaint in this alien John Doe case specifically sets forth no state action – "ELN and FARC operate outside the authority of the Colombian state**."  Complaint [DE 1, ¶ 13].  Therefore there is no subject matter jurisdiction over the ATS claim as a matter of law.

The Complaint accurately sets forth that the ELN and FARC are designated Foreign Terrorist Organizations that engage in terrorist activity, including hostage taking.  Complaint [DE 1, ¶¶ 2, 3, 10].  Terrorist organizations are not states as a matter of law.  *See Morris v. Khadr*, 415 F. Supp. 2d 1323, 1333 (D.C. UT 2006)(terrorist organization is not a foreign state or agency of a foreign state).  Because terrorist organizations are not states, they are not capable of creating their own state action or acting under the color of law of a foreign nation.  No U.S. court or foreign nation has ever declared or recognized the FARC or ELN as a foreign state or nation.

John Doe also alleges that the ELN and FARC are "quasi-states".  [DE 1, ¶ 51].  Terrorist organizations are not "quasi-states" capable of creating their own state action or acting under color of law as a foreign nation.  *See Morris* at 1333; *Estate of Esther Klieman v. Palestinian Authority et al.*, 424 F. Supp. 2d 153, 163-65 (D.C.D.C. 2006)(terrorist organization attacks on civilians did not occur " 'in the course of' war between nations or armed conflict).  The ATS does not confer subject matter jurisdiction for torts or crimes committed by a foreign terrorist organization absent color of law of a foreign nation.

State action means "there [exists] a symbiotic relationship between [that] private actor and the government." *See Baloco v. Drummond Co., Inc.*, 640 F.3d 1338, 1346 (11th Cir. 2011), *citing, Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1316-17 (11th Cir. 2008). Because the FARC and ELN are terrorist organizations and not nations or states, neither the FARC not the ELN can satisfy the "government" symbiosis required for state action under the ATS.

No court, treaty, nation or international tribunal has ever declared that action of a "quasi-state" is state action under color of law of a foreign nation for purposes of a violation of the law of nations. Failure to vacate the judgment and dismiss this action will improperly expand the scope of the limited subject matter jurisdiction of the ATS. The ATS only recognizes "law of nations violations" and these are subject to strict "doorkeeping". *Amergi* at 1357.

Even if an ATS plaintiff were able to show that a non-state actor's kidnapping for ransom is a violation of the law of nations, an ATS plaintiff must also show the violation of a norm of international law that, if left unredressed, would "threaten[ ] serious consequences in international affairs." *Amergi* at 1363 ("If it were enough to allege under the ATS a single murder committed by private actors in the course of an armed conflict, our courts would be open to effectively every incident of violence in every unstable region of the world"), *citing Sosa*, 542 U.S. at 715. No such consequence would occur in the private citizen alien kidnapping claim on foreign soil.

The John Doe Complaint alleges:

> 32. The acts described herein were inflicted under the color of law and/or under the color of official authority and/or in conspiracy on behalf of those acting under color of official authority, and were inflicted deliberately and intentionally.

But these are pure legal conclusions, contrary to the specific facts alleged in the Complaint, which fail to create subject matter jurisdiction under the ATS. *See Mamani v. Berzain*, 645 F.3d

10

1148, 1152-53 (11th Cir. 2011)(federal courts must require that an ATS claim define the violation with "specificity", *quoting, Sosa* at 694.) This "standard is a high one." *Id*. "High levels of generality will not do." *Mamani* at 1152 (reversing denial of motion to dismiss ATS claim and remanding with instructions to dismiss and demanding "Judicial restraint"). The Supreme Court has held that courts must ignore allegations that are mere legal conclusions and test the remaining factual allegations for plausibility. *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

The second category of ATS claims are those claims ***against individuals*** for war crimes, regardless of whether they acted under color of law of a foreign nation. *Amergi* at 1357 (ATS authorizes claims *against individuals* for war crimes and torture regardless of whether committed under color of law of a foreign nation). The alien John Doe Complaint does not allege such war crimes or genocide against an individual Defendant, only 2 FTOs are named Defendants. The Complaint alleges kidnapping for ransom where the John Doe plaintiff and paid the FARC – a designated terrorist organization - $6,800,000.00. Complaint [DE 1](¶ 21 "financial/economic capture"); (¶ 28 "paid $6,800,000.00 dollars in ransom, with the remaining $2,000,000.00 still owed to the FARC."). Torture, as alleged here, when not committed in the course of genocide or war crimes are only violations of international law when committed by state officials or under color of law of a foreign nation. Because there is no tort committed under color of law of a foreign nation, the court has no subject matter jurisdiction over this ATS claim. *See Amergi* at 1361, *citing Kadic v Karadzic*, 70 F.3d 232, 243 (2d Cir. 1995)(**"**Torture and summary execution-when not perpetrated in the course of genocide or war crimes-are proscribed by international law only when committed by state officials or under color of law."). Similarly, because there are no allegations of genocide or war crimes in this action, the claims for kidnapping, trafficking and torture must be committed by a state actor or under the color of law

of a foreign nation – there is no foreign nation actor here. *Id*. No U.S. court has ever applied the ATS in an action against a foreign terrorist organization which was not acting under color of law of a foreign nation.

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) involved a Mexican national (Alvarez) who was kidnapped in Mexico by another Mexican national and transported into the U.S. on behalf of the DEA. Alvarez sued the U.S. under the FTCA and the ATS. The district court found that the individual Mexican national who kidnapped Alvarez had violated international law and was therefore liable under the ATS. The Supreme Court unanimously ruled that the ATS did not create a separate ground of suit for violations of the law of nations. Instead, it was intended only to give courts jurisdiction over traditional law of nations cases - those involving ambassadors, for example, or piracy. Because Alvarez-Machain's claim did not fall into one of these traditional categories, it was not permitted by the ATS. The Court went on to state that violations of international law are only actionable where the "norm is specific, universal and obligatory." *Id*. at 732. If an ATS action by a Mexican national, like Alvarez-Machain in *Sosa*, who was kidnapped in Mexico by another Mexican national and brought into the U.S. while acting for the DEA, is not allowed under the ATS, then plaintiff John Doe's kidnapping and transport across the Venezuela-Colombia border without state action must also be denied.

### *There are no War Crimes or Genocide alleged here*

The war crimes exception to state action does not apply. John Doe's complaint does not allege injuries suffered as a result of any war crimes, instead it alleges that he was kidnapped along with other passengers from a passenger bus at a border crossing bridge in northern Colombia while on a business trip and subsequently tortured and held for ransom. [DE 1, ¶¶ 16-18] . Plaintiff was not kidnapped or tortured during the course of any armed conflict between

12

Colombian military forces and either the ELN or FARC. Further, only private actors **who are individuals** fall within the war crimes exception to state action, the war crimes exception does not apply to non-individual defendants like a corporation or an FTO. *Sinaltrainal v. Coca-Cola Company*, 578 F.3d 1252, 1267 (11th Cir. 2009). The 11th Circuit has held that allegations of torture and rape perpetrated by non-state actors in periods of civil unrest in foreign countries are expressly rejected under the ATS. *Id*.

Torture committed by private actors does not violate international law. *Aldana v. Del Monte Fresh Produce*, 416 F.3d 1242, 1247 (11th Cir. 2005), *citing, Kadic v Karadzic*, 70 F.3d 232, 243 (2d Cir. 1995)(" torture and summary execution—when not perpetrated in the course of genocide or war crimes—are proscribed by international law only when committed by state officials or under color of law").

Plaintiff's complaint includes general allegations of "political killings, trafficking, and forced disappearances, massive displacements, … [and] widespread recruitment of child soldiers". [DE 1 ¶ 11]. General pleadings of such an environment will not create ATS subject matter jurisdiction:

> We reject the plaintiffs' argument that it is sufficient for the purposes of ATS jurisdiction that the violation perpetrated by a non-state actor merely occur during an armed civil conflict. If the war crimes exception to the state action requirement permitted all non-state torture claims occurring during a period of civil disorder, federal courts would be open to lawsuits occurring during any period of civil unrest in a foreign country. … In this case there is no suggestion the plaintiffs' murder and torture was perpetrated because of the ongoing civil war or in the course of civil war clashes. The civil war provided the background for the unfortunate events that unfolded, but the civil war did not precipitate the violence that befell the plaintiffs.

*Sinaltrainal*, 578 F.3d 1252, 1270 (affirming dismissal of Colombian ATS claims for lack of subject matter jurisdiction and characterizing claim as a series of "unfortunate events"). Like

*Sinaltrainal*, the series of unfortunate events that befell this plaintiff does not create subject matter jurisdiction. *Id*.

### *The Hostage Taking Convention Does Not Apply Here*

John Doe relies heavily on the International Convention Against the Taking of Hostages, but he failed to inform the rendering court of Article 5 which specifies that:

1. Each State Party shall take such measures as may be necessary to establish its jurisdiction over any of the offences set forth in article 1 which are committed:
    a. in its territory or on board a ship or aircraft registered in that State;
    b. by any of its nationals or, if that State considers it appropriate, by those stateless persons who have their habitual residence in its territory;
    c. in order to compel that State to do or abstain from doing any act; or
    d. with respect to a hostage who is a national of that State, if that State considers it appropriate.

Nowhere in the Convention is there any support for the proposition that universally accepted norms of international law requires, or even allows, the U.S. to exercise jurisdiction over a civil lawsuit between foreign parties for hostage taking or kidnapping that occurred in a foreign country. Nowhere does the Convention mention extraterritorial jurisdiction for civil lawsuits seeking victim compensation.

Instead, the U.S. has enacted a federal statute governing hostage taking, 18 U.S.C. § 1203, which clearly states that "[i]t is not an offense under this section if the conduct required for the offense occurred outside the United States unless - (A) the offender or the person seized or detained is a national of the United States; (B) the offender is found in the United States; or (C) the governmental organization sought to be compelled is the Government of the United States." 18 USC 1203(b)(1)**.** The ELN and FARC's capture and hostage taking of plaintiff in Venezuela and Colombia does not satisfy any of these federal statutory conditions. This is direct evidence that there is no universal, specific and obligatory international law for one nation to exercise extraterritorial jurisdiction over hostage taking in a foreign county involving foreign parties.

14

The Protocol on Trafficking in Persons relied on by John Doe was by its terms intended to "prevent and combat trafficking in persons, paying particular attention to women and children".  [Article 2].  Article 3 of the Protocol provides a definition of "trafficking in persons" which requires that the purpose be for "exploitation" which is defined as:

> "Exploitation shall include, at a minimum, the exploitation of the prostitution of others or other forms of sexual exploitation, forced labour or services, slavery or practices similar to slavery, servitude or the removal of organs."

[Art. 3].  John Doe's complaint alleges that he was kidnapped and tortured  by the ELN and then sold to the FARC who held him for ransom and tortured him.  The alleged torture included being forced to engage in sex acts.  Plaintiff improperly classifies these acts as "trafficking in persons", yet there is no allegation supporting the express requirement of exploitation.  Plaintiff's complaint makes clear that he was not sold as a sex slave or slave laborer, nor were his organs removed, he was sold as an economic kidnap for ransom victim.

Further, Article 1 of the  Protocol states that it "supplements the United Nations Convention against Transnational Organized Crime" and "shall be interpreted together with the Convention" and that the provisions of the Convention "shall apply" to this Protocol.  Like the Convention Against Hostage Taking, this Convention also expressly limits the exercise of jurisdiction in Article 15, and again, none of the criteria are applicable here where the offenses were not committed in the U.S., or on a U.S. flag vessel or aircraft, or against or by a U.S. national, etc., therefore the offenses alleged in plaintiff's complaint are simply not covered by the Convention as a matter of law.

### *Civil Rico*

This court also lacks subject matter jurisdiction over John Doe's civil RICO claim in Count III of his Complaint because it is well settled that civil RICO, 18 U.S.C. § 1961-1962, has

no extraterritorial application.  *See Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010)(RICO did not have extraterritorial application even if some domestic conduct occurred in U.S.);  *Norex Petroleum Ltd. v. Access Industries, Inc.*, 540 F.Supp.2d 438, 440-41 (S.D.N.Y. 2007)(issue of the extraterritorial application of a federal statute implicates federal question subject matter jurisdiction, rather than the failure to state a claim); *Bowoto v. Chevron Corp.*, 481 F.Supp.2d 1010 (N.D.Cal.2007)(same);  *Doe I v. State of Israel*, 400 F.Supp.2d 86 (D.D.C.2005)(same); *Jose v. M/V Fir Grove*, 801 F.Supp. 349 (D.Or.1991)(same); *Nasser v. Andersen Worldwide Societe Co-op.*, 2003 WL 22179008 (S.D.N.Y.2003)(same); *U.S. v. Philip Morris USA, Inc.*, 783 F.Supp.2d 23 (D.D.C.2011)(same);  *Cedeno v. Intech Group, Inc.*, 733 F.Supp.2d 471 (S.D.N.Y.2010)(same).

In determining whether RICO subject matter jurisdiction applies to extraterritorial acts, the allegations must meet either the "conduct" test or the "effect" test.  *Sinaltrainal*, 256 F.Supp.2d at 1359 (*quoting North South Fin. Corp. v. Al-Turki*, 100 F.3d 1046 (2d Cir.1996)). Under the "conduct" test, a court may assert subject matter jurisdiction over a RICO claim only if conduct material to the alleged crime or directly causing the alleged loss occurred in the United States. *See Id.; Villeda Aldana v Fresh Del Monte Produce*, 305 F. Supp. 2d 1285, 1306 (S.D.Fla 2003)(court had no subject matter jurisdiction over RICO claim where Complaint was based almost entirely on events that occurred in Guatemala).  Under the "effects" test, subject matter jurisdiction requires "substantial" effects which are a "direct and foreseeable result of the conduct outside the United States." *See Sinaltrainal*, 256 F. Supp. 2d at 1359. The test is met when the domestic effect is a "direct and foreseeable result of the conduct outside of the United States." *Id.* at 1359.

Here, the ELN and FARC conduct of kidnapping, torture, and rape of John Doe **did not occur within the U.S**. therefore John Doe cannot meet the "conduct" test as a matter of law. John Doe also cannot meet the "effects" test as a matter of law because there was no substantial effect in the U.S. as a direct and foreseeable result of a financial kidnapping for ransom of a Venezuelan national riding on a passenger bus at a Colombia-Venezuela border crossing bridge, and then 11 months of captivity and torture in Colombia by terrorist organizations, with a release following a ransom payment to the FARC.  *See Norex Petroleum*, 540 F.Supp.2d at pp. 445-449.

### *The SDFL Court Never Ruled on the Merits of Subject Matter Jurisdiction or the Stansell Plaintiffs' Collateral Attack under Rule 60(b)(4) and this Motion is now ripe and timely*

For the first time in the history of this litigation, the Stansell Judgment Creditors and John Doe now both have direct competing claims to the same specific blocked assets.

The Stansell Judgment Creditors moved to intervene in John Doe's SDFL proceedings on two separate occasions.  Although both motions to intervene were denied, the SDFL never addressed the merits of the ATS or RICO claims, nor did the SDFL ever rule on the collateral attack on issues of extraterritoriality, state action, war crimes, or subject matter jurisdiction.

On August 2, 2002, the Court entered an Order Denying the Motion to Intervene holding that "[r]esolution of Intervenors' Motion turns on whether Intervenors' have a protectable interest in FARC's assets and whether that interest would be impaired by denying intervention." [SDFL DE 51, p.1].  The Court went on to state:

> The Court finds that Intervenors' purported interest in FARC's assets is not sufficiently related to the underlying subject matter of the instant case by virtue of the **fact FARC's assets are not at issue in this case**. The sole issue in this case is whether Defendants are liable under the ATS and the federal civil RICO statute for, among other things, kidnapping, hostage-taking, torturing, and ransoming Plaintiff. **While it is true the Default Judgment may ultimately give Plaintiff an interest in FARC's (and ELN's) assets (if such assets are ever found)**, this fact alone does not give Intervenors an interest in this proceeding. Rather, they

> merely have an interest in any potential assets which might, one day, be executed against in satisfaction of the Default Judgment.

[SDFL DE 51, p. 4](emphasis added). The Court then stated that:

> Allowing Plaintiff's judgment to stand would not necessarily impair any interest that Intervenors have in FARC's assets, since Plaintiff has only a judgment awarding him monetary damages—**not an interest in any particular FARC asset**. That is, Plaintiff's judgment does not automatically grant Plaintiff an interest in an asset that could impair Intervenors' interest.

[DE 51, p. 5](emphasis added). Finally, as to permissive intervention, the Court held that "**Intervenors have failed to show that they have any interest in any specific assets**."

[DE 51, p. 6](emphasis added].

When Plaintiffs' Renewed Motion to Intervene was denied in 2013, the SDFL merely held that the Stansell Plaintiffs were not entitled to intervene as of right, and permissive intervention was again denied. [SDFL DE 111]. *Once again, the SDFL never addressed or ruled the merits of the challenged lack of subject matter jurisdiction*.

On January 14, 2015, the Stansell Judgment Creditors initiated post-judgment execution proceedings in the MDFL against the blocked assets of the "Hezbollah Network in Africa" by filing expert affidavits, a supporting appendix, and a motion for issuance of writs of garnishment. On February 17, 2015, the MDFL entered Order DE 900 making a preliminary ruling that Hezbollah and its financial network members were agencies or instrumentalities of the FARC.

John Doe did not initiate any execution proceedings against these same "Hezbollah Network in Africa" blocked assets until he registered his SDFL Default Judgment in the SDNY and NDNY in July of 2015, and thereafter commenced turnover proceedings. John Doe never served notice of these proceedings on the Stansell Judgment Creditors, instead the Stansell Judgment Creditors learned of the John Doe competing claims from counsel for JPMCB and BNYM after their August 5, 2015 service of the NDIL Citations to Discover Assets. The

18

Stansell Creditors did serve John Doe with notice of their NDIL proceedings, and their judgment lien priority, but John Doe chose not to appear in the NDIL.

On December 16, 2015, this Court entered its Order [DE 67] denying the Stansell Respondents' motion to dismiss or transfer the JPMCB Third Party Interpleader Complaint to the NDIL.  The Stansell Judgment Creditors have now Answered and counterclaimed for turnover on December 30, 2015 [DE 78].

Accordingly, now that there are specific competing claims pending in the same court as to the same specific identified blocked assets of SDGT Tajco a/k/a Grand Stores and SDGT Grupo Arosfran, it is beyond dispute that the Stansell Judgment Creditors now have standing to challenge by collateral attack the John Doe Complaint and Default Judgment as void for lack of subject matter jurisdiction.

The undersigned counsel hereby certifies that he has previously conferred with counsel for John Doe who opposes the relief requested in this Motion.

WHEREFORE the Stansell Judgment Creditors respectfully request that this Court vacate the John Doe Default Judgment under Rule 60(b)(4) as void for lack of subject matter jurisdiction based on the Complaint's allegations, and the arguments and authorities cited  above.

Respectfully submitted December 31, 2015

>/s/ Tony Korvick
>Tony Korvick, Esq.
>Newt Porter, Esq.
>PORTER & KORVICK, P.A.
>Attorneys for Stansell Respondents
>9655 S. Dixie Highway, Suite 208
>Miami, FL 33156
>305-373-5040
>tkorvick@porterandkorvick.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 31, 2015, I served the foregoing via First Class International Mail, or First Class U.S. Mail, to the following persons who are not believed to have received CM/ECF service upon filing:

NONE

By: */s/ Tony Korvick*
TONY KORVICK
PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208
Miami, Florida 33156
(305) 373-5040    (305) 668-9154 FAX
tkorvick@porterandkorvick.com