IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,                                                                             Case No. 15 cv 8652-LTS

    Petitioner/Judgment Creditor,

vs.

EJERCITO DE LIBERACION NACIONAL,
a/k/a ELN, a/k/a National Liberation Army,
and FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
a/k/a FARC, a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA,

    Defendants/Judgment Debtors,

and

JP MORGAN CHASE BANK, N.A.,                                      **Response to Motion to Vacate**

    Respondent.
_____
JP MORGAN CHASE BANK, N.A.,

    Third Party Petitioner,

vs.

KEITH STANSELL, MARC GONSALVES,
THOMAS HOWES, JUDITH G. JANIS,
CHRISTOPHER T. JANIS, GREER C. JANIS,
MICHAEL J. JANIS, JONATHAN N. JANIS,
ANTONIO CABALLERO, KASSIM TAJEDDINE,
METROPOLITAN LIFE INSURANCE COMPANY,
GRAND STORES LTD., TRUST BANK LTD.,
CREDIT SUISSE AG, TAJCO a/k/a TAJCO LTD.,
ARAB GAMBIAN ISLAMIC BANK LTD.,
and AHLI UNITED BANK UK PLC,

    Third Party Respondents.
_____/

**PETITIONER/JUDGMENT CREDITOR'S RESPONSE TO THIRD PARTY RESPONDENTS' MOTION TO VACATE PETITIONER JOHN DOE'S DEFAULT JUDGMENT AS VOID FOR LACK OF SUBJECT MATTER JURISDICTION**

For the third time, Third-Party Respondents ("Third-Parties"), alleged victims of the FARC's brutalities, have tried to stand in the shoes of this terrorist organization in an attempt to preclude Petitioner John Doe ("Doe"), a fellow victim, from recovering his judgment. This third attempt fails for five independent reasons. First, Third-Parties move solely under Federal Rule of Civil Procedure 60. *See* (D.E. 80 at 1) (Mot. to Vacate). Rule 60 permits only parties or their legal representatives to vacate a judgment. Third-Parties are neither the FARC, nor its legal representatives. Second, subject matter jurisdiction cannot be contested in a collateral proceeding, such as this one. Third, Third-Parties largely rely upon case law that substantially post-dates Doe's final judgment. Changes in the decisional law that follow a final judgment cannot be used to vacate that judgment; otherwise, every Supreme Court opinion would spur a rash of Rule 60 motions. This would undermine any finality in the system. Fourth, although omitted by Third-Parties in their motion, Doe must only show that the rendering court had an arguable basis for jurisdiction. This low bar is easily met here. Fifth, if any court is going to determine the merits of Third-Parties' motion, prudence and comity suggest that it should be the Southern District of Florida where Third-Parties have already twice (unsuccessfully) sought similar relief. For each of these reasons individually, and certainly when combined, Third-Parties' motion should be denied.

1. **Third-Parties Have No Standing Under Rule 60.**

Under the clear and unambiguous terms of Rule 60, only "a party or its legal representative" may seek relief from a final judgment. Fed. R. Civ. P. 60(b). In the absence of that status, a Rule 60 motion is not cognizable. Rule 60(b) only "allow[s] one who is in privity with a party to move for relief." *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir. 1994) (*quoting*, 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2865, at 225-26 & n. 58

(1973)).  *See also Screven v. United States*, 207 F.2d 740, 741 (5th Cir. 1953); *In re El Paso Refinery, LP*, 37 F.3d 230, 234-35 (5th Cir. 1994).[1]  Third-Parties' repeated attempts to stand in the shoes of FARC do not change the immutable fact that they are neither the FARC, nor the FARC's legal representative.  On this basis alone, Third-Parties' Motion to Vacate should be denied.

**2. Subject Matter Jurisdiction Cannot Be Attacked In This Collateral Proceeding.**

Even if Third-Parties had standing to contest subject matter jurisdiction under Rule 60, and they do not, their request still must be denied because subject matter jurisdiction cannot be attacked, under these circumstances, in a collateral proceeding.  Doe's action was litigated in the Southern District of Florida.  Final default judgment was entered by Judge Huck on January 5, 2012.  *See* Ex. A (*Doe v. Ejercito Liberacion Nacional, et al.*, 10-cv-21517, (Huck, J.) (Jan. 5. 2012) (D.E. 42)).  In entering Final Judgment, "it seems appropriate to assume that the court entering default judgment did make a determination that it had subject matter jurisdiction.  After all, it had no business entering a judgment unless it had already determined that the case was properly before it."  13D Charles Alan Wright & Arthur Miller, et al., Federal Practice and Procedure note 3, § 3536 (3d ed. 2008).  And if there was any ambiguity that Judge Huck followed his mandate to determine subject matter jurisdiction, it was resolved when Third-Parties twice raised the matter in their motions to intervene.  *See* Ex. A, C (*Doe v. Ejercito de Liberacion*

---

[1] Third-Parties may argue, in reply, that their rights are "so intimately bound up with the parties that their rights were directly affected by the **final judgment**" and thus they are the FARC's legal representative.  *In re El Paso Refinery*, 37 F.3d at 234 (*quoting Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517 (11th Cir. 1987) (emphasis supplied).  This argument is absurd on its face.  Alleged victims of the FARC with adversarial proceedings against the FARC cannot serve as the FARC's legal representative.  Moreover, that argument would conflate the **garnishment** proceedings here with Petitioner's **final judgment**.  Clearly, and as previously held by the Judge Huck in the Southern District of Florida, Third-Parties were not directly affected by Petitioner's final judgment entered against FARC and ELN and Third-Parties' later disputes with Petitioner over recoveries of certain frozen funds do not affect that conclusion.  *See* Ex. B (*Doe v. Ejercito Liberacion Nacional, et al.*, 10-cv-21517, (Huck, J.) (Aug. 2. 2012) (D.E. 51)).  SDFL D.E. 51 at 4 (holding that Third-Parties "purported interest in FARC's assets is not sufficiently related to the subject matter of the instant case by virtue of the fact FARC's assets are not at issue in this case.  The sole issue in this case is whether Defendants are liable under the ATS and the federal civil RICO statute for, among other things, kidnapping, hostage-taking, torturing, and ransoming Plaintiff.  While it is true the Default Judgment may ultimately give [Petitioner] and interest in FARC's (and ELN's) assets [ ], this fact alone does not give [Third-Parties] an interest in this proceeding.")

*Nacional, et al.*, 10-cv-2157, Huck, J.). (D.E. 46, 65). Judge Huck clearly understood both the import and the argument made by Third-Parties, noting that Third-Parties sought to intervene for the "sole purpose of moving to vacate Plaintiff's Default Judgment as void for lack of subject matter jurisdiction." Ex. D (D.E. 111, p.3). More specifically, the Court noted that the challenge was being made because Third Parties claim that they and Plaintiff are "seeking to execute on the same assets"; and further that Third Parties "implore the Court to review *sua sponte* its subject matter jurisdiction, particularly in light of the Supreme Court's recent decision in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659 (2013)." *Id.* Judge Huck denied Third-Parties' attempts directly in the face of their subject matter jurisdiction claims, clearly indicating he both considered and found subject matter jurisdiction.

Third-Parties never attempted to appeal Judge Huck's rulings, although they could have, so his rulings were left undisturbed. "[A] party that has unsuccessfully litigated a court's subject matter jurisdiction is normally collaterally estopped from a subsequent challenge." *Da Silva v. Kinsho Intern. Corp.*, 229 F.3d 358, 362 (2d Cir. 2000) (*citing Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938)). Third-Parties did just that with their arguments in the Southern District of Florida. That they abandoned those arguments and did not appeal changes nothing. They should not be permitted to continue to re-litigate the issue in this Court. "It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first." *Durfee v. Duke*, 375 U.S. 106, 113-14 (1963).

Although Third-Parties clearly litigated subject matter jurisdiction in the Southern District of Florida, the result here should be the same even if they had not.  "If the question of jurisdiction was litigated in the first action, ordinary issues of issue preclusion would suggest that it be put to rest; if it was not actually litigated, ordinary principles of defense preclusion would suggest that it be lost just as defenses on the merits are lost."  18A Wright & Miller, *supra*, note 3, at § 4428.  And, this of course makes perfect sense as "in the interests of finality, collateral attacks on subject matter jurisdiction are not permitted."  *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 124 n.3 (2d Cir. 1999) (*citing Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992)); *see also Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938).  *See also Weininger v. Castro,* 462 F.Supp.2d 457, 471 (SDNY 2006) (noting, *in dicta,* that subsequent court may, but need not, inquire into the jurisdictional basis for the rendering court).

On this basis alone, Third-Parties' motion should be denied.

**3.   Changes In Decisional Law Do Not Warrant Vacation under Rule 60.**

As shown *infra*, Third-Parties misinterpret the caselaw upon which they rely.  However, even if their (mistaken) interpretations were correct, it would be of no moment.  Third-Parties' motion leans heavily upon the Supreme Court's ruling in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1669 (2013).  *See* (D.E. 80) (Mot. to Vacate at 2, 6).  Specifically, Third-Parties argue that, "[u]nder the *Kiobel* decision, it is beyond dispute that this Court lacks subject matter jurisdiction over John Doe's Alien Tort Statute [ATS] claims."  (*Id.* at 6).

A glaring problem with Third-Parties' argument is that *Kiobel* significantly post-dates Doe's final judgment.  Doe's final judgment was entered January 5, 2012.  *See* Ex. A (*Doe v. Ejercito Liberacion Nacional, et al.*, 10-cv-21517, (Huck, J.) (Jan. 5. 2012) (D.E. 42)).  The *Kiobel* opinion issued April 17, 2013, over one year later.  While Third-Parties assert Rule 60(b)(4) voidness as

the basis for their motion, that voidness claim is, in fact, based on this supposed change in the law. *See* (D.E. 80) (Mot. to Vacate at 6). However, "as a general matter, a mere change in decisional law" is not sufficient to sustain a Rule 60 challenge. *See Empresa Cubana Del Tabaco v. General Cigar Co.*, 385 Fed.Appx. 29, 32 (2d Cir. 2010) (citation omitted).

On this basis alone, Third-Parties' motion should be denied.

### 4. The Rendering Court Had, At A Minimum, An Arguable Basis For Jurisdiction.

"Rule 60(b) motions are disfavored." *Empresa Cubana Del Tabaco,* 385 Fed.Appx. at 31 (citation omitted). "Since Rule 60(b) allows extraordinary relief, it is invoked only upon the showing of exceptional circumstances." *Central Vermont Public Service Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003) (citation omitted). "In the context of a Rule 60(b)(4) motion, a judgment may be declared void for want of jurisdiction only when the court '**plainly usurped jurisdiction,**' or, put somewhat differently, when 'there is a **total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction**.'" *Central Vermont Public Service Corp.*, 341 F.3d at 190 (*quoting Nemaizer v. Baker,* 793 F.2d 58, 65 (2d Cir. 1986) (emphasis supplied).

Tellingly, Third-Parties omit this very low standard the rendering court's exercise of jurisdiction must meet; a standard easily met here. That the rendering Court met such low standard when it issued its opinion is clear. The Second Circuit recently recognized that, even now, after *Kiobel*, a claim involving violation of a norm of international law that is of a transnational, as opposed to intra-national, nature, could still be actionable. *See Ellul v. Congregation of Christian Brothers*, 774 F.3d 791 (2d Cir. 2014) (avoiding deciding whether human trafficking claims remain cognizable in U.S. courts after *Kiobel* in light of Plaintiff's arguments that human trafficking, like piracy, is transnational in nature and does not occur within the territory of foreign

sovereign and thus falls outside the presumption against extraterritoriality).  Count I of the Complaint, for International Hostage-Taking and Trafficking in Persons in Violation of the Law of Nations, alleged just the sort of transnational crimes that the Second Circuit recognized could be cognizable.  (Further, because the defendant in *Ellul* was a non-state actor, it provided guidance on the Third Parties' other argument against ATS jurisdiction.)  If the Second Circuit recognizes today, after *Kiobel*, that wholly extraterritorial but transnational crimes could be cognizable, it clearly cannot be said that the Southern District of Florida "plainly usurped jurisdiction" or that there was "no arguable basis on which it could have rested a finding that it had jurisdiction." *Central Vermont Public Service Corp.*, 341 F.3d at 190.

Turning to Third Parties' second substantive argument against ATS jurisdiction, there is little dispute that non-state actors can be held liable for certain acts, including those alleged in Count I of the Complaint, which is attached hereto as Ex. E.  (*Doe v. Ejercito de Liberacion Nacional, et al.*, 10-cv-2157, Huck, J.). (D.E. 1).  As noted above, the Second Circuit in *Ellul* implicitly recognized that non-state actors could be held liable for international trafficking in persons.  Further, the quintessential ATS claim is piracy, a crime committed not by states, but by outlaw pirates acting internationally.  The defendants likewise acted internationally when they kidnapped and trafficked the Plaintiff across national borders.  It is true that the ATS requires plaintiffs to plead a violation of the law of nations. *Kadic v. Karadzic*.  70 F.3d 232, 238 (2d Cir. 1995).  But state action is not and has never been an element of a violation of the law of nations for many recognized crimes, including the early proscription against piracy, later norms against slave trading, genocide and war crimes, and, modern era norms against aircraft hijacking. *Id.* at 240.  There are few grounds for arguing that the crimes alleged in Count I – the taking of hostages and trafficking persons internationally in violation of norms specifically providing for liability of

individuals, are only actionable under the ATS if committed by a state actor. To the contrary, while it appears to be an issue of first impression, Plaintiff alleged ample grounds for a ruling that international law recognizes individual liability for violations of both of those norms. For example, concerning the International Convention Against the Taking of Hostages, G.A. Res. 146 (XXXIV), U.N. GAOR, 34th Sess., Supp. No. 46 at 245, U.N. Doc. A/34/46 (1979), entered into force June 3, 1983, the Complaint provides:

> 46. The preamble to this convention states:
>
> That the taking of hostages is an offence of grave concern to the international community and that, in accordance with the provisions of this Convention, any person committing an action of hostage taking shall be either prosecuted or extradited.
>
> 47. Said convention recognizes that the offense is of international character and of grave mutual concern and so outlaws it whether the perpetrators or victims are individuals or states. It reads:
>
> Any person who seizes or detains and threatens to kill, to injure or to continue to detain another person (hereinafter referred to as the "hostage") in order to compel a third party, namely a State, and international intergovernmental organization, a natural or juridical person, or a group of persons, to do or abstain from doing an act as an explicit or implicit condition for the release of the hostage commits the offence of taking of hostages ("hostage taking") within the meaning of the Convention.

Ex. E. (*Doe v. Ejercito de Liberacion Nacional, et al.*, 10-cv-2157, Huck, J.). (D.E. 1 at p. 10). Given the clear indication of a universal obligatory norm against individual as well as state action, it again cannot be said that the Southern District of Florida "plainly usurped jurisdiction" or that there was "no arguable basis on which it could have rested a finding that it had jurisdiction." *Central Vermont Public Service Corp.*, 341 F.3d at 190.

Third Parties are correct that there is a state-action requirement before torture can be deemed in violation of an international norm. However, that requirement is met when the torture

is committed by a state *or a quasi-state*. *Kadic v. Karadzic*, 70 F.3d at 245 (holding that the leader of a faction in the Bosnian civil war was subject to an ATS claim for torture, independent of whether the torture was committed in pursuit of genocide or a war crime, because he leads a quasi-state). Here, the claim is against a faction in a civil war. The Complaint alleges that

> 12.   ELN and FARC are quasi-state paramilitary organizations that operate in a defined territory, are self-controlled and engage in formal relations with other entities.
>
> \*                            \*                              \*
>
> 31.   . . . ELN and FARC used means of state repression . . .
>
> 51.   . . . FARC and ELN are quasi-states or together constitute quasi-states.
>
> 55.   The acts described herein were committed under the actual or apparent authority of a quasi-state entity.

Ex. E. (*Doe v. Ejercito de Liberacion Nacional, et al.*, 10-cv-2157, Huck, J.). (D.E. 1 at pp. 4, 8, 11). Just as the Bosnian paramilitaries, who hoped to be but were not yet a recognized state, could be held liable through the ATS as quasi-state actors, the FARC and ELN can be held liable through ATS as quasi-state actors.[2]

Further, there is no state action requirement for war crimes. *Kadic v. Karadzic*, *supra* at 241-243. The facts plead in this matter thus could also support a claim for war crimes, as they took place in the course of the Colombian civil war and were committed by combatants in that war as a "means of state repression" (Ex. E, p. 8), as alleged. This stands in contrast to the failed allegations of Plaintiffs in another case, who alleged they were "targeted for violence to further

---

[2] Granted, the torture claim if brought today would no longer be actionable due to *Kiobel's* presumption against extraterritoriality for acts occurring within a nation's borders. But given the long line of cases nationwide approving extraterritorial application of the ATS in the modern era, from *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980) onwards, the Southern District of Florida had ample grounds to find that it had subject matter jurisdiction over the torture claim when it entered its judgment.

Defendants' business interest in becoming union-free." *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1267 (11th Cir. 2009).

Oddly, Third Parties cite *Sinaltrainal* for the proposition that "the war crimes exception does not apply to non-individual defendants like a corporation or an FTO." (Mot. to Vacate at p. 13.) It is hard to decipher how Third Parties could have divined this holding, when the Court in fact stated, "The modern line of ATS cases initially involved state actors . . .but subsequent cases have expanded the scope of the ATS to impose liability on private individuals and corporations." *Sinaltrainal*, 578 F.3d at 1263. Third Parties' argument appears to be based on a later quote, in which the Court wrote that crimes committed in the course of war crimes "violate the law of regardless of whether the perpetrator acted under color of law of a foreign nation or *only* as a private individual." *Sinaltrainal*, 578 F.3d at 1267 (emphasis added). Of course, the court was using "only" in this instance as a synonym for "merely". It is a misreading to say that, under *Sinaltrainal*, *only* private individuals can be held liable for war crimes. When the Southern District of Florida entered its judgment, the Eleventh Circuit made no distinction between corporations and individuals as far as non-state liability under differing claims under the ATS is concerned, and still doesn't. *See e.g. Romero v. Drummond*, 532 F.3d 1303 (11th Cir. 2008) (discussing corporate liability, but not separating out different violations of international law for different treatment). The rule Third Parties announce is found nowhere in the law of any circuit.

The Third Parties' last gasp – an attempt to equate the claims in this matter to the failed claims in *Sosa v. Alvarez-Machain*, 542 U.S. 692, 124 S. Ct. 2739 (2004) – is beyond strained. *Sosa* involved the illegal detention and transfer to U.S. officials of a fugitive. The *Sosa* Court's holding was very specific:

> that a single illegal detention of less than a day, followed by the transfer of custody
> to lawful authorities and a prompt arraignment, violates no norm of customary
> international law so well defined as to support the creation of a federal remedy.

*Sosa*, 542 U.S. at 738, 124 S. Ct. at 2769.  The facts in this case bear little resemblance to a detention for less than a day followed by the transfer of custody to lawful authorities.  This matter concerned the hostage taking, international trafficking and ransom of the Plaintiff, with months of torture by a quasi-state actor and combatant in a war zone.  The Alien Tort Statute provided subject matter jurisdiction when the judgment was entered, and would provide it if the suit were brought today.

The Complaint also alleged subject matter jurisdiction pursuant to an international RICO conspiracy under which the FARC and ELN controlled territory in Colombia and Venezuela through a campaign of terror[3] on citizens there that included the mass international hostage taking and trafficking in persons that the Plaintiff suffered; produced narcotics in the territory controlled through this terror campaign; and trafficked the narcotics internationally.  The Complaint alleged that the Defendants

> 4.      … cooperat[ed] in the kidnapping, and torture perpetrated on plaintiff as
> alleged herein, as well as the international trafficking of narcotics, each of which
> activity supports the other.

This conspiracy thus met both "conduct" and "effects" tests in effect in the Southern District of Florida at the time the judgment was entered.  *See Rodriguez Licea v. Curacao Drydock Co.*, 584 F.Supp. 1355, 1359 (S.D.Fla. 2008).  Here, the effects on the United States of the FARC's and ELN's kidnapping, was to support the international drug trafficking to the United States

---

[3] The Complaint cited the U.S. Department of State report that stated that "ELN and FARC have committed the following human rights abuses:  political killings; kidnappings and forced disappearances; massive forced displacements . . ." and more.  Ex. E.  (*Doe v. Ejercito de Liberacion Nacional, et al.*, 10-cv-2157, Huck, J.). (D.E. 1 at p. 4).

market. Where the goal of the conspiracy is to reach the U.S. market, the conspiracy has an effect on the U.S. for purposed of RICO jurisdiction. *Id*. Further, as alleged, each activity supports the other; the FARC and ELN operated an international criminal organization with a presence in the United States that funded their campaign of terror, part of which was Plaintiff's kidnapping. These facts were sufficient for an alternative finding of RICO jurisdiction[4].

5. **This Court Should Be Particularly Wary About Granting Third-Parties' Requested Relief As It Is Not The Court That Rendered The Judgment And The Rendering Court Already Twice Refused Similar Requests By Third-Parties.**

As Third-Parties reluctantly admit, the rendering Court, the Southern District of Florida, already twice refused to grant their requested relief. *See* (D.E. 80 at 17-19). These refusals should make this Court particularly wary about granting the relief here. Third-Parties could have filed this same motion in the Southern District of Florida (though it would overlap with their prior failed efforts). Nevertheless, having been twice-burned, Third-Parties seem to be, in some respects, forum shopping in the hopes they will be rewarded with a different ruling. While the Second Circuit is in the minority of circuits permitting Rule 60(b) motions in the district where a judgment is simply registered, the exercise of that jurisdiction is not mandatory and is often deferred. *See Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir. 2000). "The rendering court is almost always better able to resolve such a motion,

---

[4] Third Parties erroneously cite to *Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010) for the now-abrogated holding that "it is well settled that civil RICO … has no extraterritorial application." Mot. To Vacate at 15-16. In fact, the Second Circuit, in light of *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010), clarified that such reading of *Norex* is incorrect, and that the test is whether liability or guilt could attach to extraterritorial conduct under the RICO predicate acts. *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 136 (2d Cir. 2014). Here, the Plaintiff claimed, *inter alia*, that the Defendants are part of a conspiracy that employs terror, including kidnapping of civilians (including Americans), and international drug trafficking, including trafficking of drugs to the United States. Guilt can attach to these predicate acts, as evidenced by the many U.S. prosecutions of FARC and FARC commanders in this conspiracy for actions they took overseas. *See e.g.* U.S. v. FARC, 1:04-cr-00232 in the United States District Court for the District of Columbia. This court would have subject matter jurisdiction for the civil RICO claim if brought today in New York, just as the Southern District of Florida had subject matter jurisdiction when it entered judgment.

as that court will be more familiar with the facts of the case and more conversant with the applicable law." *Segal v. Transworld Airlines, Inc.*, 63 F.Supp.2d 373, 380 (S.D.N.Y. 1999) (citation omitted). Prudence and comity dictate similar caution here, particularly in the face of Third-Parties' two prior failed attempts at the same relief in the Southern District of Florida.

## CONCLUSION

Third-Parties attempt to bring a motion that they do not have standing to bring, in the wrong court, after having lost it twice before, while ignoring the standing of review, and based upon a misreading of the law. Each of these five flaws independently warrants denial of the motion. Taken together, they mandate denial.

Dated this 14th day of January, 2016.

Respectfully submitted,

/s/Brett E. von Borke
Brett E. von Borke
S.D.N.Y. Bar Code: bb4480
vonborke@bucknermiles.com
**BUCKNER + MILES**
2811 SW 3rd Avenue
Miami, FL 33129
Telephone No.: 305-964-8003
Facsimile: 786.523.0485

*Counsel for Plaintiff/Judgment Creditor*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of the Court via the CM/ECF system on this 14th day of January, 2016, and all parties that have entered their appearances in this action will receive notice thereby and may access the filing through the Court's CM/ECF system.

/s/Brett E. von Borke
Brett E. von Borke
vonborke@bucknermiles.com