UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

JOHN DOE,                                              Case No. 1:15-cv-08652 (LTS)

                 Petitioner/Judgment Creditor,

        -against-

EJERCITO DE LIBERACION NACIONAL,
a/k/a ELN, a/k/a National Liberation Army,
and FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
a/k/a FARC, a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA,

              Defendants/Judgment Debtors,

        -and-

JPMORGAN CHASE BANK, N.A.,                            UPDATED PRE-CONFERENCE
                                                     <u>STATEMENT</u>
              Respondent.
——————————————————————————

JPMORGAN CHASE BANK, N.A.,

            Third-Party Petitioner,

        -against-

KEITH STANSELL, MARC GONSALVES,
THOMAS HOWES, JUDITH G. JANIS,
CHRISTOPHER T. JANIS, GREER C. JANIS,
MICHAEL J. JANIS, JONATHAN N. JANIS,
ANTONIO CABALLERO, KASSIM TAJEDDINE,
METOPOLITAN LIFE INSURANCE COMPANY,
GRAND STORES LTD., TRUST BANK LTD.,
CREDIT SUISSE AG, TAJCO a/k/a TAJCO LTD.,
ARAB GAMBIAN ISLAMIC BANK LTD.,
and AHLI UNITED BANK UK PLC,

            Third-Party Respondents.
——————————————————————————

As directed by the Court at the conference held on December 15, 2015, and as set forth in the Court's Minute Entry entered the next day, the parties hereby file this Updated Pre-Conference Statement and state as follows:

a.      Developments Since the Time of the December 15, 2015 Conference

Since the time of the December 15, 2015 conference, there have been the following developments in the case:

1.      Petitioner John Doe ("Doe") filed a turnover petition seeking certain blocked wires held by Deutsche Bank Trust Company, Americas ("DBTCA").  Although DBTCA has not yet been formally served with the petition or appeared in the case, its counsel has communicated to the existing parties that it expects to assert interpleader claims in the case following service.

2.      Third-party claimant Kassim Tajideen ("Tajideen") filed his reply in support of his motion to strike Doe's expert affidavit as a violation of *Daubert*, restrictions on post-government employment, and use of non-public Department of Justice information.

3.      Doe requested the issuance of summons to various third-party respondents in the pending interpleader action brought by respondent/third-party petitioner JPMorgan Chase Bank, N.A. ("JPMCB").

4.      JPMCB filed a letter motion, which the Court granted, for an extension of time to deposit the blocked funds at issue into the Court's registry.  That request stemmed mainly from concerns, discussed further below, expressed by the United States Attorney's Office for the Southern District of New York and the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department regarding the directive to pay the blocked funds at issue into the registry.

5.      Third-party respondents Keith Stansell et al. (the "Stansells") filed an answer to JPMCB's interpleader petition following the Court's denial of the Stansells' transfer motion, including a counterclaim seeking the turnover of the blocked accounts being held by the bank. JPMCB will shortly be filing a reply to the Stansells' counterclaim.  Tajideen and Grupo likewise will file a responsive brief, seeking among other things to dismiss the counterclaim for turnover of assets.

6.      The Stansells moved under Fed. R. Civ. P. 60(b)(4) to vacate, for lack of subject matter jurisdiction, Doe's judgment against, among others, the Revolutionary Armed Forces of Colombia (the "FARC").

7.      JPMCB filed proofs of service on third-party respondents Trust Bank Ltd., Arab Gambian Islamic Bank Ltd., Grand Stores Ltd. ("Grand Stores"), Tajco Ltd. ("Tajco") and Antonio Caballero ("Caballero").

8.      As of the time of this statement, JPMCB, third-party respondent American Life Insurance Company, Lebanon Branch ("Alico Lebanon," mistakenly pleaded as Metropolitan Life Insurance Company ("MetLife")), and MetLife are still discussing the language of a proposed stipulation and order that will substitute Alico Lebanon for MetLife as a third-party respondent and amend the caption accordingly.  That stipulation, once finalized, will be submitted to the Court to be so-ordered.

9.      Third-party claimant Grupo Arosfran Empreendimentos E Participacoes SARL ("Grupo"), which owns the assets held at DBTCA, filed its opposition to Doe's petition for turnover directed at DBTCA and moved to dismiss the petition or, in the alternative, requested a trial as required under N.Y. C.P.L.R. §§ 5225, 5239.

As the Court is presumably already aware, another recent development of relevance to this case is the decision by Judge D'Agostino of the Northern District of New York, in *John Doe v. Ejercito de Liberacion Nacional, et al.*, No. 15-mc-000023 (N.D.N.Y.) (the "NDNY Proceeding"), denying the Stansells' motion to transfer to the Northern District of Illinois the interpleader action brought in the NDNY Proceeding by The Bank of New York Mellon ("BNY Mellon").  That decision bears on the question, discussed below, of the extent to which the NDNY Proceeding and this proceeding should be consolidated or coordinated to avoid what will otherwise be duplicative litigation on issues common to both cases.

b.      Specific Questions Posed by the Court at the December 15 Conference

At the December 15 conference, the Court posed the following three questions: (i) whether the motion by third-party respondent Tajideen to strike Doe's expert report is moot; (ii) whether the Stansells will intervene in the case; and (iii) whether there will be discovery in the case.

As to the first question, the answer is now "no," in part because Doe's turnover proceeding action against DBTCA encompasses blocked wire transfers to which Grupo, an entity wholly owned by Tajideen, is a party.  Whether Grupo is an agency or instrumentality of the FARC is now an issue that the Court will need to resolve, and that issue, in turn, implicates the question of whether Doe's expert report should be stricken.

As the second question, the Stansells, as noted, have now fully appeared in the case, having filed an answer to JPMCB's interpleader petition and a counterclaim for turnover based upon the execution process they initiated in the Northern District of Illinois.

As to the third question, the answer is that some parties intend to seek discovery, but other parties contend that the discovery they seek is unnecessary or otherwise improper.  The

Stansells and Doe have said that they intend to seek discovery (i) on the issue of who owns the funds in the blocked wire transfer accounts held by JPMCB and DBTCA, an issue whose answer will determine whether the funds are subject to execution, under the Terrorism Risk Insurance Act of 2002 ("TRIA"), under the Second Circuit's decisions in *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014), and *Hausler v. JP Morgan JPMCB Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014); and (ii) of Tajideen, Grupo, Ovlas Trading, S.A. ("Ovlas") (another company wholly owned by Tajideen and a third-party respondent in BNY Mellon's interpleader action in the NDNY) and the banks concerning the alleged relations of Tajideen, Grupo, and Ovlas (the "Tajideen parties") with Hezbollah and the FARC, the Tajideen parties' filings and submissions to OFAC and OFAC's responses thereto, the operations of their alleged "Hezbollah cover" companies in Africa, and Hezbollah's alleged narcotics trafficking and money-laundering relations with the FARC and any role that the Tajideen parties play in such activities.  The Stansells and Doe also intend to conduct discovery regarding all the same issues with respect to Tajco and Grand Stores, and on the separate issue of whether Tajideen or Alico Lebanon has the greater ownership interest in the funds in the two blocked deposit accounts at JPMCB that are subjects of JPMCB's interpleader action.

The banks reserve the right to oppose any discovery of them on any grounds, including the ground that discovery is unnecessary in light of information produced to the Stansells or Doe in prior proceedings.  Tajideen, Ovlas, and Grupo likewise reserve the right to oppose any discovery of them on any grounds, including the ground that the Stansells' and Doe's respective motions for turnover fail as a matter of law on the face of the motions, even assuming (merely for purposes of denying the turnover motions before discovery) the truth of the allegations therein.

c.     Upcoming Motions or Other Requests for Judicial Determinations

Independent of rulings on the motions already pending, there are at least three other judicial rulings that the parties will soon be seeking.  The most immediate such ruling – which may be sought by motion or by a less formal means, depending on what this Court and the NDNY believe is most appropriate – will be on whether the NDNY Proceeding and this proceeding should be consolidated in this Court.  All parties support – or, in the case of the Stansells, do not object to – such a consolidation of the two proceedings in this Court.[1] Consolidation is appropriate because the two courts cannot both rule on the various issues that are common to both actions.  Those issues include:  (i) whether the blocked wire transfers held by the banks are, as a matter of law, subject to execution under *Calderon-Cardona* and *Hausler*; (ii) whether Tajideen, Ovlas and Grupo are agencies or instrumentalities of the FARC; (iii) whether Doe's judgment against the FARC is valid and enforceable, an issue raised not only in the Stansells' Rule 60(b)(4) motion in this Court, but also in an identical motion made on January 1, 2016 in the NDNY Proceeding; (iv) whether Doe, if his judgment against the FARC is held to be valid, or the Stansells have priority for TRIA judgment enforcement purposes; (v) whether Caballero, named as a third-party respondent both in JPMCB's interpleader action and in BNY Mellon's interpleader action in the NDNY Proceeding, should be held in default and thereby be bound by any discharge of the banks that will go into effect as part of any turnover judgment that may later be entered; and (vi) whether the parties' respective expert reports meet the Daubert requirements.

---

[1]     The Stansells do, however, continue to take the position that their action in the Northern District of Illinois should not be transferred to this Court or to the NDNY even though both New York courts have now denied the Stansells' motions to transfer the interpleader proceedings in those courts to Illinois.  All other parties to this proceeding believe that the Stansells' position is baseless for all the reasons why duplicative litigation is to be avoided.  As of the time of this statement, the Northern District of Illinois has yet to rule on the pending motions by JPMCB, BNY Mellon, DBTCA and the Tajideen parties to transfer the Stansells' Illinois action to this Court or, as to BNY Mellon, to the NDNY.

Second, there remains the question of whether the Government – as well as the parties, including not only JPMCB but also Alico Lebanon, Tajideen and Grupo – will ask the Court to reverse its directive to have the blocked funds at issue deposited with the SDNY registry.  The same issue is now present in the NDNY, since Judge D'Agostino also directed that BNY Mellon deposit the blocked funds at issue there into the NDNY registry.  Both OFAC and the U.S. Attorney's Office are aware of the NDNY's directive and, as of the time of this statement, are still actively considering their options, as the U.S. Attorney's Office recently expressed to JPMCB's counsel.  JPMCB expects to request another extension of its deadline for the deposit of the blocked funds into the SDNY registry, and BNY Mellon expects to seek an extension of its deadline to deposit into the NDNY registry the blocked funds that it is holding.

Third, JPMCB, as implied above, will also be moving shortly to hold Caballero in default.  Although Caballero has conceded that he lacks priority vis-à-vis either Doe or the Stansells, and although he has declined to answer either JPMCB's or BNY Mellon's interpleader petitions, he has nonetheless submitted letters to the magistrate judge in each action reserving his rights as to all of the blocked accounts held by the banks in this proceeding and the NDNY Proceeding.  JPMCB and BNY Mellon will accordingly seek to hold Caballero in default to remove any conceivable impediment to their ability to obtain, to the extent ultimately necessary, a discharge fully binding on Caballero.

d.      The Parties' Respective Positions on the Sequencing of Matters Before the Court

1.      Doe's position:  The Court should first address the question of consolidation between this action and the NDNY Proceeding.

Generally, the Court should allow Doe to prosecute his executions pursuant the TRIA and employing New York State execution procedure unless and until an order from another court that

orders the garnishees to relinquish those assets is presented to it, assuming of course that such order comes from a court whose judgments are afforded full faith and credit by this court. As this Court has held, the Stansells have not presented it with any superior lien to which there is any cause to defer.

If such order is presented to it, this Court should discharge the financial institutions. The arguments concerning the Northern District's lack of jurisdiction made in this action thus far by the banks and Doe should not be considered.

Should the Northern District of Illinois dismiss the Stansells' action for lack of jurisdiction over the New York accounts, then this Court should consider the effect of such order immediately.

Should the Northern District of Illinois transfer the Stansells' action to this Court or its sister Court in the NDNY without first having determined the issue of jurisdiction of Illinois courts over a New York bank account, then the New York court(s), as a threshold issue, will need to determine whether the Northern District of Illinois has jurisdiction over bank accounts located in New York.

If, and only if, this Court determines that the Northern District of Illinois does have jurisdiction over the New York bank accounts, then this court should determine whether the Stansells or Doe has priority.

Should the Northern District of Illinois neither dismiss its action nor transfer it here, then this Court should allow Doe's execution to proceed apace here, and judge the counterclaims the Stansells filed in this action on their merits, considering questions such as whether they are in fact prosecuting any execution according to New York execution process and procedure. If it is determined that they have properly intervened and are prosecuting an execution pursuant to New

8

York procedure, then this Court should consider the issue of priority of the Stansells' New York process versus Doe's.

The Court should at the appropriate time consider the Stansells' collateral attacks on Does's judgment, starting with the question of whether they have any standing to make them.

This court should allow fact discovery on the central questions of agency and instrumentality, as well as any affirmative defenses, including those concerning the bank accounts, to proceed without delay.

This court should consider any motions to dismiss according to regular motion practice. Affirmative defenses should be considered in regular course, i.e., as they are brought up in any summary judgment motions, or at trial.

This court should consider the motion to strike the expert witness at an appropriate time prior to trial, as it is determining the admissibility of evidence and qualifications of witnesses generally.

2.      The Stansells' Position:  The Court should first complete briefing and then rule on the pending motion to vacate Doe's judgment as void for lack of subject matter jurisdiction.  If Doe's judgment is void, then Doe need not incur additional time and expense of protracted litigation, Daubert motions and expert discovery.  This will also avoid wasting valuable judicial resources addressing future Doe-related motions that become moot if his judgment is void.

If Doe's judgment is not vacated, then the Court should next inform the competing TRIA judgment creditors, Doe and the Stansells, how it will determine the issue of priority between them, and who has such priority, so that the subordinate creditor does not waste time and money with fruitless protracted litigation, Daubert motions and expert discovery.  This will also avoid

wasting valuable judicial resources addressing future motions from a judgment creditor who then is later determined to have subordinate status and therefore no claim.

Thereafter, the Court should determine the status of the banks' motions to transfer or dismiss the Stansells' NDIL proceedings, so that the remaining claims can be transferred and consolidated before one court, including deposit of any blocked funds for all statutory interpleader actions of JPMCB, BNY Mellon and DBTCA.

After all the interpleader proceedings are before one court, then that court should proceed to determine the initial threshold issue of whether the blocked assets – including the blocked wire transfer, held by JPMCB, that may have been originated by Tajco; the blocked wire transfers, held by DBTCA and BNY Mellon, originated by Grupo and Ovlas; and the two blocked deposit accounts at JPMCB in which Tajideen and Alico Lebanon have an interest – are subject to execution under TRIA.  The Stansells will require discovery from the banks, the Tajideen parties and Alico Lebanon concerning ownership of these funds.  If after discovery and further briefing the Court determines that none of these blocked assets are subject to TRIA, then the parties and the Court need not engage in discovery and litigation of the remaining disputed issues of whether any of the SDGTs (Specially Designated Global Terrorists) at issue are an agency or instrumentality of the FARC.  Unlike the agency or instrumentality issues, deciding the fact and legal issues of ownership of the blocked wire transfers and insurance policy cash value (the two blocked deposit accounts) first will not require costly expert witness discovery, or an evidentiary hearing or bench trial.

For the final phase, if any of the blocked assets are determined to be subject to execution under TRIA, then the Court should next determine whether under the law of the case doctrine it will adopt the Eleventh Circuit's standard for determining "agency or instrumentality of the

FARC," and if not, provide the parties with advance notice so that they can properly prepare without prejudice.  Upon completion of discovery, the Court can then determine whether there remains a triable issue of fact on the agency or instrumentality question, and if so, schedule the appropriate hearing or trial.

       3.    <u>All Other Parties' Position</u>:  All other parties believe that the Court should first address the question, whether presented by motion or some other means, of whether the NDNY Proceeding should be consolidated with this proceeding, or otherwise how a mechanism for coordination between the two Courts should be established to avoid duplicative litigation of issues and motions common to both actions.  Consolidation or coordination need not await the decision by the Northern District of Illinois on the pending transfer motions in that court.  Judge Feinerman is aware of the decisions of this Court and the NDNY denying the Stansells' two transfer motions, and is also aware that all parties to this and the NDNY Proceedings, besides the Stansells, will be seeking to consolidate the two actions.  The parties do not purport to presume how the Northern District of Illinois will rule, but it is impossible for the Stansells' Illinois action to continue in that court without giving rise to the pitfalls of duplicative litigation:  the added imposition on judicial resources, undue expense to the parties, and the risk of inconsistent rulings, including rulings that could expose the banks holding blocked assets to duplicative liability as to the blocked funds each bank holds.

       While the subject of consolidation is being addressed, the subject of the judicial directives to deposit the blocked funds at issue into the SDNY and NDNY registries should also be addressed.  Although the parties cannot control whether and, if so, when and how the Government will express its position on those directives, the banks can and will ensure that the

blocked funds at issue remain in place.  Those funds are not subject to any risk of being dissipated.

Once the SDNY and NDNY Proceedings have been consolidated, or a system of coordination has been put in place, then the next issues that should be resolved are (i) whether Caballero, upon joint motions by JPMCB and BNY Mellon, should be held in default; and (ii) whether Tajideen, Ovlas, and Grupo are agencies or instrumentalities of the FARC.   As to the latter issue, the first step to resolving the issue should proceed without any costly and burdensome discovery and should decide the question, as a matter of law, whether – even assuming the truth of the allegations in the turnover motions – Tajideen, Ovlas, and Grupo could be found to be agencies or instrumentalities of the FARC under the "plain meaning" of those terms, as required by Second Circuit law.  If, even assuming the truth of the allegations, the Court were to find as a matter of law that Tajideen, Ovlas, and Grupo could not possibly be agencies or instrumentalities based on the face of the pleadings, that finding would be dispositive and would resolve in an efficient manner the vast majority of this case.  All of the blocked wire transfer accounts held by DBTCA, the two blocked deposit accounts held by JPMCB, and the one blocked wire transfer account held by BNY Mellon would not be subject to turnover because the funds in the accounts would not, under any reading of the law, be an asset of a FARC agency or instrumentality.  Under this scenario, Tajideen, Ovlas, Grupo and Alico Lebanon would have no further stake in the case, since the only remaining accounts in dispute would be the blocked wire transfer accounts at JPMCB involving Tajco and Grand Stores, neither of which has appeared in JPMCB's interpleader action.

Following the Court's determination of whether Tajideen, Ovlas, and Grupo are FARC agencies or instrumentalities, the parties could then brief the question of whether the two blocked

wire transfer accounts that remain subjects of turnover claims – one involving Tajco, the other involving Grand Stores – are subject to execution under the Second Circuit's decisions in *Calderon-Cardona* and *Hausler*, under which a blocked wire transfer is subject to attachment "only where either the state itself or any agency or instrumentality thereof (such as a state-owned financial institution) transmitted the EFT [i.e., wire transfer] directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona*, 770 F.3d at 999; *see also Hausler*, 770 F.3d at 212 ("EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank").  The banks respectfully submit that this is a threshold question that should be decided early in the proceeding, before a determination on the alleged invalidity of Doe's judgment or on priority as between Doe and the Stansells, because it will dispose of all claims against DBTCA and BNY Mellon and two of the four claims against JPMCB, and obviate the need for further litigation of those claims.

After the preceding issues are resolved, and only in the event Tajideen, Ovlas and Grupo were held to be agencies or instrumentalities of the FARC, then the Court could resolve, to the extent still necessary, the issues of whether Doe's judgment against the FARC is invalid and, if not, whether Doe or the Stansells have priority for TRIA judgment enforcement purposes.

As to DBTCA's expected interpleader action, it can proceed, in all likelihood without the need for judicial intervention, while the various issues and motions described above are being addressed.  To the extent an issue arises in the action that requires a ruling by the Court, that issue can be addressed at that time.

Dated:   January 15, 2016

DO CAMPO & THORNTON, P.A.

By: _/s/ *Orlando do Campo*
          Orlando do Campo
100 S.E. 2nd Street, Ste. 2700
Miami, Florida 33131
(305) 358-6600
(305) 358-6601 (facsimile)
od@dandtlaw.com
New York Bar No.: 2711232
*Attorneys for Petitioner John Doe*


LEVI LUBARSKY FEIGENBAUM & WEISS LLP

By: _/s/ *Steven B. Feigenbaum*
          Steven B. Feigenbaum
655 Third Avenue, 27th Floor
New York, New York 10017
(212) 308-6100
(212) 308-8830 (facsimile)
sfeigenbaum@llfwlaw.com
*Attorneys for Respondent/Third-Party Petitioner*
*JPMorgan Chase Bank, N.A.*


McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP

By: _/s/ *Randi F. Knepper*
          Randi F. Knepper
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
*Attorneys for Third Party Respondent,*
*American Life Insurance Company—Lebanon Branch*
*incorrectly pleaded as "Metropolitan Life Insurance Company"*

WILMER CUTLER PICKERING HALE AND
DORR LLP

By:   /s/ *David W. Bowker*
      David W. Bowker
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 663-6558
(202) 663-6363 (facsimile)
David.Bowker@wilmerhale.com
New York Bar No. 4200184
*Attorneys for Third-Party Respondent*
*Kassim Tajideen*


PORTER & KORVICK, P.A.

By: */s/ Tony Korvick*
      Tony Korvick
9655 South Dixie Highway Suite 208
Miami, Florida 33156
(305) 373-5040
(305) 668-9154 (facsimile)
tkorvick@porterandkorvick.com
*Attorneys for Third-Party Respondents*
*Keith S. Stansell, Marc Gonsalves,*
*Thomas Howes, Judith G. Janis,*
*Christopher T. Janis, Greer C. Janis,*
*Michael J. Janis and Jonathan J. Janis*