IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

JOHN DOE,
    Petitioner/Judgment Creditor          Case No.: 15 CV 8652-LTS
                                                      Judge Laura Taylor Swain

EJERCITO DE LIBERACION NACIONAL ("ELN"),
et al.,
    Defendants/Judgment Debtors
and

JPMORGAN CHASE BANK, N.A., and
    Respondent,
_____
JPMORGAN CHASE BANK, N.A
    Third-Party Petitioner,
v.

KEITH STANSELL, et al.,
    Third Party Respondents.
_____

**THIRD PARTY RESPONDENTS' REPLY AND WITHDRAWAL OF
MOTION TO VACATE JOHN DOE'S DEFAULT JUDGMENT AS VOID FOR
<u>LACK OF SUBJECT MATTER JURISDICTION</u>**

    Third Party Respondents Keith Stansell, Marc Gonsalves, Thomas Howes, Judith Janis, Christopher Janis, Greer Janis, Michael Janis and Jonathan Janis ("Stansell Respondents"), hereby reply and **withdraw their motion to vacate** [DE 79-80] Petitioner John Doe's Judgment against the two designated Foreign Terrorist Organizations "ELN" and "FARC" for lack of subject matter jurisdiction for his Alien Tort Statute ("ATS") and Civil RICO claims.

    The Stansell Respondents withdraw their motion *solely on the basis of standing* due to the newly discovered December 28, 2015 Second Circuit decision in *Baker v. Gates*, --- Fed.Appx. ---, 2015 WL 9461824 (2d Cir. 2015). The Second Circuit in *Baker* noted that although it had previously allowed non-parties "sufficiently connected and identified with the suit" to challenge judgments under Rule 60(b), it went on to distinguish the limited fact patterns

in those prior cases.  *Id*. at * 2.   Here, the Stansell Respondents are parties to the same interpleader with John Doe.  Nevertheless, in *Baker v Gates*, like the parties here, the Gates plaintiffs were judgment creditors competing with the Baker plaintiffs judgment creditors for the same blocked assets as parties in the same interpleader action.  The Court ruled that it need not reach the merits because the Gates Plaintiffs lacked standing to bring the Rule 60(b) motion.  *Id*.

Notwithstanding the Second Circuit's ruling in *Baker v Gates*, the Stansell Respondents' rights under their Anti-Terrorism Act judgment, and those of the judgment debtor asset owners [Kassim Tajeddine, Grupo Arosfran, and Tajco a/k/a Grand Stores], will be directly and adversely impacted if this Court does not review the merits of the subject matter jurisdiction issues, which were never briefed, discussed or ruled upon prior to entry of John Doe's default judgment, and have never been discussed or ruled upon by the rendering court.  Judge Huck did enter two Orders in the John Doe SDFL proceedings denying Stansell Respondents' motions to intervene, **but his Orders never mention, nor did they ever decide, the merits of the subject matter jurisdiction defects underlying Doe's ATS/RICO claims**.

The Stansell Respondents therefore respectfully note that the Court has the authority and obligation to *sua sponte* review the subject matter jurisdiction defects underlying John Doe's final default judgment prior to entering any final turnover order in this case.   It is well settled that a court may raise the issue of subject matter jurisdiction at any time, *sua sponte*. *See McLearn v. Cowen & Co.*, 660 F.2d 845, 849 (2d Cir. 1981), *citing Clerk v. Paul Gray, Inc*., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *Walters v. Indus. & Commercial Bank of China, Ltd*., 651 F.3d 280, 290--94 (2d Cir. 2011)("If a court may consider an issue on its own motion, it does not matter what triggers the court's inquiry. The court may consider the issue once it is suggested by any party -- or for that matter, non-party .... ").

John Doe's judgment can be contested in a collateral proceeding. When a judgment is challenged for lack of subject matter jurisdiction in an enforcement proceeding, the enforcing court has the inherent power to void the judgment, whether the judgment was issued by a tribunal within the enforcing court's domain or by a court of a foreign jurisdiction. *See Covington Industries, Inc. v. Resintex A.G.,* 629 F.2d 730, 732 (2d Cir. 1980). When, like here, a rendering court enters a *default* judgment, the registering court "seems as qualified [as the rendering court] to determine the jurisdiction of the rendering court, particularly when the latter is a federal court of coordinate authority." *Id.* at 733. The Second Circuit noted that this position was in accord with Professor Moore's view: "since by registering the judgment in a particular forum the creditor seeks to utilize the enforcement machinery of that district court it is not unreasonable to hold that the latter court has the power to determine whether relief should be granted the judgment debtor under [Rule] 60(b)." *Id.* at 734 (quoting 7 *Moore's Federal Practice* § 60.28(1), at 391-92 (2d ed. 1979)).

John Doe argues that the U.S. Supreme Court decision in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S.Ct. 1659, 1669 (2013) was issued after his default judgment was entered in 2012. But Doe fails to inform this Court that long before the *Kiobel* decision, federal courts applied a presumption against extraterritorial application of federal statutes, including the Civil RICO statute. And Doe fails to note that the "state action" requirement underlying ATS claims – which are impossible to satisfy here because FTOs cannot and did not act under color of Colombian law – also long predated the *Kiobel* decision.

The Supreme Court in *Kiobel* relied on "a canon of statutory interpretation known as the presumption against extraterritorial application." *Kiobel* at 1664 ("That canon provides that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none,"

3

*Morrison v. National Australia Bank Ltd.,* 561 U.S. 247, ——, 130 S.Ct. 2869, 2878, 177 L.Ed.2d 535 (2010), and reflects the "presumption that United States law governs domestically but does not rule the world," *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454, 127 S.Ct. 1746, 167 L.Ed.2d 737 (2007)." *Id*. This canon of statutory interpretation was well settled long before John Doe's 2012 judgment was entered.[1]

The ATS requirements of state action, or the recognition of "war crimes" ***against individuals*** only, also predates John Doe's judgment and the *Kiobel* decision. *See Estate of Amergi v. The Palestinian Authority*, 611 F. 3d 1350, 1356-57 (11th Cir. 2010)(ATS confers limited jurisdiction over a civil action by an alien for torts committed under color of law of a foreign nation), *citing, Sinaltrainal v. Coca-Cola Company*, 578 F.3d 1252, 1265 (11th Cir. 2009). The ATS also confers subject matter jurisdiction for torts ***against individuals*** for claims "such as torture or murder committed in the course of war crimes … regardless of whether the perpetrator acted under color of law of a foreign nation." *Id*. at 1267. Allegations of torture and rape perpetrated by non-state actors in periods of civil unrest in foreign countries are expressly rejected under the ATS. *Id*.

There is no "arguable basis" for subject matter jurisdiction over Doe's ATS or RICO claims. John Doe's Complaint admits that both the ELN and FARC "operate outside the authority of the Colombian state", and therefore as a matter of law his Complaint and resulting judgment lack the 'state action' requisite to establish a violation of the law of nations needed for subject matter jurisdiction over his Alien Tort Statute ("ATS") claim.

---

[1] Congress expressly provided for extraterritorial application of the statutes allowing US nationals to bring claims against state sponsors of terrorism under FSIA (28 USC §1605A), or against terrorists and terrorist organizations under the Anti-Terrorism Act (18 USC § 2333 et seq.). But John Doe was not a US national at the time he was kidnapped, tortured and held captive, therefore he is barred from relief under FSIA or the ATA, and instead brought suit under the ATS and Civil RICO, neither of which provide for extraterritorial application.

It is undisputed that the FARC and ELN are FTOs which have been adversaries of the Republic of Colombia for decades. No court has ever held that an FTO is capable of official state action, or that an FTO can act under color of state law. *See Morris v. Khadr*, 415 F. Supp. 2d 1323, 1333 (D.C. UT 2006)(terrorist organization is not a foreign state or agency of a foreign state). State action means "there [exists] a symbiotic relationship between [that] private actor and the government." *See Baloco v. Drummond Co., Inc.*, 640 F.3d 1338, 1346 (11th Cir. 2011), *citing, Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1316-17 (11th Cir. 2008). Because the FARC and ELN are terrorist organizations and not nations or states, neither the FARC not the ELN can satisfy the "government" symbiosis required for state action under the ATS.[2] There simply is no arguable basis for jurisdiction here.

There is also no arguable basis for subject matter jurisdiction over John Doe's civil RICO claim in Count III of his Complaint because it is well settled that civil RICO, 18 U.S.C. § 1961-1962, has no extraterritorial application. *See Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010)(RICO did not have extraterritorial application even if some domestic

---

[2] After admitting that the FARC and ELN "operate outside the authority of the Colombian state", John Doe's Complaint later alleges that the terrorist acts were "inflicted under the color of law and/or under the color of official authority and/or in conspiracy on behalf of those acting under color of official authority". But this allegation is entirely devoid of any supporting facts, and are pure legal conclusions, contrary to the specific facts alleged in the Complaint, which fail to create subject matter jurisdiction under the ATS. *See Mamani v. Berzain*, 645 F.3d 1148, 1152-53 (11th Cir. 2011)(federal courts must require that an ATS claim define the violation with "specificity", *quoting, Sosa* at 694.) This "standard is a high one." *Id*. "High levels of generality will not do." *Mamani* at 1152 (reversing denial of motion to dismiss ATS claim and remanding with instructions to dismiss and demanding "Judicial restraint"). The Supreme Court has held that courts must ignore allegations that are mere legal conclusions and test the remaining factual allegations for plausibility. *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

conduct occurred in U.S.); *Norex Petroleum Ltd. v. Access Industries, Inc.*, 540 F.Supp.2d 438, 440-41 (S.D.N.Y. 2007)(issue of the extraterritorial application of a federal statute implicates federal question subject matter jurisdiction, rather than the failure to state a claim); *Bowoto v. Chevron Corp.*, 481 F.Supp.2d 1010 (N.D.Cal.2007)(same); *Doe I v. State of Israel*, 400 F.Supp.2d 86 (D.D.C.2005)(same); *Jose v. M/V Fir Grove*, 801 F.Supp. 349 (D.Or.1991)(same); *Nasser v. Andersen Worldwide Societe Co-op.*, 2003 WL 22179008 (S.D.N.Y.2003)(same); *U.S. v. Philip Morris USA, Inc.*, 783 F.Supp.2d 23 (D.D.C.2011)(same); *Cedeno v. Intech Group, Inc.*, 733 F.Supp.2d 471 (S.D.N.Y.2010)(same).

In determining whether the ATS confers on a federal court jurisdiction over a particular case, a district court must isolate the "relevant conduct" in a complaint. *Mustafa v. Chevron Corp.*, 770 F.3d. 170, 185 (2d Cir. 2014).  The relevant conduct here was the ELN's kidnapping of John Doe at a Venezuelan border crossing, his captivity and torture in Colombia, and his subsequent ransom payment and release by the FARC in Colombia.  John Doe's Complaint clearly alleges that this relevant conduct all occurred in Venezuela or Colombia and therefore cannot meet the "conduct test".  The Complaint also fails to allege any facts establishing that the kidnapping, captivity or torture had any direct effect in the U.S. and therefore fails the "effects test".  The fact that the FARC was also supplying cocaine to traffickers distributing in the U.S. does not create an "arguable basis" for meeting either the "effects test" or "conduct test" requirements for extraterritorial application of RICO.

For the foregoing reasons, the Stansell Judgment Creditors respectfully withdraw their motion to vacate.

Respectfully submitted January 19, 2016

/s/ Tony Korvick
Tony Korvick, Esq.
Newt Porter, Esq.
PORTER & KORVICK, P.A.
Attorneys for Stansell Respondents
9655 S. Dixie Highway, Suite 208
Miami, FL 33156
305-373-5040
tkorvick@porterandkorvick.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 19, 2016, I served the foregoing via First Class International Mail, or First Class U.S. Mail, to the following persons who are not believed to have received CM/ECF service upon filing:

NONE

By: */s/ Tony Korvick*
TONY KORVICK
PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208
Miami, Florida 33156
(305) 373-5040        (305) 668-9154 FAX
tkorvick@porterandkorvick.com