UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>        Petitioner/Judgment Creditor,<br><br>    v.<br><br>EJERCITO DE LIBERACION NACIONAL, a/k/a ELN, a/k/a National Liberation Army, and FUERZAS ARMADAS REVOLUCIONARIOS DE COLOMBIA, a/k/a FARC, a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA,<br><br>        Defendants/Judgment Debtors, and<br><br>GRUPO AROSFRAN EMPRE E PARTICIPACOES SARL A/K/A GRUPO AROFRAN A/K/A GRUPO AROSFRAN AND OTHER ALIASES; DEUTSCHE BANK TRUST COMPANY AMERICAS; STANDARD CHARTERED BANK, LTD; BANCO AFRICANO INVESTIMENTOS, SARL; and BANCO DE FOMENTO SARL, ANGOLA,<br><br>        Respondents. | 15–CV–08652–LTS–FM<br><br><br>**RESPONDENT DEUTSCHE BANK TRUST COMPANY AMERICAS' ANSWER TO PETITION FOR TURNOVER ORDER** |

## ANSWER TO PETITION

Respondent Deutsche Bank Trust Company Americas ("DBTCA"), by and through its undersigned counsel, upon personal knowledge as to its own acts and records and upon information and belief as to all other matters, alleges as follows for its Answer to Petitioner Judgment Creditor John Doe's Petitioner for Turnover Order (the "Petition") dated December 18, 2015 (ECF 69):

## INTRODUCTION

DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the "Introduction" to the Petition, except admits that a judgment has been entered in favor of Petitioner John Doe ("Doe" or "Petitioner") against Defendants and Judgment Debtors the Revolutionary Armed Forces of Colombia (the "FARC") and Ejercito De Liberacion Nacional ("ELN") (the "Judgment"), that the Judgment has been registered in this district, that a writ of execution was issued by this Court, and that Doe, by the Petition, seeks to collect on the Judgment.

## PARTIES

1.      DBTCA admits that Doe obtained the Judgment and respectfully refers the Court to the Judgment for the terms thereof.  DBTCA denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1.

2.      DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2.

3.      DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.

4.      DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4, except admits that Grupo Arosfran and various aliases thereof appear on the Specially Designated Nationals and Blocked Persons List ("SDN List") maintained by the Office of Foreign Assets Control of the United States Department of the Treasury.  DBTCA respectfully refers the Court to the SDN List for the relevant listings.

5.       DBTCA admits that it is a New York banking corporation with offices at 60 Wall Street, New York, New York. DBTCA further admits that it previously blocked four electronic funds transfers ("EFTs" or "wires") that were routed through DBTCA, as intermediary bank, pursuant to the sanctions regulations directed at specially designated global terrorists ("SDGT"), 31 C.F.R. §§ 594.310 et seq. (the "SDGT Sanctions") based on the apparent involvement of Grupo Arposfran Ernre Particacoe (a/k/a Grupo Arosfran a/k/a Grupo Arosfran Empreendimentos e Participacoes SARL a/k/a AROSFRAN SARL) (collectively, "Grupo") as the originator of the underlying wire transactions.   These four blocked funds transfers (the "Blocked Accounts") were initially held by DBTCA in accounts ending in 3-714, 3-749, 8-588 and 9-679.

By way of further response, DBTCA states that, under Second Circuit law, the only party with a property interest in the Blocked Accounts was the immediately preceding sending bank; neither the originator nor the beneficiary had a cognizable property interest in the EFTS.  *See Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014) and *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014).  DBTCA further states that the United States served DBTCA with (1) a seizure warrant directed at certain accounts that had been blocked by DBTCA under the SDGT Sanctions and (2) a license from the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury permitting the release of the accounts pursuant to the warrant.  As required by the seizure warrant and authorized by the OFAC license, these accounts—which include the Blocked Accounts—were surrendered to the United States and are no longer within DBTCA's possession, custody, or control.  DBTCA states, on information and belief, the

Blocked Accounts are among the assets currently being sought in *United States of America v. Three Sums Totaling $1,207,035.31 in Seized United States Currency*, 16–cv–00064 (D.D.C.), a forfeiture proceeding now pending in the United States District Court for the District of Columbia (the "Forfeiture Proceeding").

      6.     DBTCA admits the allegations of paragraph 6 upon information and belief.

      7.     DBTCA admits the allegations of paragraph 7 upon information and belief.

      8.     DBTCA admits the allegations of paragraph 8 upon information and belief.

## NON-PARTIES

      9.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 except admits that Hezbollah is a designated foreign terrorist organization.

      10.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10, except admits that an individual by the name of Kassim Tajideen appears on the SDN List as a Specially Designated Global Terrorist ("SDGT").

      11.     In response to paragraph 11, DBTCA (a) admits, as to each of the Blocked Accounts, that there were other potential downstream parties to the underlying EFT, (b) admits, to the extent a response to this legal conclusion is deemed necessary, that downstream parties do not have a property interest in the Blocked Accounts under applicable law, and (c) denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11.

**JURISDICTION**

12.     DBTCA admits the allegations of paragraph 12 except to the extent that they state legal conclusions to which no response is required.

13.     DBTCA denies the allegations in paragraph 13.

14.     DBTCA admits the allegations of paragraph 14 except to the extent that they state legal conclusions to which no response is required.

15.     Paragraph 15 states a legal conclusion to which no response is required. To the extent that a response is deemed necessary, DBTCA admits the allegations in paragraph 15 upon information and belief.

16.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the factual allegations in paragraph 16 and states that the remaining allegations of the paragraph consist of legal conclusions to which no response is required.

17.     Paragraph 17 states a legal conclusion to which no response is required. To the extent that a response is deemed necessary, DBTCA denies the allegations of Paragraph 17 and further avers, upon information and belief, that the Blocked Accounts have been seized by the United States Government and are the subject of a Forfeiture Proceeding in the United States District Court for the District of Columbia, making this an inappropriate forum in which to pursue a claim to the accounts.

**BASIS FOR TURNOVER ORDER**

18.     DBTCA admits, upon information and belief, that Petitioner obtained the Judgment and registered it in this Court on or about June 18, 2015. DBTCA respectfully refers the Court to the Judgment for the complete terms thereof.  DBTCA otherwise denies

knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18.

19.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.     DBTCA admits that on or around July 14, 2015 it was served a restraining notice by Petitioner and respectfully refers the Court to the restraining notice for the terms thereof.  DBTCA denies that the restraining notice applied to the Blocked Accounts.

21.     DBTCA admits that, on July 13, 2015 counsel for Petitioner emailed a copy of the restraining notice to counsel for DBTCA, asserting that DBTCA was required to serve various parties with notice and exemption forms.  DBTCA denies that this email constituted proper service and further denies that DBTCA was obliged to serve papers on any other party in response to Petitioner's formal or informal service efforts.  No such obligation existed because DBTCA did not possess assets of the FARC or its identified instrumentalities, including Grupo.  In addition, the provisions of the CPLR calling for service of such notices or exemption forms apply only where the party whose assets have been restrained is a natural person.  *See* CPLR 5222-a(a) (stating that 5222-a only applies to "a natural person's account at a banking institution); *cf. Cordius Trust v. Kummerfeld Associates, Inc.*, 658 F. Supp. 2d 512, 519 ("By the plain language of § 5222(e), corporate defendants, however, are not entitled to the benefit of the Notice to Judgment Debtor.").

22.     In response to paragraph 22, DBTCA denies that it served Grupo or the FARC with any notice or exemption forms by email and further states that it had no such obligation, as explained in response to paragraph 21.

– 6 –

23.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.

24.     DBTCA denies the allegations of paragraph 24 and respectfully refers the Court to Third-Party Claimant Grupo Arosfran Empreendimentos E Participacoes SARL's Opposition to Plaintiff's Petition for Turnover (ECF 89) (Jan. 7, 2016).

25.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26.     DBTCA admits, upon information and belief, that on August 21, 2015 the Clerk of the Court issued a writ of execution in favor of Petitioner in the amount of $16,800,000 for joint and several liability against the FARC (and the ELN), and $10,000,000.00 against the FARC individually.  DBTCA further responds that, upon information and belief, the Clerk of the Court voided this writ because it was returned by the United States Postal Service on October 27, 2015 due to insufficient postage.  *See* Aug. 21, 2015 ECF entry in this matter.

27.     DBTCA admits, upon information and belief, the allegations in paragraph 27.

28.     DBTCA admits the allegations in paragraph 28.

29.     DBTCA states that paragraph 29 consists of legal conclusions to which no response is required.  To the extent a response is deemed necessary, DBTCA denies that the Blocked Accounts are property of Grupo; denies that the Blocked Accounts are within its custody; denies generally that blocked EFTs in the possession of an intermediary bank are property of the originator; and incorporates by reference its response to Paragraph 5.

30.     DBTCA admits that it previously had in its custody four Blocked Accounts which bore account numbers ending in 3-714, 3-749, 8-588, and 9-679, and that these accounts were established to hold the proceeds of EFTs that were blocked by DBTCA pursuant to the sanctions regulations because of the apparent involvement of Grupo in the underlying wire transfers. DBTCA further responds by incorporating by reference the second paragraph of its response to paragraph 5.

31.     DBTCA admits that, as of May 18, 2015, Blocked Accounts ending 3-714, 3-749, and 8-588, contained $61,651.35, $39,914.01, and $489,022.30 respectively, and that, on information and belief, the underlying wire transfers involved Grupo as the originator, BAI as the originator's bank, and SCB as the intermediary bank. DBTCA further admits that the funds that were previously held in these Blocked Accounts were transferred to DBTCA, which blocked the underlying wire transfers in accordance with sanctions regulations. DBTCA further responds by incorporating by reference the second paragraph of its response to paragraph 5.

32.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.     DBTCA admits that, as of May 18, 2015, the Blocked Account ending 9-679 contained $8,813.81, and that, on information and belief, the underlying wire transfer involved Grupo, an alleged instrumentality of the FARC, as the originator, and BF as the originator's bank. DBTCA further admits that the funds that were previously held in this Blocked Account were transferred to DBTCA, which blocked the underlying wire transfer

in accordance with sanctions regulations. DBTCA further responds by incorporating by reference the second paragraph of its response to paragraph 5.

34.     Paragraph 34 states a legal conclusion to which no response is required. To the extent a response is required, DBTCA denies the allegations of paragraph 34, except admits that Grupo was the apparent originator of each blocked wire transaction.

35.     Paragraph 35 states a legal conclusion to which no response is required.  To the extent a response is required, DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35.

36.     Paragraph 36 states a legal conclusion to which no response is required.  To the extent a response is required, DBTCA denies the allegations of paragraph 36 upon information and belief.

37.     Paragraph 37 and its footnote state a legal conclusion to which no response is required. To the extent a response is required, DBTCA denies the truth of the allegations in paragraph 37 upon information and belief.

38.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39.     DBTCA admits that the Blocked Accounts were previously located in its possession within this district and further states that the Blocked Accounts have since been transferred to the United States pursuant to a seizure warrant and OFAC license.  By way of further response, DBTCA incorporates by reference its response to paragraph 5.

**TRIA PROVIDES FOR EXECUTION AGAINST THE BLOCKED ASSETS OF AN AGENCY OR INSTRUMENTALITY OF TERRORIST PARTY JUDGMENT DEBTORS.**

40.     In response to Paragraph 40, DBTCA (a) admits that Section 201(a) of TRIA contains the language selectively quoted by Petitioner in paragraph 40 and respectfully refers the Court to TRIA for the complete terms thereof, and (b) states that the remaining allegations of the paragraph state a legal conclusion to which no response is required.

41.     In response to paragraph 41, DBTCA respectfully refers the Court to the cited decisions for the full and complete contents thereof.

42.     DBTCA states that paragraph 42 consists of legal conclusions to which no response is required.  To the extent a response is deemed necessary, DBTCA denies that paragraph 42 is a complete statement of all legal requirements for executing under TRIA.

43.     DBTCA admits that TRIA Section 201(d)(2), codified at Section 1610(d)(2), contains the language selectively quoted by Petitioner in paragraph 43 and respectfully refers the Court to TRIA for the complete terms thereof.

44.     DBTCA admits that the FARC and ELN have been designated as Foreign Terrorist Organizations and SDGTs and denies knowledge or information sufficient to form a belief as to the validity of Petitioner's Judgment.

45.     DBTCA admits that Grupo has been designated an SDGT under the SDGT Sanctions.  With respect to the remaining allegations of the paragraph which describe alleged findings concerning Grupo's relationship with the FARC in certain materials cited in a footnote, DBTCA respectfully refers the Court to the cited materials for their full and

complete findings and denies knowledge or information sufficient to form a belief as to the veracity of the findings.

46.     DBTCA admits that the opinion in *Stansell v. Revolutionary Armed Forces of Colom.*, No. 8:09-cv-02308-RAL-MAP (M.D. Fla. Feb. 17, 2015) contains the language selectively quoted by Petitioner in paragraph 46 and its footnote 6 and respectfully refers the Court to the opinion for the complete terms thereof.   DBTCA denies knowledge or information sufficient to form a belief as to the truth of the factual findings cited in Paragraph 46.

47.     DBTCA admits that Doe has annexed to the Petition as Exhibit B the affidavit of David L. Gaddis and refers the Court to the affidavit for the contents thereof. DBTCA denies knowledge or information sufficient to form a belief as to the truth of the affidavit.

48.     DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 and Exhibit B to the Petition.

49.     Paragraph 49 states a legal conclusion to which  no response is required.  To the extent a response is required, DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50.     Paragraph 50 states a legal conclusion to which no response is required.  To the extent a response is required, DBTCA denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50, except admits that the defendants are not foreign states.

## NEED FOR A TURNOVER ORDER

51.     In response to paragraph 51, DBTCA (a) admits that a judgment has been entered in Petitioner's favor against the FARC and respectfully refers the Court to the Judgment for the terms thereof, (b) denies knowledge or information sufficient to form a belief as to the truth of the allegation that the Judgment is unpaid, and (c) states that the remaining allegations of the paragraph consist of legal conclusions to which no response is required.  To the extent a response to the remaining allegations of the paragraph is deemed necessary, DBTCA denies that the Blocked Accounts are owned by FARC or its instrumentalities under applicable law, denies knowledge or information sufficient to form a belief as to whether the Judgment is valid and subsisting, and, for the reasons stated in DBTCA's response to paragraph 5, which are hereby incorporated by reference, denies that the Blocked Funds are in DBTCA's possession, custody, or control.

52.     Paragraph 52 states a legal conclusion to which no response is required.  To the extent a response is deemed necessary, DBTCA denies the allegations of paragraph 52 upon information and belief.

53.     DBTCA states that paragraph 53 consists of legal conclusions to which no response is required.  To the extent a response is deemed necessary, DBTCA states that, under the Second Circuit's rulings in *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014) and *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993 (2d Cir. 2014), only the sending banks had a property interest in the Blocked Accounts while in the possession of DBTCA.  DBTCA further responds by incorporating by reference its response to paragraph 5.

– 12 –

54.     DBTCA admits that the Petitioner seeks the relief described in the Wherefore Clause of the Petition and denies that Petitioner is entitled to such relief, except to the extent that Petitioner seeks to discharge DBTCA from any further liability with respect to the Blocked Accounts.

55.     DBTCA denies all allegations in the Petition not expressly admitted.

## DEFENSES

### First Defense
### (Failure to Establish Ownership by Judgment Debtor)

56.     Under TRIA and the CPLR, a judgment creditor may execute against blocked funds only upon showing that the funds are owned by the judgment debtor. Petitioner has thus far failed to make this showing with respect to any of the Blocked Accounts.

57.     The mere fact that the Blocked Accounts contained funds blocked pursuant to the SDGT regulation does not establish that such funds were owned by FARC or its agencies or instrumentalities because the SDGT regulations require the blocking of any asset in which an SDGT such as FARC has any interest of any kind, including interests that fall short of ownership interests. *See, e.g.*, 31 C.F.R. § 594.210.

### Second Defense
### (Transactions Involving Blocked Accounts Prohibited Absent OFAC License or Court Order)

58.     All transactions involving the transfer of any blocked funds to Petitioner in satisfaction of the judgment obtained in the underlying state court action are prohibited absent a license from OFAC and compliance with applicable provisions of the SDGT Sanctions or a court order directing the release of the funds pursuant to the Terrorism Risk Insurance Act.

### Third Defense
### (Failure to Join Necessary Parties)

59.     Under Rule 19 of the Federal Rules of Civil Procedure, if a "person claims an interest relating to the subject of the action and is so situated that disposing of the action

in the person's absence" may "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," the person must be joined as a party if feasible. Fed. R. Civ. P. 19(a)(l)(B). To the extent made applicable in this proceeding by Federal Rule of Civil Procedure 69(a), New York's Civil Practice Law and Rules imposes substantially similar requirements relating to the joinder of absent third parties. *See, e.g.*, CPLR § 1001.

60.     Here, Petitioner has failed to join or notify multiple necessary and indispensable parties to this action under Fed. R. Civ. P. 19, including parties who may claim an interest in the funds that were previously held in the Blocked Accounts.  These parties include, *inter alia*, other judgment creditors of the FARC who have sought to execute against the same accounts, the sending banks in the underlying wire transactions, and the United States of America, which has now seized the funds that were previously held in the Blocked Accounts.

**Fourth Defense**
(Relief Barred by Article 4A of the Uniform Commercial Code)

61.     The relief sought by Petitioner is barred, in whole or in part, by Article 4A of the Uniform Commercial Code, including (without limitation) provisions of Article 4A that bar the service of creditor process on intermediary banks and/or govern the passage of title in a funds transfer.  *See, e.g.*, N.Y. U.C.C. §§ 4A-209(1), 4A-502, 4A-503.  *See also Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014) (holding that under New York's U.C.C. Article 4A "the only entity with a property interest in the stopped EFT ["electronic fund transfer"] is the entity that passed the EFT on to the

bank where it presently rests"); *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014) (same).

## Fifth Defense
(Other Parties May Have Superior Claims)

62.     Other parties to the wire transaction may have a superior property interest in the Blocked Accounts.

## Sixth Defense
(No Funds Should Be Released Unless the Court Determines that Grupo Is
an Agency or Instrumentality of the Judgment Debtor)

63.     Grupo contends that, contrary to the findings of the United States District Court for the Middle District of Florida, it is not an agent or instrumentality of the FARC, and that none of its assets, blocked or otherwise, are therefore subject to execution under TRIA. *See* Third-Party Claimant Grupo Arosfran Empreendimentos E Participacoes SARL's Opposition to Plaintiff's Petition for Turnover (ECF 89) (Jan. 7, 2016).  Grupo has appeared in the case and intends to seek a judicial determination that is not an agent or instrumentality of the FARC. If Grupo obtains this determination, then funds formerly held in the Blocked Accounts would not be subject to turnover even assuming, contrary to law, that such funds belonged to Grupo as originator of the underlying wire transactions.

## Seventh Defense
(Improper Venue)

64.     DBTCA objects to the Petition on the ground that this is not the proper venue in which to adjudicate Petitioner's alleged entitlement to the funds previously held in the Blocked Accounts. As stated above in the second paragraph of DBTCA's response

to paragraph 5, which is hereby incorporated by reference, the United States has seized the

funds previously held in the Blocked Accounts and, on information and belief, those assets

are currently being sought in the Forfeiture Proceeding in the District of Columbia.

Accordingly, the District of Columbia is the proper venue to hear Petitioner's claim to the

funds previously held in the Blocked Accounts. *See* 18 U.S.C. § 981(c) ("Property taken or

detained under this section . . . shall be deemed to be in the custody of the Attorney

General, the Secretary of the Treasury, or the Postal Service, as the case may be, subject

only to the orders and decrees of the court or the official having jurisdiction thereof."); *cf.*

*Marshall v. Marshall*, 547 U.S. 293, 311 (2006) ("[W]hen one court is exercising *in rem*

jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same

*res*.").

## Eighth Defense
(Lack of *In Rem* Jurisdiction)

65.     DBTCA objects to the Petition to the extent that this Court lacks *in rem*

jurisdiction over the funds previously held in the Blocked Accounts. As stated above in the

second paragraph of DBTCA's response to paragraph 5, which is hereby incorporated by

reference, the United States has seized the funds previously held in the Blocked Accounts

and, on information and belief, those assets are currently being sought in the Forfeiture

Proceeding in the District of Columbia. As a result, the Blocked Accounts are no longer in

DBTCA's possession, custody, or control, and this Court may lack *in rem* jurisdiction over

the accounts. *See* 18 U.S.C. § 981(c) ("Property taken or detained under this section . . .

shall be deemed to be in the custody of the Attorney General, the Secretary of the Treasury,

or the Postal Service, as the case may be, subject only to the orders and decrees of the court or the official having jurisdiction thereof."); *cf. Marshall v. Marshall*, 547 U.S. 293, 311 (2006) ("[W]hen one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*.").

### Ninth Defense
(Failure to State a Claim)

66.     The Petition fails to state a claim upon which relief may be granted.

### Additional Objections and Defenses

67.     DBTCA hereby gives notice of its intent to rely upon any other defense that may become available or apparent during the course of these proceedings and reserves its rights to amend this Answer to assert any such defense.

### DBTCA's Request for Relief

**WHEREFORE,** DBTCA respectfully requests that this Court:

a.     dismiss the Petition;

b.     grant DBTCA its reasonable attorney's fees and costs incurred in this action, including all attorney's fees and costs incurred in responding to the Petition;

c.     dissolve Petitioner's restraining notices and writ of execution to DBTCA;

d.     enter judgment discharging DBTCA from any further liability to any party for any funds previously held in the Blocked Accounts; and

e.     grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 26, 2016                           COVINGTON & BURLING LLP

                                                   *s/ Mark P. Gimbel*
                                                   Mark P. Gimbel
                                                   The New York Times Building
                                                   620 Eighth Avenue
                                                   New York, NY 10018–1405
                                                   (212) 841–1000
                                                   Mark P. Gimbel
                                                           (mgimbel@cov.com)
                                                   Gregory S. Nieberg
                                                           (gnieberg@cov.com)

                                                   *Attorneys for Respondent DBTCA*