UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>      Petitioner/Judgment Creditor,<br><br>  v.<br><br>EJERCITO DE LIBERACION NACIONAL, a/k/a ELN, a/k/a National Liberation Army, and FUERZAS ARMADAS REVOLUCIONARIOS DE COLOMBIA, a/k/a FARC, a/k/a REVOLUTIONARY ARMED FORCES OF COLOMBIA,<br><br>      Defendants/Judgment Debtors, and<br><br>GRUPO AROSFRAN EMPRE E PARTICIPACOES SARL A/K/A GRUPO AROFRAN A/K/A GRUPO AROSFRAN AND OTHER ALIASES; DEUTSCHE BANK TRUST COMPANY AMERICAS; STANDARD CHARTERED BANK, LTD; BANCO AFRICANO INVESTIMENTOS, SARL; and BANCO DE FOMENTO SARL, ANGOLA,<br><br>      Respondents. | 15–CV–08652–LTS–FM |

MEMORANDUM OF LAW OF DEUTSCHE BANK TRUST COMPANY AMERICAS
CONCERNING LEGAL ISSUES RAISED BY TURNOVER MOTION

COVINGTON & BURLING LLP

Mark P. Gimbel
Gregory S. Nieberg
The New York Times Building
620 Eighth Avenue
New York, NY 10008

*Attorneys for Deutsche Bank Trust Company Americas*

Respondent Deutsche Bank Trust Company Americas ("DBTCA") respectfully submits this memorandum of law in response to Petitioner's Motion for Turnover Order (the "Turnover Motion") directed at two blocked electronic funds transfers ("EFTs") held by JPMorgan Chase Bank, NA (ECF No. 176).  DBTCA does not hold and has no interest in the accounts at issue in the Turnover Motion, but submits this memorandum to address certain legal issues that may be of relevance to Petitioner's pending claims against DBTCA, which also involve wire transfers that were blocked pursuant to sanctions regulations.[1]

### I. ONLY THE SENDING BANK HAS A CLAIM TO A BLOCKED EFT IN THE POSSESSION OF AN INTERMEDIARY BANK.

In two recent decisions, the Second Circuit held that the Uniform Commercial Code ("UCC") controls the question of who owns an EFT blocked by an intermediary bank for purposes of a judgment enforcement proceeding like this one.  Under the UCC, the only party with a property interest in a blocked EFT that is sufficient to support attachment is the entity that "transmitted the EFT directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona v. Bank of New York Mellon*, 770 F. 3d 993, 1002 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 893 (2016); *see also Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014) (reaffirming *Calderon-Cardona*'s holding that "the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests"), *cert. denied*, 136 S. Ct. 893 (2016).  As a result, a blocked wire in the possession of an intermediary bank is only subject to execution as property of a judgment debtor

---

[1] As noted in DBTCA's Answer, the four blocked wires sought by Petitioner that were formerly held at DBTCA were released to the United States government pursuant to a seizure warrant. Petitioner nevertheless has declined to dismiss his petition against DBTCA and has threatened to bring a claim against it for releasing the wires.  The Court's ruling with respect to the legal issues raised by the Turnover Motion may impact Petitioner's claims with respect to these four blocked wires formerly held at DBTCA.

if the judgment debtor, or an agency or instrumentality thereof, was the sending bank that transmitted the funds directly to the intermediary bank. *See Calderon-Cardona*, 770 F.3d at 1002; *Hausler*, 770 F.3d at 212.

There is no authority supporting Petitioner's argument that this rule somehow expires "after a year has passed." (Turnover Motion at 22.) Indeed, in both *Calderon-Cardona* and *Hausler*, the Petitioners sought to attach blocked EFTs that had been frozen, in some cases, for many years. *See, e.g.*, *Hausler v. JPMorgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 541 (S.D.N.Y. 2010) (noting that "[t]hirteen of the EFTs at issue here have been blocked since the 1990s, and twenty have been blocked for at least five years").[2] The Second Circuit nonetheless held in each case that the UCC controlled the question of whether the blocked EFTs were subject to execution as property of the judgment debtor. *See Calderon-Cardona*, 770 F.3d at 1001–02 (applying the New York UCC); *Hausler*, 770 F.3d at 212 (citing *Calderon-Cardona*'s holding under the New York UCC). The First Department likewise recently applied the UCC in adjudicating a claim to a wire that had been blocked for almost 20 years. *Receivers of Sabena SA v. Deutsche Bank A.G.*, No. 15231, ___ N.Y.S.3d ___, 2016 WL 3749080, at *4, 5–10 (App. Div. July 14, 2016) (wire blocked since 1997).

In attempting to manufacture an artificial expiration date for the controlling provisions of the UCC, Petitioner cites UCC Section 4-A-505, but his reliance on the provision is misplaced. (*See* Turnover Motion at 21.) Section 4-A-505 applies only to payment orders that have been "accepted by the bank" at issue. N.Y. U.C.C. § 4-A-505 (McKinney 2016) (applicable "with respect to a payment order issued in the name of the customer as sender *and accepted by the*

---

[2] *See also* DBTCA Mem. Law in Resp. to Order to Show Cause, *Calderon-Cardona et al. v. Deutsche Bank Trust Company Americas*, No. 11 cv-03288 (ECF No. 10), at 3–4 (listing blocked accounts dating back to 1992).

*bank*") (emphasis added). Under the UCC, an intermediary bank accepts a payment order "when it executes the order." *Id.* § 4-A-209(1) ("[A] receiving bank other than the beneficiary's bank accepts a payment order when it executes the order."). A blocked EFT is, by definition, a payment order that has **not** been executed and, accordingly, has **not** been accepted within the meaning of the UCC. Section 4-A-505 therefore has no application here.

## II. IF A SENDING BANK DISCLAIMS ITS PROPERTY INTEREST IN A BLOCKED EFT, THE EFT BECOMES UNCLAIMED PROPERTY.

Petitioner argues, in the alternative, that it should be entitled to execute against any blocked wire as to which the sending bank has disclaimed an interest. (*See* Turnover Motion at 23.) Petitioner is wrong.

In order to establish a right to turnover, a judgment creditor must prove that a blocked wire is *property of the judgment debtor* — here, the FARC. *See, e.g.*, 30 Am. Jur. 2d Executions, Etc. § 120 (2016) ("Only property owned by the judgment debtor is subject to execution to satisfy a judgment."). If, as *Calderon-Cardona* and *Hausler* clearly hold, blocked wires are the property of the sending banks at the time of blocking, then even a decision by those banks to disclaim ownership of the wires would not magically transform the wires into property of the FARC. At most, any such disclaimer of property rights would make the blocked wires *abandoned* property, subject to turnover to the state if and when sanctions are lifted and the wires are unfrozen (or a license permitting the release of the funds is issued by the Office of Foreign Assets Control). Under New York's Abandoned Property Law, when abandoned funds are "held by banking organizations, banks are required to" turn those funds over "to the state comptroller" after a specified dormancy period has expired. *Han v. Standard Chartered Bank*, 01–cv–3675–JSM, 2002 WL 1586883, at *4 (S.D.N.Y. July 17, 2002) (citing N.Y. Aband. Prop. L. § 302).

3

In *Presley v. Cty. of Nassau of State*, a New York trial court denied a motion for summary judgment by the executors of the estate of Elvis Presley, who sought to collect "unrefunded ticket sales" from a concert venue — funds that had been paid by ticketholders for tickets to a concert that was canceled following Elvis's death. 560 N.Y.S.2d 173, 177 (Sup. Ct. 1990) *aff'd sub nom. Presley v. Cty. of Nassau*, 591 N.Y.S.2d 72 (2d Dep't 1992). The court rejected the Elvis plaintiffs' claim and, after "add[ing] the State as a party in interest," 591 N.Y.S.2d at 74, held that they had "no legal right to the funds," which instead were required to be remitted to "the State's abandoned property fund," 60 N.Y.S.2d at 177. The controlling principle applies with equal force here. When property is abandoned by its rightful owner, it is not there for the taking by private parties with no entitlement to it; instead, it must be turned over to the state.

The district court decisions in *Vera* and *Gates* on which Petitioner relies do not dictate a different result. *Vera* is readily distinguishable because it arises from unique facts not present here. Before the Second Circuit issued its decisions in *Calderon-Cardona* and *Hausler*, all of the parties in *Vera* stipulated to an "agreed procedure" under which certain blocked wires would be turned over to the petitioners in that case if, following a notice protocol, no adverse claims were made and the petitioners obtained a turnover order under TRIA. *See Order Denying Motion for Reconsideration in Vera v. Cuba*, No. 12-cv-01596-AKH (ECF No. 767) (S.D.N.Y. May 8, 2015), at 4–5. After the completion of the notice protocol — "an extensive process" that involved "notice to all potential claimants to the blocked funds other than Cuba" — the Second Circuit issued its decisions in *Calderon-Cardona* and *Hausler*. *See id.* at 4, 8. Although the decisions established that only sending banks had a claim to the blocked wires under the UCC, Judge Hellerstein decided to enforce the "agreed procedure," reasoning that the parties had

4

agreed to it, and the banks faced no threat of liability because "any potential intermediaries" (i.e., the sending banks with a legal claim under the UCC) had been interpleaded and waived their claims. *See id.* at 8.  The case can thus best be understood as a decision to enforce an agreement of the parties — the "agreed procedure" referenced in the opinion — rather than an adjudication of who had an ownership interest in the funds.  Where the parties have not stipulated to any turnover procedure, there is no such agreement to enforce, and Judge Hellerstein's limited decision has no application.

*Gates v. Syrian Arab Republic*, No. 11 C 8715, 2014 WL 5784859 (N.D. Ill. Nov. 6, 2014), an unpublished decision of the Northern District of Illinois, is no more helpful to Petitioner.  (*See* Turnover Motion at 23–24.)  According to Petitioner, *Gates* "held that the funds belonged to the originator" after the "transmitting bank had disclaimed interest in the funds." (*Id.* at 23.)  Not so.  The district court's actual holding in *Gates* was that the parties challenging the turnover order "ha[d] waived their right" to do so by failing to raise their arguments in a "direct appeal."  2014 WL 5784859, at *2.  To the extent that the court went on to discuss property rights to the blocked wires at issue, the discussion was mere dictum and therefore of little persuasive value.

Moreover, to the extent *Gates*, or for that matter *Vera*, suggests that a blocked EFT may be subject to execution as property of the originator — or as property of any party other than the sending bank — it squarely conflicts with binding Second Circuit precedent.  The Second Circuit has ruled twice unequivocally that "the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests." *Calderon-Cardona*, 770 F.3d at 1002; *Hausler*, 770 F.3d at 212.

As a result, a blocked wire in the possession of an intermediary bank is subject to execution only if the judgment debtor is the sending bank that "transmitted the EFT directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona*, 770 F.3d at 1002; *accord Hausler*, 770 F.3d at 212; *see also Estate of Heiser v. HSBC Bank USA, N.A.*, No. 11-CV-1607 KBF, 2014 WL 6468977, at *3 (S.D.N.Y. Nov. 18, 2014) ("Under *Calderon–Cardona* and *Hausler*, petitioners can attach only those blocked EFTs that the respondent banks received *directly* from Iran or one of its agencies or instrumentalities.") (emphasis in original); *Receivers of Sabena*, 2016 WL 3749080, at *10 (applying *Calderon-Cardona* to hold that the only entity with a property interest in an EFT blocked by an intermediary bank is the sending bank).

## CONCLUSION

For the reasons set forth above, a blocked wire in the possession of an intermediary bank is property of the sending bank for judgment enforcement purposes.

Dated: New York, New York
July 29, 2016

COVINGTON & BURLING LLP

*s/ Mark P. Gimbel*
Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, NY 10018–1405
(212) 841–1000
Mark P. Gimbel
   (mgimbel@cov.com)
Gregory S. Nieberg
   (gnieberg@cov.com)

*Attorneys for Respondent DBTCA*