17-759-cv
*Doe v. JPMorgan Chase Bank, N.A.*

# In the
# United States Court of Appeals
## For the Second Circuit

―――――――――――――――

August Term 2017

―――――――――――――――

No. 17-759-cv

John Doe,
*Plaintiff-Appellant,*

*v.*

JPMorgan Chase Bank, N.A.,
*Respondent-Third-Party-Petitioner-Counter-Claimant-Appellee,*

Deutsche Bank Trust Company Americas, Commerzbank AG, New York Branch,
*Respondents-Appellees.*[1]

―――――――――――――――

Appeal from the United States District Court
for the Southern District of New York
Laura T. Swain, District Judge, Presiding.
(Argued: December 15, 2017; Decided: August 9, 2018)

―――――

Before:     Parker, Wesley, and Chin, *Circuit Judges.*

―――――

    Judgment creditor of sanctioned foreign entities sought attachment and turnover of blocked electronic funds transfers ("EFTs") under Section 201(a) of

―――

[1]     The Clerk of Court is respectfully directed to amend the caption as above.

the Terrorism Risk Insurance Act, Pub. L. No. 107–297, § 201, 116 Stat. 2322, 2337 (2002) (codified at 28 U.S.C. § 1610 note).  The District Court (Swain, *J.*) denied the request on the grounds that a blocked EFT held at an intermediary bank is subject to execution only if the judgment debtor or its agent transmitted the EFT directly to the bank where the EFT is blocked.  The judgment of the District Court is **AFFIRMED**.

Judge Chin dissents in a separate opinion.

————

ORLANDO DO CAMPO, Do Campo & Thorton, P.A., Miami, FL, and BRETT E. VON BORKE, Buckner + Miles, Miami, FL, *for John Doe*

STEVEN B. FEIGENBAUM AND GREGORY P. FEIT, Levi Lubarsky Feigenbaum & Weiss LLP, New York, NY, *for JPMorgan Chase Bank, N.A.*

MARK P. GIMBEL, Covington & Burling LLP, New York, NY, *for Deutsche Bank Trust Company Americas*

TERRY MYERS AND PAUL A. SASO, Gibbons P.C., New York, NY, *for Commerzbank AG, New York Branch*

CHAD D. READLER, Acting Assistant Attorney General; SHARON SWINGLE AND BENJAMIN M. SHULTZ, Department of Justice; and PETER ARONOFF AND CHRISTOPHER CONNOLLY, Assistant U.S. Attorneys, for Geoffrey S. Berman, U.S. Attorney for the Southern District of New York, *for Amicus Curiae United States of America*

————

BARRINGTON D. PARKER, *Circuit Judge*:

John Doe is a judgment creditor who seeks attachment and turnover of electronic fund transfers ("EFTs") initiated by sanctioned foreign terrorist organizations which, after passing through foreign intermediary banks, were blocked and held by domestic banking institutions. *See* Section 201(a) of the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107–297, § 201, 116 Stat. 2322, 2337 (2002) (codified at 28 U.S.C. § 1610 note). Specifically, Doe applied below for turnover orders against JPMorgan Chase Bank, N.A. ("JPMorgan"), Deutsche Bank Trust Company Americas ("Deutsche Bank"), and Commerzbank AG, New York Branch ("Commerzbank"), the institutions which blocked and held the EFTs.

The United States District Court for the Southern District of New York (Swain, *J.*), denied the applications on the grounds that the EFTs were not the property of the originators—the terrorist organizations—but instead were the property of the intermediaries that transferred the funds to the U.S. institutions. *See Doe v. Ejercito De Liberacion Nacional*, No. 15-cv-8652, 2017 WL 591193 (S.D.N.Y. Feb. 14, 2017). In reaching that conclusion, the District Court relied on

*Calderon-Cardona v. Bank of N.Y. Mellon*, 770 F.3d 993 (2d Cir. 2014) and *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014) (per curiam), in which we held that blocked wire transfers held at an intermediary bank are subject to execution under Section 201(a) only if the judgment debtor or an agency or instrumentality of the judgment debtor "transmitted the EFT directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona*, 770 F.3d at 1002; *see also Hausler*, 770 F.3d at 212. Because the record reflects that the judgment debtors did not do so, we **AFFIRM**.

## BACKGROUND

The International Emergency Economic Powers Act, 50 U.S.C. §§ 1701–1706, empowers the President to impose economic sanctions to respond to unusual and extraordinary international threats to the United States. 50 U.S.C. §§ 1701, 1702(a). In 2001, the President invoked that authority to authorize the Treasury Department to designate a persons as a Specifically Designated Global Terrorist ("SDGT") if the Treasury finds that the person is "owned or controlled by" a designed terrorist group; assists in, sponsors, or provides material or financial support to a terrorist group; or is "otherwise associated with" a terrorist

group.  *See* Executive Order 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) § 1(c)–(d). Executive Order 13,224 also authorizes the Treasury to "take such actions, including the promulgation of rules and regulations . . . as may be necessary to carry out the purpose of this order."  *Id.* § 7.  Pursuant to this authority, the Department of the Treasury' Office of Foreign Asset Control ("OFAC") promulgated Global Terrorism Sanction Regulations that, among other things, require United States banks to block transactions involving SDGTs that are subject to sanctions.  *See* 31 C.F.R. Part 594.  These regulations provide that "property and interests in property" of SDGTs are "blocked" and "may not be transferred, paid, exported, withdrawn or otherwise dealt in" if the property or interest is either in the United States or comes within the possession or control of a U.S. person.  *Id.* § 594.201(a).

Doe's motion seeking a turnover order and his brief on appeal alleged the following facts.  In December 2010, OFAC identified Tajco Ltd. ("Tajco") as a SDGT. Joint App'x A-370. A few days later, Tajco originated an EFT from Arab Gambian Islamic Bank Ltd. in the amount of $120,416 for the benefit of an account holder at the Lebanese Canadian Bank.  *Id.* A-371.  From the originating

5

bank, the funds flowed to AHLI United Bank UK PLC ("AHLI"), an intermediary bank, which then transmitted the funds to JPMorgan, as the beneficiary bank. *Id.* at A-371–72. JPMorgan blocked and held the transfer because Tajco was referred to in the payment instructions of the EFT and appeared on the OFAC's list of terrorist organizations. *Id.* at A-371.

In April 2012, OFAC identified Grand Stores Ltd.' ("Grand Stores") Gambian location as an alias of Tajco and as a SDGT. *Id.* at A-370. In May 2012, Grand Stores, from its Gambian operation, originated an EFT in the amount of $400,951.41 from Trust Bank Ltd. *Id.* at A-371–72. Trust Bank then wired the funds to its correspondent bank Credit Suisse AG ("Credit Suisse"), which then wired the funds to JPMorgan, as the beneficiary bank. *Id.* at A-371. JPMorgan blocked the transfer and held the funds because at the time of the wire transfer, Grand Stores was on the OFAC's list of SDGTs. *Id.* Credit Suisse and AHLI then disclaimed any interest in the blocked accounts and all remaining possible claimants other than Doe have either defaulted, or have dismissed or withdrawn any claims to the funds which have remained in the blocked accounts. *Id.* at A-372.

**A.     Proceedings Below**

This action began in June 2015 when Doe registered in the Southern District of New York a $36.8 million judgment he had obtained in the Southern District of Florida against Ejercito de Liberacion Nacional (the "ELN") and Fuerzas Armadas Revolucionarios de Colombia (the "FARC") terrorist organizations that he alleges kidnaped and tortured him in Venezuela and Colombia.  In an attempt to collect on the judgment, Doe initiated a turnover proceeding and named JPMorgan as a respondent.  The petition sought the turnover of funds blocked and held by JPMorgan and alleged to belong to Grand Stores and Tajco, both of which Doe alleged to be agents of the FARC.  In response, JPMorgan brought an interpleader action in which it named Credit Suisse and AHLI respondents.  Credit Suisse and AHLI then reached settlements with JPMorgan in which they agreed to relinquish any claims to the blocked Tajco and Grand Stores accounts and also to release JPMorgan from any liability with respect to the accounts.  Doe later joined Deutsche Bank and Commerzbank in the turnover proceedings, also alleging that the blocked funds they held belonged to agents of the ELN and the FARC.

1    The District Court denied Doe's turnover application directed at
2    JPMorgan. Because the parties agree that the issues raised in the JPMorgan
3    petition were similar to those raised in the petitions against Deutsche Bank and
4    Commerzbank, Doe requested, and the District Court agreed, to enter an order
5    denying the petitions directed at Commerzbank and Deutsche Bank for
6    substantially the reasons that it denied the one directed at JPMorgan. Doe
7    appeals the denial of the three petitions.

8    We review *de novo* the threshold issue of whether EFTs are property of a
9    particular party. *Hausler*, 770 F.3d at 211 (quoting *Calderon-Cardona*, 770 F.3d at
10   1000).

## DISCUSSION[2]

12   Unless a judgment creditor acquires a license from the OFAC, the creditor
13   is typically barred from attaching blocked assets. *See, e.g.*, 31 C.F.R. §§ 594.201(a),
14   594.202(e) (providing that attachment and other similar judicial process related to
15   property blocked pursuant to the Global Terrorism Sanctions Regulations are

---

[2] As noted, this appeal principally concerns Doe's turnover petitions directed at JPMorgan, Deutsche Bank, and Commerzbank. While this opinion recounts facts and engages in analysis solely with respect to the JPMorgan petition, it disposes of the appeals of the Deutsche Bank and Commerzbank turnover petitions, as all parties agree that they involve the same issues.

null and void). However, to assist victims of terrorism in satisfying their judgments, Congress enacted TRIA in 2002. *Calderon-Cardona*, 770 F.3d at 998. Section 201(a) of TRIA allows a plaintiff to execute a judgment on blocked assets of a terrorist party, or its agency or instrumentality, to satisfy a judgment against the terrorist party, where:

(1) a person has obtained a judgment against a terrorist party;

(2) the judgment is either

    (a) for a claim based on an act of terrorism, or

    (b) for a claim for which a terrorist party is not immune under § 1605(a)(7);

(3) the assets are "blocked assets" within the meaning of TRIA; and

(4) execution is sought only to the extent of any compensatory damages.[3]

---

[3] Section 201(a) of TRIA provides:

(a) IN GENERAL.—Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Courts applying TRIA in the EFT context look to state law to define the rights a judgment debtor has in the property a creditor seeks to reach. *See Calderon-Cardona*, 770 F.3d at 1001. In *Hausler*, after analyzing what property interests are attachable under New York law, we held that under Article 4A of the New York Uniform Commercial Code, EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank. 770 F.3d at 212. We held that "the *only* entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests." *Id.* (quoting *Calderon-Cardona*, 770 F.3d at 1002) (emphasis added). This is so because "wire transfers, which include EFTs, are a unique type of transaction to which ordinary rules do not necessarily apply." *Calderon-Cardona*, 770 F.3d at 1001 (quoting *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111, 118 (2d Cir. 2010)). EFTs function "as a chained series of debits and credits between the originator, the originator's bank, any intermediary banks, the beneficiary's bank, and the beneficiary[;] 'the only party with a claim against an intermediary bank is the sender to that bank.'" *Id.* (quoting *Asia Pulp*, 609 F.3d at 119–20). In other words, under the N.Y. UCC's statutory scheme, "the

1   only entity with a property interest in an EFT while it is midstream is the entity

2   immediately preceding the bank 'holding' the EFT in the transaction chain." *Id.*

3   at 1002.[4]  "It is beyond cavil that attachment will only lie against the property of

4   the debtor, and that the right to attach the property 'is only the same as the

5   defendant's own interest in it.'"  *Bank of N.Y. v. Nickel*, 14 A.D.3d 140, 145 (N.Y.

6   App. Div. 1st Dep't 2004) (quoting *Sidwell & Co. v. Kamchatimpex*, 166 Misc. 2d

7   639, 644 (N.Y. Sup. Ct. Co. 1995)).

8       Doe contends that Grand Stores or Tajco are agencies or instrumentalities

9   of the FARC and that turnover of the FARC's assets to satisfy his judgment is

---

[4]   The dissent takes issue with, among other things, this recitation of the N.Y. UCC statutory scheme, as embraced by our decisions in *Calderon-Cardona* and *Hausler*. In so doing, the dissent sees a tension between a SDGT's interest in funds being, "in effect, entirely extinguished while temporarily midstream," on the one hand, and OFAC's authority to block "property [or] interests in property" of a SDGT, on the other. *See* Dissent, op. at 7-9. We, however, see no such tension. The terms "interest" and "title" are "clearly not synonymous." *Asia Pulp*, 609 F.3d at 120 (quoting *Bank of N.Y. v. Nickel*, 14 A.D.3d 140, 145–47 (N.Y. App. Div. 1st Dep't 2004)). "[A]lthough Article 4-A establishes that neither an originator nor a beneficiary owns or has title to a midstream EFT, Article 4-A does *not* address the separate issue of who has an 'interest' in an EFT." *Id.* (emphasis in original).  By contrast, the Global Terrorism Sanctions Regulations define "property" and "property interest" very expansively to include, among other things, "any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent." 31 C.F.R. § 594.309.  Similarly, the Regulations further define "interest" when used with respect to property very broadly to mean "an interest of any nature whatsoever, direct or indirect." *Id.* § 594.306.  As such, our holding here that the SDGTs at issue did not hold title to the blocked assets—such that attachment under Section 201(a) is unavailable—does not preclude the blocking of such assets under the Global Terrorism Sanctions Regulations. As the propriety of the blocking of the assets is not properly before us, we need not reach that issue.

11

authorized by Section 201(a).  All parties agree that Doe obtained a judgment against a terrorist party, based upon an act of terrorism, and seeks execution only to the extent of compensatory damages.  Consequently, the only disputed issue before us is whether the assets in the blocked accounts are property of SDGTs.

Here, as in *Hausler*, it is undisputed that no SDGT transmitted any of the blocked EFTs directly to a blocking bank.  *See* 770 F.3d at 212.  Credit Suisse and AHLI transmitted the funds held in the Grand Stores and Tajco blocked accounts to JPMorgan, and neither Credit Suisse nor AHLI are SDGTs.  *See Ejercito*, 2017 WL 591193, at *2.  Consequently, our decisions in *Calderon-Cardona* and *Hausler* compel the conclusion that neither Grand Stores nor Tajco has any attachable property interest in the blocked funds at JPMorgan since they were not the entities that directly passed the EFTs to JPMorgan.  As such, as the District Court correctly concluded, the blocked funds are not attachable under Section 201(a).

Doe invites us to depart from *Calderon-Cardona* and *Hausler* on the theory that where, as here, the intermediary banks, which passed the EFTs on to blocking banks, disclaim any interest in the blocked accounts and the originating banks fail to appear or participate in the turnover proceedings, the funds

12

"move[] back up the chain or upstream" to the "sender[s] to that bank," which would be Grand Stores and Tajco (the two SDGTs). In other words, the transaction, Doe contends, should be recast as though the funds moved directly from the SDGTs to JPMorgan.

We decline this invitation because the Global Terrorism Sanctions Regulations broadly prevent the unlicensed transfer of blocked assets and any transfer in violation of the Regulations is "null and void." *See* 31 C.F.R. § 594.202(a). The Regulations, section 594.312, go on define "transfer" in exceptionally expansive language as "any actual or purported act or transaction . . . the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property." These Regulations mean that any disclaimer by the transmitting banks (Credit Suisse and AHLI) to an interest in the blocked funds is incapable of effecting an unlicensed transfer to anyone and certainly not a transfer "back up the chain" to an originating SDGT. Consequently, disclaimers by intermediary banks can not serve to vest (or re-

13

vest) title to the transferred funds with the originators which were the initial targets of the sanctions.

Moreover, we are not persuaded to depart from *Calderon-Cardona* and *Hausler* by two unpublished district court decisions in which correspondent banks waived their interests in blocked EFTs, *Vera v. Republic of Cuba*, No. 12-cv-01596, 2015 WL 13657629 (S.D.N.Y. May 8, 2015)[5] and *Gates v. Syrian Arab Republic*, Nos. 11-cv-8715, 14-cv-6161, 2014 WL 5784859 (N.D. Ill. Nov. 6, 2014). Doe notes that both of these decisions post-date *Calderon-Cardona* and *Hausler* and analyze the disclaimer distinction in light of those opinions. We, however, note that both *Vera* and *Gates* involved unique situations and, most importantly, neither of them accounts for the applicable OFAC regulations which unambiguously prohibit unlicensed transfers of blocked assets.[6] Consequently, we do not find them persuasive.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

---

[5] *See also Vera v. Republic of Cuba*, No. 12-cv-01596, ECF No. 814 (S.D.N.Y. Sept. 24, 2015).
[6] The dissent declines to conclude that the OFAC license requirement is clearly applicable in these circumstances. *See* Dissent, op. at 11. We respectfully see no authority for this view.